LATHAM & WATKINS LLP
Robert M. Howard (Bar No. 145870)
robert.howard@lw.com
Andrea M. Hogan (Bar No. 238209)
andrea.hogan@lw.com
Jeffrey P. Carlin (Bar No. 227539)
jeff.carlin@lw.com
12670 High Bluff Drive
San Diego, California  92130
Tel:  858.523.5400 / Fax:  858.523.5450

CAPES, SOKOL, GOODMAN
AND SARACHAM, PC
Adam E. Miller, MSBA #40945
(Admitted Pro Hac Vice)
miller@capessokol.com
7701 Forsyth Boulevard, Twelfth Floor
St. Louis, Missouri 63105
Tel.: 314.754.4870 / Fax: 314.754.4811

MCDERMOTT WILL & EMERY LLP
Anthony N. Upshaw, FLBA #861091
(Admitted Pro Hac Vice)
aupshaw@mwe.com
333 S.E. 2 Avenue, Suite 4500
Miami, FL 33131
Tel.: 305.358.3500 / Fax: 305.675.8031

Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITY OF LONG BEACH, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA CORPORATION, and DOES 1 through 100,<br><br>Defendants. | CASE NO. 2:16-cv-03493-FMO-AS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS OR STAY CITY'S SECOND AMENDED COMPLAINT PENDING CITY'S MANDATORY EXHAUSTION OF ADMINISTRATIVE REMEDIES**<br><br>Judge:    Hon. Fernando M. Olguin<br><br>File Date:    May 19, 2016<br>Trial Date:  April 23, 2019 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT OF FACTS ......................................................... 4

III.  PROCEDURAL HISTORY ....................................................... 5

IV.  ARGUMENT ............................................................................ 7

     A.    The City's Alleged Damages Are Permit Compliance Costs Subject to the Exclusive Jurisdiction of the Commission on State Mandates ................................................ 7

     B.    The City Must Exhaust the State Administrative Process Before Commencing Litigation Against Defendants for the Same Costs ..................................................................... 11

          1.    California Law on Exhaustion Applies in this Federal Diversity Action ......................................... 11

          2.    By Statute, the Commission Has the "Sole and Exclusive" Authority to Adjudicate the Permit Costs at Issue in This Case ...................................... 12

          3.    This Court Has Discretion to Require Exhaustion .................. 14

          4.    Failure to Exhaust Bars the City's Lawsuit Even If the City Has Not Yet Invoked the Administrative Process ................................................................. 15

          5.    Public Policy Considerations Heavily Favor Requiring Exhaustion ................................................ 17

          6.    The City Must First Exhaust Administrative Remedies Even If It Advances Different Legal Theories or Seeks Additional Damages Not Recoverable Under the "Test Claim" Process ......................... 18

V.   CONCLUSION ....................................................................... 20

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

i

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

### CASES

4

*Al Seraji v. Gowadia,*
  2017 U.S. Dist. LEXIS 97162 (C.D. Cal. Apr. 28, 2017)................................16

5

*Ass'n of Irritated Residents v. C&R Vanderham Dairy,*
  435 F. Supp. 2d 1078 (E.D. Cal. 2006) ............................................................14

6

7

*City of San Jose v. Monsanto Co.,*
  2017 U.S. Dist. LEXIS 123673 (N.D. Cal. Aug. 4, 2017)......................*passim*

8

*Foster v. Blue Shield of Cal.,*
  2009 U.S. Dist. LEXIS 46619 (C.D. Cal. June 3, 2009).................................16

9

10

*Hawthorne Sav. F.S.B. v. Reliance Ins. Co.,*
  421 F.3d 835 (9th Cir. 2005) ....................................................................3, 11

11

*Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai, LLC,*
  665 F. Supp. 2d 1189 (D. Haw. 2009) .............................................................14

12

13

*Kwan v. SanMedica Int'l,*
  854 F.3d 1088 (9th Cir. 2017)..........................................................................11

14

*Lauwrier v. Garcia,*
  2013 U.S. Dist. LEXIS 189996 (C.D. Cal. Mar. 8, 2013) ..........................3, 11

15

16

*Martin v. D-Wave Sys.,*
  2010 U.S. Dist. LEXIS 17226 (N.D. Cal. Feb. 26, 2010)...............................11

17

*Mellor v. Solomon Entities Defined Benefit Pension Plan,*
  2011 U.S. Dist. LEXIS 110087 (C.D. Cal. Sept. 26, 2011)............................17

18

19

*Morrison-Knudsen Co. v. CHG Int'l, Inc.,*
  811 F.2d 1209 (9th Cir. 1987)......................................................................3, 14

20

*Puga v. Chertoff,*
  488 F.3d 812 (9th Cir. 2007 .......................................................................12, 14

21

22

*Tomas v. Rubin,*
  926 F.2d 906 (9th Cir. 1991) ...........................................................................17

23

*Western Radio Servs. Co. v. Qwest Corp.,*
  678 F.3d 970 (9th Cir. 2012)............................................................................16

24

25

*Woodford v. Ngo,*
  548 U.S. 81 (2006) .......................................................................................4, 12

26

27

28

LATHAM&WATKINS LLP   US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO
                                          ii

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1

## <u>TABLE OF AUTHORITIES (CON'T)</u>

2

<u>PAGE(S)</u>

3

### CASES

4
5

*2974 Properties, Inc. v. Resolution Trust Corp.,*
    23 Cal. App. 4th 871, 876 (1994)................................................................... 15

6

*Abelleira v. Dist. Court of Appeal,*
    17 Cal. 2d 280 (1941 ............................................................................ 1, 11, 12

7
8

*Barnes v. State Farm Mutual Auto. Ins. Co.,*
    16 Cal. App. 4th 365 (1993)...................................................................... 12

9

*City of San Jose v. State of California,*
    45 Cal. App. 4th 1802 (1996)................................................................ 12, 13

10
11

*Cty. of Contra Costa v. State of Cal.,*
    177 Cal. App. 3d 62 (1986).................................................................... 15, 16

12

*Department of Finance v. Comm'n on State Mandates,*
    1 Cal. 5th 749 (2016)............................................................................... 1, 8

13
14

*Edgren v. Regents of the Univ. of Cal.,*
    158 Cal. App. 3d 515 (1984)................................................................ 11, 19

15

*Farmers Ins. Exchange v. Superior Court,*
    2 Cal. 4th 377 (1992)......................................................................... 4, 12, 19

16
17

*Hayes v. Comm'n on State Mandates,*
    11 Cal. App. 4th 1564 (1992)..................................................................... 13

18

*Kaiser Foundation Hosps. v. Superior Court,*
    128 Cal. App. 4th 85 (2005)....................................................................... 15

19
20

*Lake Madrone Water Dist. v. State Water Res. Control Bd.,*
    209 Cal. App. 3d 163 (1989)...................................................................... 15

21

*P.W. Stephens, Inc. v. State Comp. Ins. Fund,*
    21 Cal. App. 4th 1833 (1994)................................................................. 12, 19

22
23

*Palmer v. Regents of Univ. of Cal.,*
    107 Cal. App. 4th 899 (2003)................................................................. 12, 19

24

*Redevelopment Agency v. Comm'n on State Mandates,*
    43 Cal. App. 4th 1188 (1996)..................................................................... 13

25
26

*Roberts v. United Healthcare Servs., Inc.,*
    2 Cal. App. 5th 132 (2016).................................................................... 12, 15

27

*Rojo v. Kliger,*
    52 Cal. 3d 65 (1990)................................................................................ 11

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

iii

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

*Roth v. City of Los Angeles*,
    53 Cal. App. 3d 679 (1975) .......................................................................... 16

*Tri-County Special Educ. Local Plan Area v. Cty. of Tuolumne*,
    123 Cal. App. 4th 563 (2004) ............................................................. 12, 14, 18

*Westlake Cmty. Hosp. v. Superior Court*,
    17 Cal. 3d 465 (1976) .......................................................................... 1, 11, 19

*Wilkinson v. Norcal Mutual Ins. Co.*,
    98 Cal. App. 3d 307 (1979) ...................................................................... 11, 19

**FEDERAL RULES AND STATUTES**

28 U.S.C. § 1292 .......................................................................................... 2, 6

**STATE RULES AND STATUTES**

Cal. Gov. Code § 17500 ................................................................................ 7, 13

Cal. Gov. Code § 17552 ........................................................................ 3, 7, 13, 18

Cal. Gov. Code §§ 17500-17630 .............................................................. 1, 13, 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

iv

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

# I.     INTRODUCTION

The City of Long Beach ("City") seeks to recover its costs to comply with State-imposed storm water discharge permit requirements not through a mandatory administrative process, but from Defendants through public nuisance and other tort claims.  *See, e.g.,* Second Amended Complaint ("SAC"), ¶¶ 30, 33, 34-37, 160, 164.  The California Supreme Court's 2016 holding in *Department of Finance v. Comm'n on State Mandates*, 1 Cal. 5th 749 (2016), corroborates that such costs constitute an "unfunded mandate" subject to reimbursement *from the State* through a statutory process before the Commission on State Mandates ("Commission"). *See* Cal. Gov. Code §§17500-17630.  But the City has not yet sought reimbursement of any of its storm water-related permit compliance costs from the Commission—disavowing entirely any obligation to comply with the jurisdictional requirement to exhaust administrative remedies *before* litigation, a bedrock principle of California law since 1941.  *E.g.*, *Abelleira v. Dist. Court of Appeal*, 17 Cal. 2d 280, 292 (1941)); *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465, 476 (1976).

Defendants raised the City's failure to exhaust administrative remedies in their motion to dismiss the SAC, but the City "has given defendants' argument short shrift."  Sept. 1, 2017 Order, Dkt. No. 115.  The City did "not appear to challenge defendants' contentions regarding the NPDES permits at issue" (*id.*); instead, the City urges this Court to view the unfunded State mandates process as irrelevant because only a "portion" of the City's alleged damages here are subject to reimbursement from the State.  Opp. to MTD, Dkt. No. 62, at 30:9-14.  The City's discovery responses, however, show that the alleged permit compliance costs are both subject to the jurisdiction of the Commission and substantial. Because "exhaustion of remedies is a threshold issue," the Court authorized additional briefing that "shall fully set forth the law on exhaustion of remedies,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

1

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    including its application in federal court in a diversity action, and whether a stay or

2    dismissal of the action is warranted." *See* Sept. 1, 2017 Order, Dkt. No. 115.

3           Substantially similar jurisdictional issues have been raised in three federal

4    public nuisance actions against Defendants by the Cities of San Jose, Oakland, and

5    Berkeley, in which those Bay Area cities seek to recover State-imposed permit

6    compliance costs related to storm water discharges to San Francisco Bay.  On

7    August 4, 2017, Judge Edward J. Davila of the Northern District of California

8    stayed and administratively closed those three public nuisance actions until the Bay

9    Area cities invoked and completed the mandatory administrative process before the

10   Commission.  *See City of San Jose v. Monsanto Co.*, No. 15-cv-03178-EJD, 2017

11   U.S. Dist. LEXIS 123673 (N.D. Cal. Aug. 4, 2017); *see also* Order Directing Clerk

12   to Administratively Close Files, Request for Judicial Notice ("RJN"), Ex. 1.[1]  The

13   same result is warranted here.  Technically, Judge Davila's order could have gone

14   even further because no jurisdiction exists at all, and a stay arguably rewards the

15   failure of the cities to disclose parallel actions or, as here, abide by the statutory

16   requirements of exhaustion.

17          Not only does the City's SAC make clear that the City is seeking to recoup

18   primarily its permit compliance costs in this litigation, but its discovery responses

19   explicitly corroborate as much.  The City admits that this federal lawsuit seeks

20   compensation for "costs incurred to monitor and reduce PCB discharges pursuant

21   to the NPDES permit and state-mandated TMDL goals," and the City initiated this

22   action to "offset the costs Plaintiff will be forced to incur" under those State-

23   imposed permit requirements.  *See* Plaintiff's Rule 26(a)(1) Initial Disclosures at

24   11:3-5, RJN, Ex. 3; *see also* Plaintiff's Second Supp. Objections and Responses to

25   Defendant Pharmacia LLC's Special Interrogatories, Set One, Response to ROG

26

27

28

---

[1] On August 14, 2017, the Bay Area cities filed motions for certification of Judge Davila's stay order for appeal to the Ninth Circuit under 28 U.S.C. § 1292(b), with a hearing in the Northern District set for December 21, 2017.  *See* RJN, Ex. 2. Defendants filed an opposition to that motion on September 14, 2017.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

2

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    No. 12, RJN, Ex. 4.  Thus, the City cannot dispute that it seeks as damages the very

2    same permit compliance costs that fall exclusively within the jurisdiction of the

3    Commission under California law.  Nor can the City credibly dispute that such

4    costs are potentially subject to State reimbursement under *Department of Finance*.

5    And the City concedes in its discovery responses that it has not yet sought to

6    recover any of its storm water-related permit compliance costs through the

7    Commission.  The Commission's "sole and exclusive" authority over unfunded

8    State mandates, Cal. Gov. Code § 17552, and the administrative exhaustion

9    doctrine cannot be so easily circumvented.

10         Consistent with the three Bay Area cases that are now administratively

11   closed, this case must be dismissed or stayed until the City first invokes and then

12   exhausts the administrative process.  The Court plainly has "discretion to decline

13   jurisdiction, or stay proceedings" pending exhaustion of administrative remedies,

14   and public policy interests overwhelmingly support dismissal or a stay here.  *See*

15   *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987).

16   California law on exhaustion of administrative remedies governs in this federal

17   diversity action.  *See, e.g.*, *Hawthorne Sav. F.S.B. v. Reliance Ins. Co*., 421 F.3d

18   835, 841 (9th Cir. 2005) (federal courts sitting in diversity apply state substantive

19   law); *Lauwrier v. Garcia*, 2013 U.S. Dist. LEXIS 189996, at *15 (C.D. Cal. Mar.

20   8, 2013) (exhaustion of administrative remedies is substantive law).

21         Unless this case is dismissed or stayed, the City (and hundreds of California

22   municipalities with storm water permits) will have no incentive to pursue

23   vigorously, or at all, mandatory claims before the Commission because litigation

24   against third parties for compensatory and punitive damages will quickly become

25   the preferred pathway to recover permit compliance costs.  Such an outcome would

26   contravene the Legislature's intent in establishing the Commission to resolve

27   exclusively all unfunded State mandate claims, and it threatens to render the entire

28   administrative process superfluous.  *See Farmers Ins. Exchange v. Superior Court*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

3

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    2 Cal. 4th 377, 391 (1992) (exhaustion doctrine prevents courts from "interfer[ing]

2    with an agency determination until the agency has reached a final decision"); *see*

3    *also Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (exhaustion "protects

4    'administrative agency authority'" and "discourages 'disregard of [the agency's]

5    procedures'").

6         Further, allowing circumvention of a mandatory administrative process

7    would raise novel constitutional questions, such as whether product manufacturers

8    targeted by cities for the costs of unfunded State mandates are entitled to recover

9    from the State under a subrogation theory, and whether cities can obtain "double

10   recovery" of unfunded mandates from the State and private parties. The failure to

11   enforce exhaustion here would also frustrate judicial economy, as the Court and the

12   parties will invariably litigate claims that likely would be resolved or narrowed in

13   the first instance by a Commission decision.

14        For these reasons, Defendants respectfully request that the Court dismiss or

15   stay this case until the City invokes and exhausts California's mandatory

16   administrative process.

17   **II.    STATEMENT OF FACTS**

18        The Los Angeles Regional Water Quality Control Board ("Regional

19   Board"), on behalf of the State, has issued several storm water discharge permits to

20   the City, consistent with the Clean Water Act, to allow the City to discharge storm

21   water containing various contaminants into multiple water bodies, which "include,

22   but are not limited to" the Port of Long Beach, Colorado Lagoon, and Dominguez

23   Watershed (the "State Waters"). *See* SAC, ¶¶ 6, 7, 30, 159. These permits impose

24   Total Maximum Daily Loads ("TMDLs"), or limits on the lawful amount of a

25   given pollutant that a water body can receive, including PCBs and other

26   contaminants. SAC, ¶¶ 9, 30, 160, 164.

27        The City has been required to manage runoff through its storm water system

28   dating back to at least 1996, when the Regional Board adopted a storm water

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

4

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

discharge permit for the Los Angeles County region (including Long Beach) that identified PCBs and other contaminants for source control purposes and required best management practices ("BMPs") to reduce listed pollutants entering the storm drain system.  In 1999, the Regional Board issued the City a separate and distinct permit for storm water discharges ("1999 Permit"), which identified PCBs and many other pollutants entering State Waters and required the City to implement control measures (*i.e.*, BMPs), a storm water management program, and a PCB monitoring program.  The 1999 Permit expired in 2004, but it was administratively extended.  The Regional Board then issued a new permit in 2014, which was amended in 2016 to address the approval of several trash TMDLs ("2016 Amended Permit").  The 2016 Amended Permit is in effect today and imposes a series of controls, *i.e.*, non-storm water discharge prohibitions, effluent limitations for PCBs and other contaminants, monitoring and reporting requirements, and BMPs to control the discharge of pollutants conveyed through the City's storm water system.

## III.   PROCEDURAL HISTORY

The City initiated this federal diversity action on May 19, 2016, and it filed a First Amended Complaint ("FAC") on June 9, 2016.  *See* Dkt. Nos. 1, 13. Defendants' filed a motion to dismiss the FAC, which the Court granted on October 6, 2016.  *See* Dkt. No. 56.  The City filed its SAC on October 20, 2016 (Dkt. No. 57), and Defendants again moved to dismiss.  Dkt. No. 61.  On September 1, 2017, the Court denied Defendants' motion to dismiss the SAC without prejudice, and it invited a renewed motion regarding whether this case should be dismissed or stayed because the City has failed, as a threshold jurisdictional issue, to exhaust its administrative remedies.  Dkt. No. 115.

Less than a month before, on August 4, 2017, Judge Davila of the Northern District of California stayed three similar cases brought against Defendants by the Cities of Berkeley, Oakland, and San Jose, for failure to exhaust mandatory

LATHAM&WATKINS^LLP   US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO

5

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    administrative remedies. *See City of San Jose*, 2017 U.S. Dist. LEXIS 123673, at

2    *4. These Bay Area cities are similarly seeking to recover their costs to comply

3    with State-imposed storm water discharge permits through federal lawsuits

4    alleging public nuisance damages, just as the City is doing here. *See id*. at *9.

5    Given the "substantial overlap" in permit compliance costs subject to the

6    jurisdiction of the Commission and similarly sought in the federal lawsuits, Judge

7    Davila held that "the Cities must exhaust their administrative remedies before they

8    can seek relief from the courts." *Id*. at *9-*10. Although the three Bay Area cities

9    likewise framed their lawsuits "as claims for public nuisance," exhaustion is

10   nonetheless required because the public nuisance claims sought recovery for "the

11   same injury" for which the cities could (and did) seek recovery from the State as an

12   unfunded mandate. *Id.* at *9-*10.

13        On August 7, 2017, the Northern District of California administratively

14   closed all three cases. *See* RJN, Ex. 1. On August 14, 2017, the three Bay Area

15   cities filed motions for certification of the order for appeal to the Ninth Circuit

16   under 28 U.S.C. § 1292(b), with a hearing set for December 21, 2017. *See*

17   Plaintiffs' Notice of Motion and Motion for Certification of Order for Appeal

18   Pursuant to 28 U.S.C. § 1292(b), RJN, Ex. 2. On September 14, 2017, Defendants

19   filed an opposition to the Bay Area cities' motion. The Bay Area cities assert that

20   Ninth Circuit review is necessary "to prevent further litigation, if this Court is not

21   the proper forum, or to prevent further delay if it is." *Id*. at 4:23-24 (emphasis in

22   original). The Bay Area cities' Section 1292(b) motion asserts that Judge Davila's

23   order "questions whether the litigation continues in the district court at all . . ." *Id*.

24   at 3:26. The August 4 order held that "the Cities must exhaust their administrative

25   remedies *before* they can seek relief from the courts." *See City of San Jose*, 2017

26   U.S. Dist. LEXIS 123673, at *9-*10 (emphasis added). In other words, cities like

27   Long Beach must invoke the administrative process and obtain a final

28   determination regarding the extent to which their permit compliance costs are to be

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

6

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1   reimbursed by the State before municipalities can pursue these exact same costs

2   through litigation.

3       Defendants have also raised jurisdictional challenges for the failure to

4   exhaust administrative remedies in the Southern District of California, as part of

5   their motion to dismiss the City of San Diego's public nuisance suit seeking

6   recovery of permit compliance costs.  Oral argument occurred on July 28, 2017,

7   and the matter has been submitted.  Notably, the Commission determined in 2010

8   that ten provisions in a 2007 storm water permit to which the City of San Diego

9   was a co-permittee are reimbursable State mandates.  That administrative

10  determination in favor of the City of San Diego has been challenged (by the State)

11  and is now pending before the California Court of Appeal.  The City of San Diego

12  is also a co-permittee on 2013 and 2015 permits, both of which are the subject of

13  separate Test Claims before the Commission.

14  **IV.    ARGUMENT**

15       **A.    The City's Alleged Damages Are Permit Compliance Costs**

16            **Subject to the Exclusive Jurisdiction of the Commission on State**

17            **Mandates**

18       The City's attempt to recover permit compliance costs is governed by

19  California Government Code Sections 17500, *et seq*., which "provide the **sole and**

20  **exclusive procedure** by which a local agency . . . may claim reimbursement for

21  costs mandated by the state."  Cal. Gov. Code § 17552 (emphasis added).  The

22  California Supreme Court's August 2016 decision in *Department of Finance*

23  corroborates that the same storm water permit compliance costs the City seeks in

24  this federal case are unfunded State mandates subject to State reimbursement.  *See*

25  *generally* 1 Cal. 5th 749.

26       In *Department of Finance*, the State, through the Regional Board, granted a

27  Clean Water Act NPDES permit to over 80 Los Angeles County regional

28  governmental entities authorizing them to operate municipal separate storm sewer

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

7

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    systems in the greater Los Angeles area.  *Id.* at 754.  The challenged permit

2    conditions in *Department of Finance* closely resemble various conditions imposed

3    by the NPDES permits of which the City complains here, in large part because

4    many of the same Los Angeles regional water bodies and receiving water

5    limitations are involved.  For instance, both the City's 2016 Amended Permit and

6    the Los Angeles regional permit at issue in *Department of Finance* require

7    industrial and commercial facilities inspections; the implementation of source

8    control programs at construction sites; and "public agency activities" programs

9    designed to minimize storm water pollution impacts from agency-owned or

10   operated facilities and activities.  *Compare* 1 Cal. 5th at 758 *with* Cal. Reg'l Water

11   Quality Control Bd., Waste Discharge Requirements for Municipal Separate Storm

12   Sewer System Discharges from the City of Long Beach, Order No. R4-2014-0024,

13   NPDES Permit. No. CAS004003, §§ VII.G, VII.K, VII.L, RJN, Ex. 5.

14        In addition, both permits impose specific conditions designed to meet the

15   Clean Water Act's requirement that municipal-permittees reduce pollutant

16   discharges to the maximum extent practicable.  *See Dep't of Finance*, 1 Cal. 5th at

17   767; Order No. R4-2014-0024, §§ VII.G, VII.K, RJN, Ex. 5.  *Department of*

18   *Finance* held that EPA regulations give the Regional Board "discretion to

19   determine which specific controls [are] necessary to meet that standard," and, thus,

20   "the State was not compelled by federal law to impose any particular requirement."

21   1 Cal. 5th at 767-68.[2]

22        The City seeks costs in this federal lawsuit that plainly qualify after

23   *Department of Finance* as unfunded State mandates, and it must pursue those costs

---

[2]  Similarly, the State enjoys broad discretion on *how* to implement TMDLs.  "The Clean Water Act does not expressly require the implementation of TMDLs," but the State can choose to require implementation through CWA permits. *See* http://www.waterboards.ca.gov/water_issues/programs/tmdl/background.shtml. Further, any claim by the City that the TMDL obligations regarding PCBs are not State mandates is contradicted by the SAC itself.  *See* SAC, ¶ 164 ("Plaintiffs [sic] have incurred substantial costs deriving from ***state-mandated*** PCB TMDLs.") (emphasis added).

LATHAM&WATKINS LLP    US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO

8

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    through the Commission's administrative process.  Substantively identical permit-

2    related claims by 25 municipalities are before the Commission today.[3]

3          For instance, the SAC alleges:  "[t]he City owns, manages, and operates a

4    municipal stormwater and dry weather runoff system" (SAC, ¶ 30); "[a]s a

5    stormwater system owner and operator, the City is required to comply with its

6    [storm water discharge] permit . . . which includes reduction of PCBs" (*id.*); the

7    City is required to reduce PCBs in storm water under the Harbor Toxics TMDL

8    (*id.*); "the City's system has been and must be further retrofitted and improved in

9    order to reduce and remove PCBs from stormwater and dry weather runoff" (*id.*, ¶

10   34); and the City has "incurred substantial costs deriving from **state-mandated**

11   **PCB TMDLs.**"  *Id.*, ¶ 164 (emphasis added).

12         Moreover, the City has admitted repeatedly in its discovery responses that it

13   is seeking in this federal lawsuit permit compliance costs.  For example, the City

14   asserts it is seeking in litigation:

15             **costs incurred to comply with any and all NPDES Permits**
               **and current and future TMDLs related to PCBs,** [as well as]
16             [a]ll other costs to investigate, monitor, or remediate PCBs . . .
               in Long Beach's conveyance system. This includes, but is not
17             limited to, costs associated with membership in Watershed
               Management Groups and all payments made to groups,
18             associations, and/or coalitions that investigate, monitor, and/or
               remediate PCBs in . . . Long Beach's conveyance system.

19   _____

20   [3]  The 2012 Los Angeles regional storm water discharge permit, which covers Los
     Angeles County and its cities, except Long Beach, contains provisions substantially
21   similar to those of Long Beach's 2016 Amended Permit.  The County of Los
     Angeles and 24 other permittees have challenged certain provisions in the Los
22   Angeles County regional permit in pending "Test Claims" before the Commission,
     and the Test Claims were recently removed from inactive status immediately
23   following the Supreme Court's *Department of Finance* decision.  Long Beach
     stands to benefit directly from the pending decision because Test Claims before the
24   Commission are treated like class actions.

25   The Port of Long Beach takes a similar position with the County because it has
     argued before the Regional and State Water Boards that the Harbor Toxics TMDL
26   amounts to an unfunded mandate because the TMDL contains new programs
     imposed at the discretion of the Regional Board that exceed the Clean Water Act's
27   specific requirements.  *See* Letter from Port of Long Beach to State Water
     Resources Control Bd. (Oct. 26, 2011), at 59, RJN, Ex. 6; Letter from Port of Long
28   Beach to Los Angeles Reg'l Water Quality Control Bd. (Feb. 22, 2011), at 20-21,
     RJN, Ex. 7.

LATHAM&WATKINS LLP   US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO

9

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1   Plaintiff's Second Supp. Objections and Responses to Defendant Pharmacia LLC's

2   Special Interrogatories, Set One, Supp. Response to ROG No. 19, RJN, Ex. 4

3   (emphasis added).

4        Notwithstanding multiple admissions that it seeks in litigation permit

5   compliance costs, the City concedes it "has not sought to recover costs from the

6   State of California as an unfunded mandate," (*See* RJN, Ex. 4, Response to ROG

7   No. 22).  In so doing, the City openly disavows the mandatory administrative

8   process and is opting instead to "initiate[] this action to seek contribution from

9   Monsanto to offset the costs Plaintiff will be forced to incur" to comply with those

10  permits and TMDLs.  *See* RJN, Ex. 4, Response to ROG No. 12.  At least the Bay

11  Area cities acknowledged their mandatory obligations by pursuing their Test

12  Claims in parallel.  As demonstrated by Attachment A to the City's Second

13  Supplemental Objections and Responses, TMDL compliance costs comprise

14  almost $6 million of the City's alleged damages, and storm water BMP costs

15  comprise almost $10 million.  *See* RJN, Ex. 4, Att. A.  These claimed costs fall

16  squarely within the sole and exclusive jurisdiction of the Commission.  The City is

17  not free to disregard California law and create a separate and independent federal

18  litigation pathway to avoid the Commission.

19       As Judge Davila in the Northern District recognized with respect to the three

20  Bay Area cities, "there is substantial overlap between the costs the Cities seek to

21  recover [from the State] in their test claims and in their federal actions.  In both,

22  the Cities seek damages to compensate them for the cost of complying with state-

23  mandated permit obligations."  *City of San Jose*, 2017 U.S. Dist. LEXIS 123673, at

24  *9.  Those findings are similarly based upon the admissions of the three Bay Area

25  cities in their amended complaints.  *See* Defendants' Hearing Exhibits at 5-6, 15

26  (Aug. 3, 2017), RJN, Ex. 8.  Thus, Judge Davila held that administrative

27  exhaustion is required prior to litigation.  *City of San Jose*, 2017 U.S. Dist. LEXIS

28  123673, at *9-*10.  The costs sought by the City in this lawsuit are no different

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

10

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1   and must be presented to the Commission to determine the extent of

2   reimbursement.  The City is testing this Court's tolerance for sanctioning a

3   violation of California's mandatory exhaustion requirement.

4       **B.**    **The City Must Exhaust the State Administrative Process Before**

5              **Commencing Litigation Against Defendants for the Same Costs**

6            1.    California Law on Exhaustion Applies in this Federal Diversity

7               Action

8       "The task of a federal court in a diversity action is to approximate state law

9   as closely as possible in order to make sure that the vindication of the state right is

10  without discrimination because of the federal forum."  *Kwan v. SanMedica Int'l*,

11  854 F.3d 1088, 1093 (9th Cir. 2017).  "[F]ederal courts sitting in diversity

12  jurisdiction apply state substantive law."  *Hawthorne Sav. F.S.B. v. Reliance Ins.*

13  *Co.*, 421 F.3d 835, 841 (9th Cir. 2005).  "A state statute relegating particular state

14  law claims to an administrative forum is substantive law."  *Lauwrier v. Garcia*,

15  2013 U.S. Dist. LEXIS 189996, at *15, *26-*27 (C.D. Cal. Mar. 8, 2013) (holding

16  that plaintiff "has failed to state a claim under California law because he has not

17  alleged that he exhausted [administrative claims] . . . before the California Labor

18  Commissioner," and staying federal lawsuit pending outcome of the administrative

19  process); *see also Martin v. D-Wave Sys.*, 2010 U.S. Dist. LEXIS 17226, at *4-*5

20  (N.D. Cal. Feb. 26, 2010).  As such, the California Government Code's mandatory

21  exhaustion requirement for permit-related unfunded State mandates governs this

22  case.

23      Since the seminal 1941 California Supreme Court *Abelleira* decision, dozens

24  of California decisions have upheld the threshold jurisdictional importance of

25  administrative exhaustion.[4]  "Administrative exhaustion can be either statutorily

26  

---

[4] *See, e.g.,* (1) *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976);
27  (2) *Wilkinson v. Norcal Mutual Ins. Co.*, 98 Cal. App. 3d 307 (1979); (3) *Edgren v. Regents of the Univ. of Cal.*, 158 Cal. App. 3d 515 (1984); (4) *Karlin v. Zalta*, 154
28  Cal. App. 3d 953 (1984); (5) *Rojo v. Kliger*, 52 Cal. 3d 65 (1990); (6) *Farmers Ins.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

11

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1   required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488

2   F.3d 812, 815 (9th Cir. 2007).  Exhaustion serves to protect administrative agency

3   authority and promote efficiency.  *See Woodford*, 548 U.S. at 89-90 (explaining

4   that "exhaustion requirements are designed to deal with parties who do not want to

5   exhaust [their claims]").  Courts find exhaustion to be "especially appropriate

6   where it is apparent that a court would benefit immensely, and uniformity of

7   decisions would be greatly enhanced, by having an expert administrative analysis

8   available before attempting to grapple with such a potentially broad-ranging and

9   technical question of [] law." *P.W. Stephens, Inc. v. State Comp. Ins. Fund,* 21

10   Cal. App. 4th 1833, 1840 (1994) (quotation omitted).

11                  2.      By Statute, the Commission Has the "Sole and Exclusive"

12                          Authority to Adjudicate the Permit Costs at Issue in This Case

13          "[W]here an administrative remedy is provided by statute, relief must be

14   sought from the administrative body and this remedy exhausted before the courts

15   will act." *Abelleira*, 17 Cal. 2d at 292.  Thus, "exhaustion of the administrative

16   remedy is a ***jurisdictional prerequisite*** to resort to the courts." *Id*. at 293

17   (emphasis added); *see also Roberts v. United Healthcare Servs., Inc.*, 2 Cal. App.

18   5th 132, 149 (2016) (same).

19          In 1978, the adoption of Proposition 13 added Article XIII A to the

20   California Constitution, which was aimed at controlling ad valorem property taxes

21   and the imposition of new special taxes. *City of San Jose v. State of California*, 45

22   Cal. App. 4th 1802, 1806-07 (1996).  The following year, Article XIII B was added

23   to the Constitution.  Article XIII B places limits on State and local governments'

24

25   *Exchange v. Superior Court,* 2 Cal. 4th 377 (1992); (7) *Barnes v. State Farm
    Mutual Auto. Ins. Co.,* 16 Cal. App. 4th 365 (1993); (8) *P.W. Stephens, Inc. v. State*

26   *Compensation Ins. Fund,* 21 Cal. App. 4th 1833 (1994); (9) *Palmer v. Regents of
    Univ. of Cal.,* 107 Cal. App. 4th 899 (2003); (10) *Tri-County Special Educ. Local*

27   *Plan Area v. Cty. of Tuolumne,* 123 Cal. App. 4th 563 (2004); (11) *Puga v.
    Chertoff,* 488 F.3d 812 (9th Cir. 2007); (12) *Roberts v. United Healthcare Servs.,*

28   *Inc.,* 2 Cal. 5th 132 (2016).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1  ability to appropriate funds for expenditure, and it includes Section 6, which limits

2  the State's authority to mandate new programs or increased services on local

3  governments.  Section 6 requires the State to reimburse a local entity for the costs

4  of any such programs imposed.

5       To implement Section 6, the Legislature enacted California Government

6  Code Sections 17500-17630.  The new legislation established the Commission "as

7  a quasi-judicial body to carry out a comprehensive administrative procedure for

8  resolving claims for reimbursement of state-mandated local costs arising out of

9  article XIII B, section 6," and it vested the Commission with "the sole and

10 exclusive authority to adjudicate whether a state mandates exists."  *Redevelopment*

11 *Agency v. Comm'n on State Mandates*, 43 Cal. App. 4th 1188, 1192-93 (1996)

12 (internal quotations omitted); *see also City of San Jose*, 45 Cal. App. 4th at 1817-

13 18 (the Legislature "clearly intended to [create] a comprehensive and exclusive

14 procedure by which to implement and enforce section 6" for the "purpose of

15 avoiding multiple proceedings . . . addressing the same claim"); *Hayes v. Comm'n*

16 *on State Mandates*, 11 Cal. App. 4th 1564, 1596-97 (1992) ("The Commission . . .

17 is the entity with the responsibility for considering the issues in the first instance").

18      In establishing the Commission, the Legislature specifically found and

19 declared:

20      [T]he failure of the existing process to adequately and consistently
        resolve the complex legal questions involved in the determination
21      of state-mandated costs has led to an increasing reliance by local
        agencies . . . on the judiciary and, therefore, in order to relieve
22      unnecessary congestion of the judicial system, *it is necessary to*
        *create a mechanism which is capable of rendering sound quasi-*
23      *judicial decisions and providing an effective means of resolving*
        *disputes over the existence of state-mandated local programs*.
24

25 Cal. Gov. Code § 17500 (emphasis added); *see also* Cal. Gov. Code § 17552

26 ("This chapter shall provide the sole and exclusive procedure by which a local

27 agency . . . may claim reimbursement for costs mandated by the state").

28

LATHAM&WATKINS LLP   US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO

13

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    After a "Test Claim" is filed by a governmental entity with the Commission,

2    it must hold a public hearing and determine whether a mandate exists, and, if so,

3    the amount to be reimbursed. *Dep't of Finance*, 1 Cal. 5th at 759. "Until

4    [governmental entities] have exhausted their administrative remedy before the

5    Commission, [they] cannot know whether the statute imposes a state-mandated

6    cost [] or whether that cost will be reimbursed pursuant to the Commission's award

7    on a claim." *Tri-County Special Educ. Local Plan Area v. Cty. of Tuolumne*, 123

8    Cal. App. 4th 563, 572 (2004).

9            3.    This Court Has Discretion to Require Exhaustion

10    Even if exhaustion here were not jurisdictionally mandated by California

11    constitutional and statutory law, the Court still possesses discretion to dismiss or

12    stay the City's federal lawsuit. *See Morrison-Knudsen*, 811 F.2d at 1223; *see also*

13    *Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai, LLC*, 665 F. Supp.

14    2d 1189, 1197, 1200-1203 (D. Haw. 2009) (granting stay based on prudential

15    exhaustion in a diversity action); *City of San Jose*, 2017 U.S. Dist. LEXIS 123673,

16    at *6. Prudential exhaustion does not limit a court's jurisdiction, but it "furnishes

17    the district court with a method to exercise comity toward administrative agencies

18    and to promote efficient use of judicial resources while protecting the rights of

19    parties . . . before the court seeking relief." *Morrison-Knudsen*, 811 F.2d at 1223.

20    In exercising its discretion, "the district court must balance the agency's

21    interest in applying its expertise, correcting its own errors, making a proper record,

22    and maintaining an efficient, independent administrative system, against the

23    interests of private parties in finding adequate redress." *Id.*; *see also Ass'n of*

24    *Irritated Residents v. C&R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1087 (E.D.

25    Cal. 2006) (same). Courts require exhaustion because relaxation of the

26    requirement would "encourage the deliberate bypass of the administrative

27    scheme," and administrative review is likely to preclude or limit the need for

28    judicial review. *See Puga*, 488 F.3d at 815.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

14

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1          4.      <u>Failure to Exhaust Bars the City's Lawsuit Even If the City Has</u>

2                 <u>Not Yet Invoked the Administrative Process</u>

3         California courts have repeatedly required parties to exhaust the

4 Commission's process as a fundamental jurisdictional prerequisite to litigation.

5 *E.g.*, *Lake Madrone Water Dist. v. State Water Res. Control Bd.*, 209 Cal. App. 3d

6 163, 175-76 (1989); *Cty. of Contra Costa v. State of Cal.*, 177 Cal. App. 3d 62, 77-

7 78 (1986). "Exhaustion of available administrative remedies is a condition

8 precedent to obtaining judicial relief, even though the party has a cause of action

9 which is properly triable in the courts." *Kaiser Foundation Hosps. v. Superior*

10 *Court*, 128 Cal. App. 4th 85, 100 (2005) (lawsuit dismissed for failure to exhaust

11 where plaintiff argued exhaustion not required on the ground that the

12 administrative process is an inadequate remedy). Statutorily required exhaustion

13 applies with equal force—as it must—where, as here, a plaintiff has not yet begun

14 the required administrative process. *See, e.g.*, *Roberts*, 2 Cal. App. 5th at 151

15 (affirming dismissal of lawsuit where "[i]t is undisputed that plaintiff did not

16 exhaust *any* of his administrative remedies" as required by the Medicare Act)

17 (emphasis in original); *2974 Properties, Inc. v. Resolution Trust Corp.*, 23 Cal.

18 App. 4th 871, 876 (1994) (dismissing claims against Resolution Trust Corporation

19 because plaintiffs had not filed any administrative claim with the receiver). Thus,

20 "a litigant must ordinarily show that he ***has invoked and exhausted*** the remedy

21 before resorting to the judicial process." *Myers v. Mobil Oil Corp.*, 172 Cal. App.

22 3d 1059, 1063 (1985) (emphasis added).

23         The failure to invoke and exhaust an available, mandatory administrative

24 process bars this federal action. Indeed, as a California Court of Appeal has held

25 in the unfunded State mandate context, the failure to invoke and exhaust the

26 Commission's mandatory administrative process is jurisdictional. *See Cty. of*

27 *Contra Costa*, 177 Cal. App. 3d at 78. The court explained that exhaustion of the

28 Commission's administrative process was required because "[t]he determination of

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO
   US-DOCS\92605327

15

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

a reimbursement claim was within the jurisdiction of the administrative agency,
pursuit of the remedy would not result in irreparable harm, the agency could grant
an adequate remedy, and the agency's decision was not preordained." *Id.* Here,
like the municipalities in *County of Contra Costa*, the City has failed to exhaust—
much less invoke—the Commission's statutorily mandated administrative process.
As such, the Court lacks jurisdiction, and the City's federal lawsuit is barred. *See
also Roth v. City of Los Angeles*, 53 Cal. App. 3d 679, 687-88 (1975) (plaintiffs'
failure to attend city council hearing "constitutes a nonexhaustion of an available
administrative remedy" and, thus, plaintiffs are "precluded from attacking [the
city's abatement order] in this judicial action").[5]

Prudential or discretionary exhaustion principles likewise apply where a
plaintiff has yet to begin the requisite administrative process before filing suit.  In
such circumstances, courts have repeatedly dismissed claims for failure to exhaust
available administrative remedies. *See*, *e.g.*, *Al Seraji v. Gowadia*, 2017 U.S. Dist.
LEXIS 97162, at *13 (C.D. Cal. Apr. 28, 2017) (imposing prudential exhaustion
and dismissing constitutional claims arising out of the Transportation Security
Administration's ("TSA") denial of application where plaintiff chose not to appeal
TSA's determination; "excusing administrative exhaustion would seriously disrupt
the [] administrative processes by encouraging applicants to deliberately bypass the
[] appeals process"); *Western Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 977
(9th Cir. 2012) (affirming dismissal of claim where plaintiff failed to first present
that claim to the public utilities commission before bringing it in federal court);
*Foster v. Blue Shield of Cal.*, 2009 U.S. Dist. LEXIS 46619, at *11, *21 (C.D. Cal.
June 3, 2009) (dismissing action where plaintiff did not pursue administrative
remedies at all); *Mellor v. Solomon Entities Defined Benefit Pension Plan*, 2011

---

[5] In *Roth*, the court explained that "the fact that the [administrative] remedy is no
longer available does not, of course, alter application of the [exhaustion] doctrine,
as to hold otherwise would obviously permit circumvention of the entire judicial
policy behind the doctrine." *Id.* at 687 (citations omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

16

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    U.S. Dist. LEXIS 110087, at *7-*10, *13 (C.D. Cal. Sept. 26, 2011) (granting

2    motion to dismiss with prejudice where plaintiff failed to initiate and exhaust

3    administrative process under pension plan).  Similarly, courts have stayed federal

4    actions pending satisfaction of prudential exhaustion.  *See, e.g.*, *Tomas v. Rubin*,

5    926 F.2d 906, 911-12 (9th Cir. 1991) (finding district court abused its discretion by

6    failing to require plaintiff to exhaust statutory remedies, and remanding with

7    instructions to stay the case pending exhaustion, where plaintiff had not yet

8    initiated the administrative process).

9          Any counter-argument that the City should not be required to exhaust the

10   Commission's administrative process simply because it has chosen not to invoke

11   that mandatory process is irrelevant—exhaustion still applies.

12          5.    Public Policy Considerations Heavily Favor Requiring

13                Exhaustion

14         The policy considerations in favor of dismissing or staying the City's federal

15   action are profound.  Unless exhaustion is enforced here, the City (and hundreds of

16   other similarly situated California municipalities with storm water permits) will not

17   pursue claims against the State vigorously, or at all (as the City has yet to do here).

18   The State's mandatory administrative process will be rationalized as slow and

19   cumbersome in comparison to more financially attractive tort litigation with the

20   potential for punitive damages and attorney fees (in the view of the City).  *See*

21   SAC, Second and Third Prayers for Relief.  If such litigation is weighed against the

22   State administrative process, the City may not even attempt to pursue its costs to

23   comply with its current permits or future permits—even when Los Angeles County

24   permittees subject to near-identical permit provisions are currently pursuing Test

25   Claims before the administrative agency.

26         The exhaustion principle is intended to keep the City's incentives aligned

27   with important constitutional and statutory principles and requires recovery of

28   State mandates *from the State*.  Anything less will incrementally erode the

LATHAM&WATKINS LLP   US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO

17

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1   Legislature's public policy objectives for the Commission as set forth in California

2   Government Code Section 17552, and it will create a judicial bypass of the

3   Commission's process.  Indeed, both the State and the City are aligned *financially*

4   toward any outcome that dilutes the Commission's exclusive authority, reduces the

5   financial burden on the State for its own policy and permitting choices, and

6   increases the City's potential financial reward via private party tort litigation.

7        Further, no one has asked (or answered) the logical follow-on questions of

8   whether third parties targeted through litigation to pay for unfunded State mandates

9   in lieu of the administrative process have any right of recovery or subrogation

10  against the State, or whether double recovery is or is not available.  Allowing this

11  case to proceed without mandatory exhaustion under these circumstances would

12  push pending and future Commission matters, as well as the instant case, into

13  uncharted waters.  The public policy complications of this pending case outweigh

14  any benefit the City could articulate for bypassing the mandatory exhaustion

15  requirement, especially where the City contends its claims are not subject to any

16  statute of limitations.

17       Administrative review could obviate this action or limit its scope, as the

18  Commission may find the City's permit costs, in whole or in part, to be unfunded

19  State mandates subject to State reimbursement.  *See Tri-County*, 123 Cal. App. 4th

20  at 572.  Accordingly, jurisdiction is lacking.  The Court should dismiss or stay this

21  lawsuit until the City submits to and exhausts the Commission's mandatory

22  administrative process.

23       6.    The City Must First Exhaust Administrative Remedies Even If

24             It Advances Different Legal Theories or Seeks Additional

25             Damages Not Recoverable Under the "Test Claim" Process

26       California law is settled that efforts to recoup costs subject to mandatory

27  exhaustion under different legal theories or which are appended as new costs not

28  otherwise subject to administrative review are immaterial.  The seminal case for

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

18

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

this proposition is *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976), and the *Westlake* doctrine has been followed closely in California for decades.[6] Pursuant to *Westlake*, the "failure to exhaust administrative remedies will bar actions for damages, including tort claims." *Edgren v. Regents of the Univ. of Cal.*, 158 Cal. App. 3d 515, 520 (1984).

It does not matter whether product liability or public nuisance theories are advanced in support of claims for permit-related costs. Judge Davila rejected the Bay Area cities' argument that there is no requirement to exhaust their administrative claims before they pursue tort claims in federal court because their public nuisance tort claims seek relief (in part) that is unavailable from the Commission. *See City of San Jose*, 2017 U.S. Dist. LEXIS 123673, at *9-*10.

Exhaustion is required even if plaintiffs seek additional remedies not available through the administrative process. *See P.W. Stephens*, 21 Cal. App. 4th at 1840 (exhaustion required "even if the administrative agency cannot provide the precise relief requested or needed"). That the City purportedly seeks costs in addition to permit compliance costs is of no moment. *City of San Jose*, 2017 U.S. Dist. LEXIS 123673, at *9-*10 ("Although the Cities frame their federal actions as claims for public nuisance, the Cities seek the same recovery for the same injury before the Commission. As such, the Cities must exhaust their administrative remedies before they can seek relief from the courts."). The permit compliance costs pled by the City and which are a foundation of this federal action must be presented to the Commission first, regardless of any other potential costs sought and theories advanced.

---

[6] Cases following *Westlake* include: *Wilkinson v. Norcal Mutual Ins. Co.*, 98 Cal. App. 3d 307, 317 (1979); *Karlin v. Zalta*, 154 Cal. App. 3d 953, 980 (1984); *Edgren v. Regents of the Univ. of Cal.*, 158 Cal. App. 3d 515, 520-21 (1984); *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 400 (1992); *P.W. Stephens, Inc. v. State Compensation Ins. Fund*, 21 Cal. App. 4th 1833, 1840 (1994); *Palmer v. Regents of Univ. of Cal.*, 107 Cal. App. 4th 899, 903-04 (2003).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

US-DOCS\92605327

19

CASE NO. 2:16-cv-03493-FMO-AS
MEMORANDUM OF P&A ISO DEFS.'
RENEWED MOTION TO DISMISS OR STAY

1    **V.       CONCLUSION**

2            The administrative process created by California Government Code

3    Sections 17500-17630 is the sole and exclusive pathway for the City to recover its

4    State-mandated permit compliance costs.  The City must adhere to that mandatory

5    process prior to seeking judicial relief.  This action therefore must be dismissed, or

6    at a minimum stayed, until the City has invoked and exhausted the administrative

7    remedies mandated by law.

8    Dated:  September 21, 2017              LATHAM & WATKINS LLP

9                                           By /s/ Robert M. Howard
                                               Robert M. Howard (Bar No. 145870)
10                                             robert.howard@lw.com
                                               Andrea M. Hogan (Bar No. 238209)
11                                             andrea.hogan@lw.com
                                               Jeffrey P. Carlin (Bar No. 227539)
12                                             jeff.carlin@lw.com
                                               12670 High Bluff Drive
13                                             San Diego, California  92130
                                               Tel:  858.523.5400 / Fax:  858.523.5450
14
                                               CAPES, SOKOL, GOODMAN
15                                             AND SARACHAM, PC
                                               Adam E. Miller, MSBA #40945
16                                             (Admitted *Pro Hac Vice*)
                                               miller@capessokol.com
17                                             7701 Forsyth Boulevard, Twelfth Floor
                                               St. Louis, Missouri 63105
18                                             Tel.: 314.754.4870 / Fax: 314.754.4811

19                                             MCDERMOTT WILL & EMERY LLP
                                               Anthony N. Upshaw, FLBA #861091
20                                             (Admitted *Pro Hac Vice*)
                                               aupshaw@mwe.com
21                                             333 S.E. 2 Avenue, Suite 4500
                                               Miami, FL 33131
22                                             Tel.: 305.358.3500 / Fax: 305.675.8031

23                                             *Attorneys for Defendants Monsanto*
                                               *Company, Solutia Inc., and Pharmacia LLC*

24

25

26

27

28

LATHAM&WATKINS LLP   US-DOCS\92605327
ATTORNEYS AT LAW
SAN DIEGO
                                               20
                                               CASE NO. 2:16-cv-03493-FMO-AS
                                               MEMORANDUM OF P&A ISO DEFS.'
                                               RENEWED MOTION TO DISMISS OR STAY