1  **BARON & BUDD, P.C.**
Scott Summy (*Pro Hac Vice,* TX Bar No. 19507500)
2  SSummy@baronbudd.com
Carla Burke Pickrel (*Pro Hac Vice,* TX Bar No. 24012490)
3  cburkepickrel@baronbudd.com
3102 Oak Lawn Ave, #1100
4  Dallas, Texas 75219
Telephone: (214) 521-3605
5
**BARON & BUDD, P.C.**
6  John P. Fiske (SBN 249256)
Fiske@baronbudd.com
7  11440 W. Bernardo Court, Suite 265
San Diego, California 92127
8  Telephone: (858) 251-7424

9  *Proposed Lead Class Counsel*
*Additional counsel listed on signature page*
10
## UNITED STATES DISTRICT COURT
11
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
12

| | |
|---|---|
| 13  CITY OF LONG BEACH, a municipal corporation; COUNTY OF LOS ANGELES, a political subdivision; CITY OF CHULA VISTA, a municipal corporation; CITY OF SAN DIEGO, a municipal corporation; CITY OF SAN JOSE, a municipal corporation; CITY OF OAKLAND, a municipal corporation; CITY OF BERKELEY, a municipal corporation; CITY OF SPOKANE, a municipal corporation; CITY OF TACOMA, a municipal corporation; CITY OF PORTLAND, a municipal corporation; PORT OF PORTLAND, a port district of the State of Oregon; BALTIMORE COUNTY, a political subdivision; MAYOR AND CITY COUNCIL OF BALTIMORE; all individually and on behalf of all others similarly situated, | CASE NO.: 2:16-cv-03493-FMO-AS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF NOTICE PLAN, APPOINTMENT OF CLASS ACTION SETTLEMENT ADMINISTRATOR, AND APPOINTMENT OF CLASS COUNSEL<br><br>*[Filed Concurrently with Notice Motion and Motion; Proposed Order]*<br><br>Time of Hearing: 10:00 a.m.<br>Date of Hearing: July 23, 2020<br>Courtroom: 6D<br>Honorable Fernando M. Olguin |
| Plaintiffs, | |
| v. | |
| MONSANTO COMPANY; SOLUTIA INC., and PHARMACIA LLC, and DOES 1 through 100, | File Date:       May 19, 2016<br>Trial Date:      May 11, 2021 |
| Defendants. | |

i

# **TABLE OF CONTENTS**

I. STATEMENT OF THE CASE ...................................................................... 1

II. TERMS OF THE SETTLEMENT ............................................................... 3

    A. The Settlement Class .......................................................................... 3

        1. Settlement Class Allocation ............................................................ 4

        2. Monitoring Fund .............................................................................. 5

        3. TMDL Fund ..................................................................................... 6

        4. Sediment Sites Fund ....................................................................... 7

        5. Special Needs Funds ...................................................................... 10

    B. Additional Terms of the Settlement Agreement ...................................... 14

        1. Effect of Future State Attorney General Action ............................. 14

        2. Settlement Administration and Class Notice ................................. 15

        3. Exclusion and Objection Rights ..................................................... 16

        4. Cancellation ................................................................................... 18

        5. Attorneys' Fees and Litigation Costs and Expenses ..................... 18

        6. Mutual Releases ............................................................................. 18

III. STANDARD OF REVIEW ....................................................................... 20

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................. 22

    A. Rule 23(a) Is Satisfied for Purposes of Certifying the Settlement
Classes ...................................................................................................... 22

        1. The Settlement Class is Numerous ................................................ 22

        2. The Settlement Class Members Share Common Questions of
Law and Fact ...................................................................................... 23

        3. The Claims of the Class Representatives Are Typical of those
of the Proposed Classes ...................................................................... 23

        4. The Class Representatives are Adequate ....................................... 24

    B. Rule 23(b) Is Satisfied for Purposes of Certifying the Settlement
Classes ...................................................................................................... 25

ii

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
      PROPOSED SETTLEMENT ............................................................. 26
      A.   Class Representatives and Class Counsel Have and Will Continue to
           Zealously Represent the Class ................................................. 29
      B.   The Settlement Is the Product of Good Faith, Informed, and Arm's-
           Length Negotiations, and It Is Fair .......................................... 30
      C.   The Settlement Provides Significant Benefits in Exchange for the
           Compromise of Strong Claims. ................................................ 31
           1.   The Risk, Expense, Complexity, and Duration of Further
                Litigation Weighs in Favor of Approval ........................ 31
           2.   The Amount Offered in Settlement Supports Approval ............... 33
           3.   The Effectiveness of the Proposed Method of Distributing
                Relief to Class Members, Including the Method of Processing
                Class-Member Claims Supports Approval .................................. 34
           4.   Extent of Discovery Completed and the Stage of Proceedings
                Weigh in Favor of Approval ........................................... 34
           5.   The Experience and Views of Counsel Weigh in Favor of
                Approval ............................................................. 35
           6.   The Presence of a Governmental Participant Weighs in Favor
                of Approval .......................................................... 36
VI.   THE COURT SHOULD APPOINT CLASS ACTION SETTLEMENT
      ADMINISTRATOR ......................................................................... 37
VII.  THE    COURT    SHOULD    APPROVE    THE    CONTENT    AND
      DISTRIBUTION OF THE PROPOSED NOTICE TO THE SETTLEMENT
      CLASS MEMBERS ........................................................................ 37
VIII. THE COURT SHOULD APPOINT CLASS COUNSEL .................................. 37
IX.   ESTABLISHMENT OF FINAL APPROVAL AND FAIRNESS HEARING
      AND ASSOCIATED DEADLINES ................................................... 38

iii

**X.** CONCLUSION ................................................................................................38

EXHIBIT INDEX ...................................................................................................40

iv

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................21

*Byrne v. Santa Barbara Hospitality Services, Inc.*,
    2017 WL 5035366 (C.D. Cal. 2017) ...............................................................29

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................................................35

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. 2019) ...............................................................28

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ....................................................................27, 28

*City of Berkeley v. Monsanto Co.*,
    Case No. 5:16-cv00071-EJD (N.D. Ca.) ...........................................................2

*City of Chula Vista v. Monsanto Co.*,
    Case No. 3:18-CV-01942-BEN-JMA (S.D. Ca.) ................................................2

*City of Long Beach v. Monsanto Co.*,
    Case No. 2:16-CV-03493-FMO-AS (C.D. Ca.) ..................................................2

*City of Oakland v. Monsanto Co.*,
    Case No. 5:15-cv-5152-EJD (N.D. Ca.) ............................................................2

*City of San Diego v. Monsanto Co.*,
    Case No. 3:15-CV-00578-WQH-AGS (S.D. Ca.) ...............................................2

*City of San Jose v. Monsanto Co.*,
    Case No. 5:15-cv-03178-EJD (N.D. Ca.) ...........................................................2

*City of Spokane v. Monsanto Co.*,
    Case No. 2:15-CV-00201-SMJ (E.D. Wa.) ...............................................2, 3, 31

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .........................................................................26

*Feller v. Transamerica Life Ins. Co.*,
    2019 WL 6605886 (C.D. Cal. 2019) ...............................................................28

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................*passim*

v

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 24

*Hartranft v. TVI, Inc.,*
    2019 WL 7195324 (C.D. Cal. 2019) ............................................................. 28

*Kenneth Glover, et al. v. City of Laguna Beach, et al.,*
    2018 WL 6131601 (C.D. Cal. 2018) ............................................................. 28

*L.A. County Flood Control District v. Monsanto Co.,*
    Case No. 2:19-CV-0464-GW-AFM (C.D. Ca. ) ........................................... 2

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ..................................................................... 35

*Lowdermilk v. United States Bank National Assoc.,*
    479 F.3d 994 (9th Cir. 2007) ....................................................................... 23

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ................................................................ 29, 35

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) ................................................................ 24, 25

*National Rural Telecommunications Cooperative v. DIRECTV, Inc. ("NRTC"),*
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... passim

*In re Netflix Privacy Litig.,*
    2013 WL 1120801 (N.D. Cal. 2013) ............................................................ 28

*Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v.*
    *Anderson,*
    390 U.S. 414 (1968) ..................................................................................... 21

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) .................................................... 21, 26, 32, 34

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ......................................................................... 36

*Port of Portland v. Monsanto Co.,*
    Case No. 3:17-cv-00015-PK (D. Ore.) .......................................................... 2

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ....................................................................... 32

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................................ 22, 24

*In re Tableware Antitrust Litig.,*
 484 F.Supp.2d 1078 (N.D. Cal. 2007)..................................................................22

*Taylor v. Shippers Transp. Express, Inc.,*
 No. CV1302092BROPLAX, 2015 WL 12658458 (C.D. Cal. 2015) ......................36

*Torrisi v. Tucson Elec. Power Co.,*
 8 F.3d 1370 (9th Cir. 1993) ................................................................................28

*Touhey v. U.S.,*
 No. EDCV 08-01418-VAP, 2011 WL 3179036 (C.D. Cal. 2011)..........................36

*Valentino v. Carter-Wallace, Inc.,*
 97 F.3d 1227 (9th Cir. 1996) ..............................................................................26

*Wal-Mart Stores, Inc. v. Dukes,*
 131 S. Ct. 2541 (2011) ..................................................................................23, 24

*Woodard v. Labrada,*
 No. EDCV1600189JGBSPX, 2019 WL 6998775 (C.D. Cal. 2019) ................32, 35

**Other State Cases**

*City of Portland v. Monsanto Co.,*
 Case No.3:16-cv-01418-MO (D. Ore.).....................................................................2

*Mayor and City Council of Baltimore v. Monsanto Co.,*
 Case No. 1:19-cv-00483-RDB .................................................................................2

**Federal Statutes**

code
 §§ ..................................................................................................8, 11, 13

Comprehensive Response, Compensation and Liability Act ......................................20

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.
 § 1715(b) ....................................................................................16, 17, 18

**Other Authorities**

(2) USGS HUC 12 .....................................................................................................4

Fed. R. Civ. P. 23 ............................................................................................*passim*

Fed. R. Civ. P. 23(a) and (b)(3).................................................................................21

Fed. R. Civ. P. 23(e)(2)(A).......................................................................................29

Fed. R. Civ. P. 23(e)(2)(B).......................................................................................30

Fed. R. Civ. P. 23(g) .................................................................................................. 37

Federal Rule of Evidence 408 ................................................................................... 13

Federal Rule of Evidence § 408 ........................................................................... 8, 11

Federal Rules of Civil Procedure Rule 23(e) ...................................................... 20, 21

Joseph M. McLaughlin, 2 *McLaughlin on Class Actions* § 6.6 (3d ed. 2006) ............. 22

*Manual for Complex Litigation* § 21.633 ................................................................. 21

Rule 23(a) ..................................................................................................... 21, 22, 25

Rule 23(a)(1) .............................................................................................................. 22

Rule 23(a)(2) .............................................................................................................. 23

Rule 23(a)(3) .............................................................................................................. 23

Rule 23(a)(4) .............................................................................................................. 24

Rule 23(b) ............................................................................................................ 21, 25

Rule 23(b)(3) ....................................................................................................... 25, 26

Rule 23(b)(3)'s ........................................................................................................... 26

Rule 23(e)(2) ....................................................................................................... 27, 28

Rule 23(e)(2)(A)-(D) ................................................................................................. 28

Rule 23(e)(3) .............................................................................................................. 27

Rule 23's ..................................................................................................................... 38

U.S. EPA 303(d) .......................................................................................................... 4

Plaintiffs and Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC (collectively, "Monsanto" or "Defendant") have reached a proposed nationwide class action settlement (the "Settlement") to resolve allegations that Defendant's design, manufacture, sale, promotion, and supply of chemicals known as polychlorinated biphenyls ("PCBs") resulted in the contamination of Plaintiffs' stormwater and other resources, necessitating treatment and/or remediation to remove PCBs. Defendant has agreed to pay as a net class benefit $550 million into a common fund to be distributed to 2,528 class members across the United States. Defendant also has agreed to separately pay class counsel attorneys' fees and expenses, and class administration and notice costs.

This Settlement is the result of contentious, prolonged, arm's length negotiations during in-person meetings and numerous telephone conference mediation sessions between early to mid-2019 and March 2020 when a confidential term sheet was executed. The mediation process was led by JAMS mediator Judge (Ret.) Jay Gandhi. The Parties negotiated a resolution to litigation that has been pending since early 2015 in several jurisdictions across the United States. The Settlement confers substantial relief for Settlement Class Members who will automatically receive a minimum payment and may provide additional payments upon application.

The Parties move this Court for an Order pursuant to Fed. R. Civ. P. 23 that would: (1) certify the Settlement Class; (2) preliminarily approve the terms of the proposed Settlement Agreement; (3) approve and direct the proposed Notice Plan; (4) appoint the Class Action Settlement Administrator; and (5) appoint Lead and Co-Class Counsel.

## I.   <u>STATEMENT OF THE CASE</u>

Monsanto Company (now known as Pharmacia LLC) manufactured a class of industrial chemicals called polychlorinated biphenyls ("PCBs") between the 1930s and 1977. Plaintiffs allege that, while Monsanto was promoting the widespread use of PCBs, the company also knew that PCBs were toxic and foresaw the type of environmental/stormwater contamination alleged in these cases. Specifically, Plaintiffs allege that Monsanto internally acknowledged that PCBs would escape end use

applications and migrate into the surrounding air or onto nearby surfaces and contaminate natural resources. Defendant vigorously denies these allegations.

*The Litigation.* Plaintiffs' Counsel filed the following actions, including the instant Action, against Monsanto in federal district courts around the country related to Defendant's manufacture, sale, testing, disposal, release, marketing, promotion, or management of PCBs: *City of Long Beach v. Monsanto Co.*, Case No. 2:16-CV-03493-FMO-AS (C.D. Ca.); *City of Berkeley v. Monsanto Co.*, Case No. 5:16-cv00071-EJD (N.D. Ca.); *City of San Diego v. Monsanto Co.*, Case No. 3:15-CV-00578-WQH-AGS (S.D. Ca.); *City of Oakland v. Monsanto Co.*, Case No. 5:15-cv-5152-EJD (N.D. Ca.); *City of San Jose v. Monsanto Co.*, Case No. 5:15-cv-03178-EJD (N.D. Ca.); *Mayor and City Council of Baltimore v. Monsanto Co.*, Case No. 1:19-cv-00483-RDB); *City of Chula Vista v. Monsanto Co.*, Case No. 3:18-CV-01942-BEN-JMA (S.D. Ca.); *County of Los Angeles; L.A. County Flood Control District v. Monsanto Co.*, Case No. 2:19-CV-0464-GW-AFM (C.D. Ca. ); *Port of Portland v. Monsanto Co.*, Case No. 3:17-cv-00015-PK (D. Ore.); *City of Portland v. Monsanto Co.*, Case No.3:16-cv-01418-MO (D. Ore.); *City of Spokane v. Monsanto Co.*, Case No. 2:15-CV-00201-SMJ (E.D. Wa.) collectively referred to as "the Public Entity Cases".

In these lawsuits, Plaintiffs asserted various claims against Defendant for alleged PCB-related impairments to water bodies and stormwater systems. Plaintiffs alleged that PCBs are present at sites and public properties, including in stormwater, stormwater systems, waterbodies, sediment, natural resources, fish and wildlife. Plaintiffs sought compensatory damages and injunctive and equitable relief. Defendant contested the allegations as well as the application of Plaintiffs' asserted causes of action. In addition, Defendant filed counterclaims against several Plaintiffs, seeking to impose liability on Plaintiffs under various environmental statutes. Over the course of five years, the Parties argued dozens of motions and engaged in exhaustive discovery, including several dozen terabytes of documents and electronic information. *See* Exhibit C, Declaration of Scott Summy, at ¶¶ 15, 16, 19. Some cases, such as the *Spokane* and *San Diego* actions,

2

advanced beyond summary judgment motions and/or pre-trial and in limine motions. The *Spokane* trial date was extended to accommodate the execution and administration of this Settlement.

*The Mediation*. While discovery and dispositive motions were being litigated in the Public Entity Cases, preliminary and exploratory discussions commenced in early to mid-2019. In late 2019, settlement discussions progressed to the point where the Parties decided to participate in non-binding mediation, which occurred in early 2020. The Parties, through their counsel, attended and participated in several mediation sessions conducted by retired Magistrate Judge Jay C. Gandhi ("the Mediator"), who is an experienced, independent mediator, and further engaged in additional extensive communications with the Mediator and each other.

*The Settlement Agreement.* The Parties reached the material terms of this nationwide Settlement with respect to "As of June 24, 2020 only, but not later, all NPDES Phase I and II city, town, village, borough, township, and independent port district MS4 permittees with jurisdictional boundaries within a HUC 12 Watershed that contains and/or is immediately adjoining a 303(d) water body impaired by PCBs and all NPDES Phase I and II county MS4 permittees with urbanized, unincorporated boundaries within a HUC 12 Watershed that contains and/or is immediately adjoining a 303(d) water body impaired by PCBs," which is now the proposed Class Definition.

As described in detail below, the Settlement provides direct and significant benefits to the Settlement Class, while avoiding the risks and delay associated with further litigation.

## II.     TERMS OF THE SETTLEMENT

### A.     The Settlement Class

The Settlement Class is defined as follows: "As of June 24, 2020 only, but not later, all NPDES Phase I and II city, town, village, borough, township, and independent port district MS4 permittees with jurisdictional boundaries within a HUC 12 Watershed that contains and/or is immediately adjoining a 303(d) water body impaired by PCBs and all

NPDES Phase I and II county MS4 permittees with urbanized, unincorporated boundaries within a HUC 12 Watershed that contains and/or is immediately adjoining a 303(d) water body impaired by PCBs."

Initial Settlement Class Members are identified in accordance with the Class Definition using three publicly maintained and available databases, as follows: (1) the U.S. EPA 303(d) list of bodies of water impaired by PCBs; (2) USGS HUC 12 Watersheds; (3) U.S. Census Bureau.

The following geospatial and data overlay analyses reveal the total, finite list of Initial Settlement Class Members: First, all 303(d) water bodies impaired by PCBs were identified. Then, all USGS HUC 12 Watersheds, which contain and/or are immediately adjoining all 303(d) water bodies impaired by PCBs, were identified. Thirdly, as of June 24, 2020 only, but not later, the NPDES Phase I and II city, town, village, borough, township, and independent port district MS4 permittees with jurisdictional boundaries within a HUC 12 Watershed that contains and/or is immediately adjoining a 303(d) water body impaired by PCBs and all NPDES Phase I and II county MS4 permittees with urbanized, unincorporated boundaries within a HUC 12 Watershed that contains and/or is immediately adjoining a 303(d) water body impaired by PCBs, were identified. The U.S. Census Bureau database was used to identify all class members except townships, which were originally identified as MS4 permittees by EPA and then confirmed using the U.S. Census Bureau database.

The total number of Initial Settlement Class Members is 2,528.

## 1. Settlement Class Allocation

The Settlement Funds of five hundred and fifty million dollars ($550,000,000) will be allocated into four separate Allocation Funds as follows:

|                  |               |
|------------------|---------------|
| Monitoring Fund: | $42,895,000   |
| TMDL Fund:       | $250,000,000  |
| Sediments Fund:  | $150,000,000  |
| Special Needs Fund: | $107,105,000 |

4

Each Allocation Fund will be allocated as described in each corresponding section, below.

### 2. Monitoring Fund

The Monitoring Fund will provide a minimum payment to <u>all</u> Settlement Class Members as consideration for a class release. The funds are intended to pay for PCB sampling and/or any other mitigation efforts in the Settlement Class Member's sole discretion, as part of compliance with applicable law. The total number of nationwide class members is 2,528, each of which will receive payment from the Monitoring Fund as follows:

The Monitoring Fund provides payment at four levels based on whether the Initial Settlement Class Member is a Phase I or Phase II NPDES Permittee, and whether the Initial Settlement Class Member contains a population of at least 100,000. Independent port districts are excluded from the population consideration and therefore included in levels at or above 100,000. Phase I Permittees are generally larger than Phase II Permittees. There are two hundred and seventy-three (273) Phase I Initial Settlement Class Members, and there are two thousand two hundred and fifty-five (2,255) Phase II Initial Settlement Class Members. Notwithstanding of any other payment made within the Allocation, Phase I Initial Settlement Class Members with populations at or greater than 100,000 and Phase I independent port districts each will receive thirty thousand dollars ($30,000); Phase I Initial Settlement Class Members with populations less than 100,000 each will receive twenty thousand dollars ($20,000); Phase II Initial Settlement Class Members with populations at or greater than 100,000 and Phase II independent port districts each will receive twenty-five thousand dollars ($25,000); Phase II Initial Settlement Class Members with populations less than 100,000 each will receive fifteen thousand dollars ($15,000).

Phase I $\geq$ 100,000 pop. and Phase I independent port districts: 124 x $30,000 = $3,720,000

Phase I < 100,000 pop.: 149 x $20,000 = $2,980,000

Phase II $\geq$ 100,000 pop. and Phase II independent port districts: 237 x
$25,000 = $5,925,000

Phase II < 100,000 pop.: 2018 x $15,000 = $30,270,000

### 3. TMDL Fund

The TMDL Fund is allocated two hundred and fifty million dollars ($250,000,000) and includes only those Initial Settlement Class Members that are subject to and/or responsible for, as of June 24, 2020 only, but not later, a TMDL, TMDL Alternative, or TMDL Direct-to-Implementation regulation, promulgated or updated after January 1, 2010, wherein PCB is a named constituent. There are two hundred and forty-two (242) TMDL Fund Entities, as of June 24, 2020 only, but not later, as listed in and attached hereto as Exhibit D. TMDL funds are intended to compensate Settlement Class Members for restitution and remediation including mitigation of contaminated property, stormwater, and/or stormwater systems, including compliance with a TMDL.

The TMDL Funds of $250,000,000 are further allocated among all 242 TMDL Fund Entities using the following TMDL Allocation Calculation: for all TMDL Fund Entities, multiply (1) the total jurisdictional area within any HUC 12 Watershed that contains a 303(d) water body impaired by PCBs, by (2) the USGS Geodatabase Imperviousness of such jurisdictional area (known as "Weighted Imperviousness"). Then, proportionally normalize[1] all Weighted Imperviousness values to calculate a weighted, relative percentage for each TMDL Fund Entity. Lastly, multiply (1) the weighted, relative percentage for each TMDL Fund Entity, by (2) the total fund less Population

---

[1] TMDL fund class member portion =

$\left( \frac{\text{Class member's impervious TMDL land area}}{\Sigma \text{ Impervious TMDL land areas of all TMDL fund class members}} \right) x$ (Total TMDL fund – $\Sigma$ population bonus)*

*TMDL fund class member exceeding 3% of total TMDL fund will be capped at 3% of the total TMDL fund. These TMDL fund class members will be subtracted from the proportional calculation of the TMDL fund. A 0.7 multiplier is applied to any TMDL Fund Entity with a population of less than 100,000.

Factor Awards. A 0.7 multiplier is applied to any TMDL Fund Entity with a population of less than one hundred thousand (100,000).

To account for population as a factor in the equitable allocation of the TMDL Fund, each TMDL Fund Entity town, city, village, borough, or township with a population of more than 1 million, and each TMDL Fund Entity county with a population of more than 2 million, will receive a Population Factor Award of $2 million.

No TMDL Fund Entity shall recover more than seven million five hundred thousand dollars ($7,500,000) as an absolute maximum recovery under the TMDL Fund, regardless of whether a Population Factor Award would otherwise have provided for an amount greater than $7,500,000.

### 4. Sediment Sites Fund

The Sediment Sites Fund is allocated $150,000,000 and includes those Initial Settlement Class Members that, as of June 24, 2020 only, but not later, are a named Responsible Party in at least one of three types of regulated Sediment Sites wherein PCBs have contaminated sediments due to stormwater contribution. The three types of Sediments Sites include only the following: (1) U.S. EPA Superfund Sites, (2) U.S. EPA Large Sediment Sites, and/or (3) Clean Water Act Category 4b Sites/Waters. Sediment Site funds are intended to compensate Class Members for restitution and remediation, including mitigation of contaminated property, stormwater and/or stormwater systems, and including compliance with a regulatory process.

The following is the list of the nine (9) Sediment Sites wherein at least one Initial Settlement Class Member, as of June 24, 2020 only, but not later, is a named Responsible Party due to stormwater contribution of PCBs: Diamond Alkali-Lower Passaic River (Newark, New Jersey); Newtown Creek (New York, New York); Gowanus Canal (New York, New York); Lower Duwamish Waterway (Seattle, Washington); Portland Harbor (Portland, Oregon); Commencement Bay, Near Shore/Tide Flats (Tacoma, Washington); Harbor Island (Lead) (Seattle, Washington); Pacific Sound Resources (Seattle, Washington); San Diego Bay (San Diego, California).

The following is the list of the twelve (12) Initial Settlement Class Members that, as of June 24, 2020 only but not later, are named Responsible Parties, due to stormwater contribution of PCBs, in at least one Sediment Site: City of Newark, New Jersey; City of New York, New York; City of Seattle, Washington; King County, Washington; Port of Seattle, Washington; City of Tukwila, Washington; City of Tacoma, Washington; Port of Tacoma, Washington; City of Portland, Oregon; Port of Portland, Oregon; City of San Diego, California; Port of San Diego, California.

The Sediment Fund will be further allocated among the twelve (12) Qualifying Sediment Site Entities pursuant to a court-appointed Special Master, who will equitably allocate Sediment Site funds, upon application, based on the totality and relativity of the following PCB-caused factors: past costs and expenses spent as of the date of the application for Sediment Site remediation; past costs and expenses spent as of the date of the application for other mitigation required due to the Sediment Site; documented and evidenced future costs and expenses that will be spent for Sediment Site remediation; documented and evidenced future costs and expenses that will be spent for mitigation required due to the Sediment Site; and any other important factors or information deemed relevant by the Special Master. The Special Master will rely solely on the application and documents submitted and will not include oral advocacy, presentation, interview, or interactive process. All applications and documents submitted to the Special Master for the Allocation will be and will remain confidential, and subject to Federal Rule of Evidence section 408 and state law equivalent code sections, to this Settlement Allocation process and shall not be disclosed or shared beyond the review of the following: the Special Master, the Allocation Experts, Lead Class Counsel, the Class Action Settlement Administrator, and the Court. At the discretion of the Special Master, Defendant may have access to the information for business purposes only, such as insurance or other business needs, provided however that such materials are maintained by Defendant as confidential to the extent legally allowable. The Class Action Settlement Administrator shall also provide Monsanto with a quarterly accounting of the Settlement Funds and any

distributions made as part of the Allocation. Documents related to the Portland Harbor Superfund Site shall remain confidential in any event during the pendency of the Portland Harbor Superfund Site action. The standard for any judicial oversight or review, if any, of the Special Master will be an "abuse of discretion" standard.

The Sediment Sites Application is attached hereto as Exhibit F. To the extent a Qualifying Sediment Site Entity Opts Out of the Settlement Class, or a Qualifying Sediment Site Entity does not Opt Out but fails to submit an Application, the Special Master will rely on the Allocation Experts to determine, upon application completed by the Allocation Experts, the allocation amount that could have been otherwise allocated to the Qualifying Sediment Site Entity that did not submit an application. Settlement Class Members that do not return a completed application or that return a late application will forfeit the right to appeal as described in Paragraph 79 subsection (f), but will not forfeit the receipt of Reserve Funds, distributed pro-rata after all appeals are exhausted. Funds allocated to any non-Opt-Out Qualifying Sediment Entities shall be disbursed in accordance with this Agreement. Funds allocated to any non-Litigating Entity Qualifying Sediment Site Entity Opt-Outs shall be disbursed to all non-Opt-Out Qualifying Sediment Site Entities on a pro-rata basis as determined by the Special Master. Funds allocated to any Opt-Out Litigating Entity Qualifying Sediment Site Entity shall be refunded to Defendant.

The Special Master shall use the Sediment Sites Application to inform, guide, and design an equitable allocation among all eligible applicants. The Special Master may, but is not required to, create an appeals process by utilizing a Sediment Sites Appeals Reserve Fund of up to ten percent (10%) of the $150,000,000 fund. If created by the Special Master, the appeals process will allow for one (1) *de novo* appeal from each eligible applicant, and any decisions will be at the discretion of the Special Master. The appeals process, if any, shall be conducted within an efficient time-frame so as not to hinder the progress of the overall Allocation. The appeals process, if any, shall include only a two (2) page written appeal explaining the basis for the appeal, referring only to the original

9

application as evidence of such basis. Any Sediment Sites Appeals Reserve Funds remaining after all appeals have been decided by the Special Master shall be redistributed to all Sediment Site Settlement Class Members on a pro-rata basis. All final decisions of the Special Master, after any appeals process, if any, will be final, binding, and unappealable.

### 5. Special Needs Funds

The Special Needs Fund is allocated $107,270,000, and further allocated into two separate parts known as Special Needs Fund, Part A ($57,105,000), and Special Needs Fund, Part B ($50,000,000).

Special Needs Fund, Part A is allocated fifty seven million three hundred and twenty thousand ($57105,000) to compensate and accommodate those Litigating Entities whose time, energy, effort, attorney work product, costs, expenses, and risk of litigation helped to cause the entire Settlement, for the benefit of all 2,528 Initial Settlement Class Members.

Special Needs Fund, Part A is available only to those Initial Settlement Class Members that are Litigating Entities. Litigating Entities are Initial Settlement Class Members that, as of June 24, 2020 only, but not later, (1) have filed tort, public nuisance, and/or product liability lawsuits against Defendants for PCB contamination of stormwater and sediment, and/or (2) that are Named Class Members. Litigating Entities include only the following fifteen (15) Initial Settlement Class Members: City of Chula Vista, City of San Diego, Unified Port District of San Diego, City of Long Beach, County of Los Angeles, City of San Jose, City of Berkeley, City of Oakland, City of Portland, Port of Portland, City of Seattle, City of Tacoma, City of Spokane, City of Baltimore, and Baltimore County.

Special Needs Fund, Part A, will be further allocated pursuant to a court-appointed Special Master, who will equitably and reasonably allocate Part A funds, upon application, based on the totality and relativity of the following factors: whether outside counsel was retained; whether a lawsuit was filed; how long the lawsuit was filed at the

time of Preliminary Class Approval; the case posture and procedure of any lawsuit; the amount, time, energy, cost, and productivity during discovery with Defendants; the retention of experts; the development of expert testimony and reports; the preparation and presentation of experts for deposition; the litigation of significant motions, including but not limited to motions to dismiss, discovery motions, motions for summary judgment or adjudication, in limine motions, and other motions; and any other important factors or information deemed relevant by the Special Master as having a significant impact on, or catalyst for, this Settlement. The Special Master will rely solely on the application and documents submitted and will not include oral advocacy, presentation, interview, or interactive process.

All applications and documents submitted to the Special Master for the Allocation will be and will remain confidential, and subject to Federal Rule of Evidence section 408 and state law equivalent code sections, to this Settlement Allocation process and shall not be disclosed or shared beyond the review of the following: the Special Master, the Allocation Experts, Lead Class Counsel, the Class Action Settlement Administrator, and the Court. The Class Action Settlement Administrator shall also provide Monsanto with a quarterly accounting of the Settlement Funds and any distributions made as part of the Allocation. The standard for any judicial oversight or review, if any, of the Special Master will be an "abuse of discretion" standard. The Special Master will give attention and consideration to any Litigating Entity that has incurred attorneys' fees to outside counsel, other than Lead or Co-Class Counsel. The Special Master will reasonably and equitably prioritize and reimburse any Litigating Entity that, through outside counsel other than Lead or Co-Class Counsel, incurred reasonable, documented out-of-pocket litigation costs.

Litigating Entities, which as of October 2019, were under contract for representation by Lead or Co-Class Counsel shall not recover for outside counsel fees in the Special Needs Fund, Part A. Litigating Entities that retained outside counsel, and that were not under contract for representation by Lead or Co-Class Counsel, may apply for

and receive, subject to Special Master Allocation, an equitable and reasonable allocation for such outside counsel, including attorneys' fees and costs. Nothing herein shall prevent any Litigating Entity from applying for and receiving, subject to Special Master Allocation, an equitable allocation for in-house or general counsel fees, overhead, salaries, time, energy, costs, resources, and/or attention, including but not limited to city attorneys, county counsel, and/or general counsel.

The Special Needs Fund, Part A Application is attached hereto as Exhibit G. The Special Master shall use the Special Needs Fund, Part A Application to inform, guide, and design an equitable allocation among all eligible applicants. Litigating Entities that do not timely return a completed application forfeit any right to Part A Funds.

The Special Master may, but is not required to, create an appeals process by utilizing a Part A Appeals Reserve Fund of up to ten percent (10%) of the $57,105,000 fund. If created by the Special Master, the appeals process will allow for one (1) *de novo* appeal from each eligible applicant, and any decisions will be the discretion of the Special Master. The appeals process, if any, shall be conducted within an efficient time-frame so as not to hinder the progress of the overall Allocation. The appeals process, if any, shall include only a two (2) page written appeal explaining the basis for the appeal, referring only to the original application as evidence of such basis. Any Part A Appeals Reserve Funds remaining after all appeals have been decided by the Special Master shall be redistributed to all Litigating Entities on a pro-rata basis. All final decisions of the Special Master, after any appeals process, if any, will be final, binding, and unappealable.

Special Needs Fund, Part B, is allocated fifty million dollars ($50,000,000) and available to all Settlement Class Members who apply and make a showing, in the discretion of the Special Master, of a significant regional, state, or national benefit, cost, or contribution regarding 303(d) bodies of water impaired by PCBs through stormwater and/or dry weather runoff, and such benefit, cost, or contribution is not otherwise encompassed within any other part of this Allocation.

The Special Needs Fund, Part B Application is attached hereto as Exhibit H. The

12

Special Master shall use the Special Needs Fund, Part B Application to equitably allocate Part B Funds among only those who apply. Settlement Class Members who do not apply will receive no Part B Funds. Application does not guarantee that the Special Master will allocate Part B Funds to the applicant. Some Part B applicants may not receive any Part B Funds. The Special Master shall use the Special Needs Fund, Part B Application to inform, guide, and design an equitable allocation among all eligible applicants. The Special Master will rely solely on the application and documents submitted and will not include oral advocacy, presentation, interview, or interactive process.

All applications and documents submitted to the Special Master for the Allocation will be and will remain confidential, and subject to Federal Rule of Evidence 408 and state law equivalent code sections, to this Settlement Allocation process and shall not be disclosed or shared beyond the review of the following: the Special Master, the Allocation Experts, Lead Class Counsel, the Class Action Settlement Administrator, and the Court. At the discretion of the Special Master, Defendant may have access to the information for business purposes only, such as insurance or other business needs, provided however that such materials are maintained by Defendant as confidential to the extent legally allowable. The Class Action Settlement Administrator shall also provide Monsanto with a quarterly accounting of the Settlement Funds and any distributions made as part of the Allocation. Documents related to the Portland Harbor Superfund Site shall remain confidential in any event during the pendency of the Portland Harbor Superfund Site action.  Settlement Class Members that do not timely return a completed application forfeit any right to Part B Funds.

The Special Master may, but is not required to, create an appeals process by utilizing a Part B Appeals Reserve Fund of up to ten percent (10%) of the $50,000,000 fund. If created by the Special Master, the appeals process will allow for one (1) *de novo* appeal from each eligible applicant, and any decisions, including regarding eligibility, will be the discretion of the Special Master. The appeals process, if any, shall be conducted within an efficient time-frame so as not to hinder the progress of the overall

Allocation. The appeals process, if any, shall include only a two (2) page written appeal explaining the basis for the appeal, referring only to the original application as evidence of such basis. Any Part B Appeals Reserve Funds remaining after all appeals have been decided by the Special Master shall be redistributed to all Part B awarded applicants only on a pro-rata basis. Part B applicants who did not receive an award under either an initial application or an appeal will not receive any pro-rata distribution after all appeals are exhausted. All final decisions of the Special Master, after any appeals process, if any, will be final, binding, and unappealable.

The Special Master may, in his sole discretion, fairly and reasonably, and consistent with the intention and general structure of the terms of the Allocation, equitably balance monetary allocations to Settlement Class Members to the extent that any did not receive a proper and appropriate Allocation in accordance with the terms herein.

**B.      Additional Terms of the Settlement Agreement**

**1. Effect of Future State Attorney General Action**

In the event that a State Attorney General or any other entity acting on behalf of a State or a State-controlled entity files a future action (on or after March 27, 2020) against Defendant related to PCBs for which one or more Settlement Class Members were or are compensated under this settlement, then Settlement Class Members, within that same state, that are permitted and discharge or release PCBs into the 303(d) body of water impaired by PCBs that is the subject of the newly filed suit, shall have only their future payments reduced by twenty percent (20%). The 20% reduction of future payments shall occur evenly across all remaining payments in the payment schedule. In the event an Attorney General files a PCB suit that attempts to address PCBs across the entire state, then all Settlement Class Members in that state will have their future payments reduced by 20%. This Settlement shall not preclude nor waive any defenses Defendant may have with respect to such subsequently-filed action. This section requires that future payments to each entity be determined and notice of same be provided to Defendant prior to submitting the Settlement for Final Approval.

14

### 2.  Settlement Administration and Class Notice

The Settlement Agreement provides for the engagement, subject to Court approval, of Steven Weisbrot of Angeion Group, LLC as the Class Action Settlement Administrator to advise them with respect to the providing of Notice and administer the Notice to all Settlement Class Members.

The Settlement provides that the Class Action Settlement Administrator shall send the Direct Notices by U.S. Mail, to each member of the Settlement Class identified by the Parties through reasonable efforts as set forth above.   The Notice will advise Settlement Class Members of the following:

(a)   General Terms: The Notice shall contain a plain and concise description of the nature of the Action; the fact of preliminary certification of the Settlement Class for settlement purposes; and the proposed Settlement itself, including a description of the Settlement Class Members, the benefits under the proposed Settlement, and what claims are released under the proposed Settlement.

(b)   Requests for Exclusion: The Notice shall inform Settlement Class Members that they have the right to exclude themselves from (opt out of) the Settlement.   The Notice shall provide the deadlines and procedures for exercising this right.

(c)   Objections:  The Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and appear at the Final Approval Hearing.   The Notice shall provide the deadlines and procedures for exercising these rights.

(d)   The Notice shall inform Settlement Class Members about the amounts being sought by Class Counsel as Attorneys' Fees and Expenses.

All reasonable efforts will be made to notify each Settlement Class Member's in-house counsel or managing executive of each Settlement Class Member. Lead Class Counsel shall promptly provide this information to the Class Action Settlement Administrator.

The Class Action Settlement Administrator will give Notice pursuant to the deadlines set forth in the Court's Preliminary Approval Order. The Class Action

Settlement Administrator will promptly log each Direct Notice that is returned as undeliverable and shall provide copies of the log to Class Counsel and Defense Counsel. The Class Action Settlement Administrator shall take reasonable steps to re-mail all undeliverable Direct Notices to updated addresses provided by the National Change of Address Database maintained by the United States Post Office or by other means. *See* Ex. B, Declaration of Steve Weisbrot, at ¶¶ 17-19. In the event that any Direct Notice mailed to a Settlement Class Member is returned as undeliverable a second time, then no further mailing shall be required. *See* Ex. A, Settlement Agreement, at ¶ 84.

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), Defendant shall serve notice of the settlement via First Class Mail on the appropriate federal and state officials no later than 10 calendar days after the filing of this Settlement Agreement with the Court. Ex. A, Settlement Agreement, ¶ 87.

### 3.  Exclusion and Objection Rights

Any Member of the Settlement Class wishing to do so may opt out of the Settlement Class during the opt-out period. Ex. A Settlement Agreement ¶¶ 94-97. The opt-out period shall expire sixty (60) days after the date Notice is mailed. Those who wish to opt out can do so by providing a written request for exclusion which includes the potential Settlement Class Member's name, address, telephone number, an email address (if available) and an express statement of desire to be excluded from the Settlement Class. *Id.* The request must be sent by certified or first-class mail to the Class Action Settlement Administrator. *Id.* Exclusions sent by any Settlement Class Member to incorrect locations shall not be valid. *Id.* The Class Action Settlement Administrator shall promptly forward within five (5) days copies of any written requests for exclusion to Lead Class Counsel and Defendant's Counsel. *Id.* A list reflecting all requests for exclusion shall be filed with the Court by the Class Action Settlement Administrator no later than twenty-one (21) days before the Final Approval Hearing. *Id.* If a potential Settlement Class Member files a request for exclusion, it may not file an objection. *Id.*

Any Settlement Class Member who elects to opt out of the Settlement Class

pursuant to this Agreement shall not be entitled to relief under or affected by this Agreement. *Id.* Settlement Class Members who have elected to opt out of the Settlement Class may withdraw their opt out requests prior to the Effective Date, but only if they accept the benefits and terms of this Settlement and dismiss with prejudice any other pending action against Defendant arising out of PCB-related impairments to water bodies. *Id.*

Lead Class Counsel shall have the right to contact persons who file exclusion requests and to challenge the timeliness and validity of any exclusion requests, as well as the right to effect the withdrawal of any exclusion filed in error and any exclusion request which a Settlement Class Member wishes to withdraw for purposes of participating in the Settlement as set forth in this Agreement. The Court shall determine whether any of the contested opt-outs are valid.

Settlement Class Members may object to the Settlement. Ex. A, Settlement Agreement, ¶¶ 98-101. The Parties propose that Settlement Class Members who wish to object must file a notice of intent with the Clerk of the Court and the Class Action Settlement Administrator no later than sixty (60) days after the date the Notice is mailed. *Id.* The objection must bear the signature of the Settlement Class Member (even if represented by counsel), the Settlement Class Member's current address and telephone number, and state the exact nature of the objection including any legal support the Settlement Class Member wishes to introduce in support of the objection, and whether or not the Settlement Class Member intends to appear at the final approval hearing. *Id.* If the Class Member is represented by counsel, the objection shall also be signed by the attorney who represents the Settlement Class Member. *Id.* Objections sent by any Settlement Class Member to incorrect locations shall not be valid. *Id.*

The Class Action Settlement Administrator shall forward any objection(s) to Class Counsel and Defendant's Counsel within five (5) days of receipt. *Id.* Any Settlement Class Member who fails to comply with this procedure shall waive and forfeit any and all rights to appear separately and/or to object, and shall be bound by all the terms of this

Settlement Agreement and by all subsequent proceedings, orders and judgments, including, but not limited to, the Release, the Final Order and the Final Judgment in the Actions. *Id.*

Any Settlement Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Settlement Agreement and the terms contained herein are approved, as long as the objecting Settlement Class Member complies with all requirements of this Settlement Agreement applicable to Settlement Class Members, including the timely submission of an Application and other requirements herein. *Id.*

### 4. Cancellation

The Settlement Agreement provides that before the Parties move the Court for Final Approval of the Settlement, Defendant has the option to withdraw from the Settlement if any Named Class Action Plaintiff listed in Paragraph 27 of the Settlement Agreement or more than two percent (2%) of the Settlement Class Members opt out of the Settlement. If any Party that has filed a lawsuit against Defendant as of the issuance of the Final Order approving the Settlement opts out of the Settlement, then the total settlement amount to be paid by Defendant will be reduced by each opting out Plaintiff's allocated share of the Settlement Funds.

### 5. Attorneys' Fees and Litigation Costs and Expenses

After negotiating the terms of the Settlement Agreement, the Parties agreed that Plaintiffs' Counsel may file a motion with the Court for an award of Attorneys' Fees and Expenses not to exceed $98,000,000. This award shall include all fees, costs, and expenses for all Plaintiffs' Counsel (and their employees, consultants, experts, and other agents) who may have performed work in connection with this Action.

### 6. Mutual Releases

Upon entry of the Final Approval Order, Defendant and Released Persons will have released any and all claims arising from PCB contamination that they have alleged or could allege against any Named Class Plaintiffs, Settlement Class Members, and/or Releasing Persons. Upon entry of the Final Approval Order, the Releasing Persons will

18

have released the Released Persons from the Released Claims. Additionally, Defendant is entitled to protection from contribution and/or indemnity claims or actions asserted against Defendant by any person or persons who are not parties to this Settlement Agreement for all Released Claims and all matters alleged in the Action or the Underlying Actions. Nothing in this section shall create a duty on the part of Named Class Plaintiffs, Settlement Class Members, and/or Releasing Persons to defend and/or indemnify Defendant or Released Persons in any contribution and/or indemnity claim. All Releases provided herein shall be mutual between Plaintiffs, Class Members, and Releasing Persons, on the one hand, and Defendant and Released Persons on the other hand.

Each Settlement Class Member agrees to be responsible for any liens, interests, actions, or derivative claims made by any third party for or as against Settlement Funds and/or the consideration that is the subject to this Agreement, to the extent allocated to each Settlement Class Member. Settlement Class Members further agree to defend, indemnify, and hold harmless Defendant against any claim, demand, action, cost, expense, attorneys' fee, loss, judgment, or liability it may be subjected to by any person or entity who may claim through the Settlement, for the portion of the Settlement allocated to each Settlement Class Member, in a derivative manner against Defendant, including without limitation, any insurers, agents, representatives, successors, predecessors, assigns, and attorneys, bankruptcy trustees, and any and all other persons, firms, corporations, associations, and other legal entities who may claim through them in a derivative manner

"Released Claims" means all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been alleged related to the manufacture, sale, testing, disposal, release, marketing, or management of PCBs, including but not limited to any claims based upon or related in any way to the subjects of the Action, the Underlying Actions, or this

Settlement Agreement or any component parts thereof, and regardless of the legal theory or type or nature of damages claimed; provided, however, that nothing in this Settlement Agreement will preclude or affect any action brought by governmental entities seeking response costs, penalties, or other remedies, under the Comprehensive Response, Compensation and Liability Act ("CERCLA") or similar state Superfund statutes and applicable regulations, or under any other laws or regulations, related to Defendant's or a Released Person's discharge or disposal of PCBs. This Agreement shall in no way affect any administrative test claims related to the California Water Board. Released Claims also include any claim for attorneys' fees, expenses, costs, and catalyst fees under any state's law or under federal law. The Releases provided herein shall be mutual between Plaintiffs, Settlement Class Members, and Releasing Persons, on the one hand, and Defendant and Released Persons on the other hand. Releasing Persons release only Released Persons as defined herein

## III.   **STANDARD OF REVIEW**

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits.  It provides that a "class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Although the procedure for approval of a class action is not delineated in Rule 23, approval under Rule 23(e) involves a two-step process "in which the [c]ourt first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *National Rural Telecommunications Cooperative v. DIRECTV, Inc. ("NRTC")*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing *Manual for Complex Litigation, Third*, § 30.14, at 236–37 (1995)).

For a settlement class to be certified, all four requirements of Rule 23(a) must be satisfied, along with one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In certifying a class for settlement purposes only, the Court need not determine "whether the case, if tried, would

present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  Further, the practical purpose of provisional certification is to facilitate dissemination of notice to the class of the terms of the proposed settlement and the date and time of the final settlement approval hearing.  *See Manual for Complex Litigation* § 21.633.  For the purposes of settlement, the requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been met.

A court considering a motion for preliminary approval neither decides the merits of the underlying case, resolves unsettled legal questions, nor crafts a settlement for the parties. Fed. R. Civ. P. 23(e); *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ("In determining whether class action settlement should be approved, neither trial court nor Court of Appeals is to reach any ultimate conclusion on contested issues of fact and law which underlie merits of dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements; proposed settlement is not to be judged against hypothetical or speculative measure of what might have been achieved by negotiators."). The ultimate determination of whether a proposed class action settlement warrants approval resides in the Court's discretion.  *Protective Comm. for Indep. S' holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968).

To determine the preliminary fairness of an agreement, the Court balances "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; [and] the presence of a governmental participant." *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)); *see also Ching*, 2013 U.S. Dist. LEXIS 169279, at * 17 (applying these factors to a preliminary approval of class settlement). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

21

grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (citing *Manual for Complex Litigation, Second* § 30.44 (1985)).

Certification of settlement classes is routine, and the certification hearing and preliminary fairness evaluation are usually combined. *See Manual for Complex* Litigation § 21.632. Neither formal notice nor a hearing is required for the court to grant preliminary approval or provisional certification; instead, the court may grant such relief upon an informal presentation by the settling parties, and may conduct any necessary hearing in court or in chambers, at the court's discretion. *Id.*; *accord* Joseph M. McLaughlin, 2 *McLaughlin on Class Actions* § 6.6 (3d ed. 2006).

## IV. <u>THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS</u>

Here, the Settlement Class meets the requirements of Rule 23.[2]

### A. **Rule 23(a) Is Satisfied for Purposes of Certifying the Settlement Classes**

#### 1. **The Settlement Class is Numerous**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This action meets that requirement. Class Counsel, through the extensive work product of experts, has identified 2,528 Settlement Class Members. See Exhibit D-1 to Declaration of John Fiske. See Appendix F to the Declaration of Michael Trapp. These Settlement Class Members are geographically dispersed across the United States and cannot be practicably joined in a single litigation. In addition, the Judicial Panel on Multidistrict Litigation previously refused to consolidate

---

[2] Defendant maintains that there remain substantial obstacles to certification of any litigation class and that any certification of the final Settlement Class is for settlement purposes only. Nothing in the Motion or these Suggestions in Support shall constitute, or be construed as, an admission on the part of Defendant that this action, or any other proposed or certified class action, is appropriate for treatment as a class for any other purpose, including for trial class treatment.

the claims of the original plaintiffs who filed suit and initiated litigation against Monsanto. The numerosity requirement for class certification of a Settlement Class is satisfied. *See Lowdermilk v. United States Bank National Assoc.,* 479 F.3d 994, 997 (9th Cir. 2007) (numerosity criteria satisfied where class size "exceeds 30 persons.").

## 2. The Settlement Class Members Share Common Questions of Law and Fact

Under Rule 23(a)(2), a district court may certify a class only when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The key inquiry for the commonality analysis is whether a common question can be answered in a class-wide proceeding, such that the answer will "drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Applying these principles, the commonality requirement of Rule 23(a)(2) is satisfied here for purposes of settlement. The claims of the putative Settlement Class Members arise from the same allegations in the Third Amended Class Action Complaint, namely, claims against Defendant for alleged PCB-related impairments to stormwater, stormwater systems, sediments, and water bodies.

## 3. The Claims of the Class Representatives Are Typical of those of the Proposed Classes

Typicality under Rule 23(a)(3) requires that the "claims or defenses of the representative  parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3); *see also Dukes,* 131 S. Ct. at 2548. The "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." *Staton*, 327 F.3d at 957 (internal quotation

1   mark omitted). Rather, they only need to be "reasonably co-extensive with those of absent

2   class members[.]" *Hanlon*, 150 F.3d at 1020.

3          The typicality criteria are satisfied here.  All Named Plaintiffs asserted identical

4   facts describing Monsanto's design, manufacture, sale, and distribution of PCBs.  They

5   likewise similarly allege that Monsanto is liable for resulting PCB-related impairments to

6   water bodies. Plaintiffs alleged that PCBs are present at sites and public properties,

7   including in stormwater, stormwater and wastewater systems, waterbodies, sediment,

8   natural resources, fish and wildlife. Plaintiffs sought compensatory damages and

9   injunctive and equitable relief. Because Plaintiffs are members of the proposed Settlement

10   Class and assert the same or similar causes of action on behalf of themselves and absent

11   class members, their claims are typical.

12                    **4.  The Class Representatives are Adequate**

13          Rule 23(a)(4) requires that the "representative Parties will fairly and adequately

14   protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy involves analysis of

15   two inquiries: (1) whether the named plaintiff and his or her counsel have any conflicts

16   of interest with other class members and (2) whether the named plaintiff and his or her

17   counsel will act vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020; *See also*

18   *Molski*, 318 F.3d at 955 (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1995)).

19          There exist no conflicts of interest between any named Plaintiffs or proposed

20   Settlement Class Members. All Plaintiffs and proposed Settlement Class Members are

21   equally interested in demonstrating PCBs caused damages to their public properties and

22   sites. The Named Class Plaintiffs stand in the same factual and legal shoes, and seek the

23   same form of relief, as other Settlement Class Members: receiving economic damages for

24   PCB-related impairments their public properties and sites.  In addition, the Named Class

25   Plaintiffs have demonstrated a commitment to prosecuting this matter by supplying

26   essential factual information concerning legal claims, conducting discovery, and being

27   willing to testify at depositions and trial if necessary. *See* Exs. C, D, Declarations of Scott

28   Summy and John Fiske.

1    Finally, the requirement of vigorous advocacy is also met. Class Counsel have

2 extensive experience handling complex class actions and have demonstrated a willingness

3 to vigorously prosecute the class claims, as outlined in the accompanying Declarations of

4 Scott Summy and John Fiske. As evidenced by the terms of the Settlement Agreement,

5 Plaintiffs, through qualified counsel, have vigorously prosecuted the case in interests of

6 the Settlement Classes.  The terms of the Settlement provide substantial benefits to the

7 Settlement Class. *See id*.

8    **B.    Rule 23(b) Is Satisfied for Purposes of Certifying the Settlement Classes**

9    In addition to satisfying the requirements of Rule 23(a), a party seeking class

10 certification pursuant to Rule 23(b)(3) must also demonstrate that "the questions of law

11 or fact common to class members predominate over any questions affecting only

12 individual members, and that a class action is superior to other available methods for

13 fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150

14 F.3d at 1022.

15    Predominance "tests whether proposed classes are sufficiently cohesive to warrant

16 adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S.

17 at 623).  Predominance requires more than proof of common issues of law or fact. *Hanlon*,

18 150 F.3d at 1022. Rather, the common questions must present a significant aspect of the

19 case that can be resolved for all members of the class in a single adjudication. *Id*. (quoting

20 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc*. § 1778

21 (2d ed.1986)).

22    Here, common questions predominate over any issues individual members of the

23 proposed class may have. As stated above, Plaintiffs allege a common course of conduct

24 by Monsanto that resulted in similar injury to each class member.  Issues of liability are

25 likewise the same with respect to each Settlement Class Member. Although individual

26 issues may exist, the nature and scope of the common questions in this case satisfy Rule

27 23(b)(3)'s predominance requirement.

28

The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. *Hanlon*, 150 F.3d at 1023 (quoting Wright, Miller & Kane, *Fed. Prac. & Proc.* § 1779). This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution. *Id.* A class action is superior to other methods of litigation where, "classwide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative [to classwide treatment] exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). In considering whether a class action is superior, the Court must focus on whether "efficiency and economy" would be advanced by class treatment. *See Zinser v. Accufix Research Inst.*, Inc., 253 F.3d. 1180, 1190 (9th Cir. 2001).

Here, the expense and burden of individual litigation makes it impracticable for members of the proposed class to seek redress individually. Moreover, seeking redress through individual litigation is highly uncertain and may not occur before a lengthy trial and appellate proceedings are complete.  The proposed settlement provides Settlement Class Members with real benefits under a straightforward claims framework, while fully preserving their due process rights. And it benefits Defendant by allowing for full resolution of all similar litigation in a single action.

## V.   <u>THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT</u>

In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.").

Under Rule 23(e)(2), the Court may approve a proposed settlement only after finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

26

The recent amendments to Rule 23, effective December 1, 2018, require a court, in making a determination about the adequacy of a proposed settlement, to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit has often used the following "*Churchill* factors" when determining whether to approve a class action settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant, and (8) the reaction of the class members of the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).[3]

There is substantial overlap between the factors in Fed. R. Civ. P. 23(e)(2) and the *Churchill* factors that the Ninth Circuit has often considered when determining whether

___

[3] The "*Churchill* factors" are also known as the "*Hanlon* factors." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

to approve a class action settlement. *Hartranft v. TVI, Inc.*, 2019 WL 7195324 at *6 (C.D. Cal. 2019). To the extent possible, courts in the Ninth Circuit apply the factors listed in Fed. R. Civ. P. 23(e)(2) through the lens of the Circuit's *Churchill* factors and existing relevant precedent. *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771 at *4 (C.D. Cal. 2019). As such, courts in the Ninth Circuit have found that the factors in Fed. R. Civ. P. 23(e)(2) are satisfied if the *Churchill* factors are satisfied. *Hartranft v. TVI, Inc.*, 2019 WL 7195324 at *6 (C.D. Cal. 2019); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886 at *10 (C.D. Cal. 2019).

Preliminary approval is warranted under the circumstances. "If the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval,' the court should grant preliminary approval of the class and direct notice of the proposed settlement to the class." *Kenneth Glover, et al. v. City of Laguna Beach, et al.*, 2018 WL 6131601, at *2 (C.D. Cal. 2018) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (citation omitted); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (applying at preliminary approval a "presumption" of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."). The relevant factors set forth by the Ninth Circuit and recently revised Rule 23(e)(2)(A)-(D) for evaluating the fairness of a settlement weigh in favor of preliminary approval, and there can be no doubt that the Settlement was accomplished in a procedurally fair manner. For these reasons, the Settlement merits an initial presumption of fairness, and thus preliminary approval should be granted. *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527 (stating that if the "settlement follow[s] sufficient discovery and genuine arms-length negotiation," it should be "presumed fair."). As detailed below, the Settlement passes both procedural and substantive muster and merits preliminary approval.

**A.** **Class Representatives and Class Counsel Have and Will Continue to Zealously Represent the Class**

The Named Class Plaintiffs and Lead Class Counsel have prosecuted their individual actions for over five years. *See* Fed. R. Civ. P. 23(e)(2)(A). For a court to approve a proposed settlement, "[t]he parties must . . .have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Byrne v. Santa Barbara Hospitality Services, Inc*., 2017 WL 5035366, at *8 (C.D. Cal. 2017) (citation omitted). Here, Class Counsel engaged in extensive written discovery. As part of that process, Class Counsel responded to 36 sets of written discovery; obtained and reviewed well in excess of 300,000 Monsanto documents; gathered, coded and reviewed over 9 million of its own clients documents and produced a large subset of those documents; and obtained additional documents produced by third-parties subpoenaed by Monsanto. Ex. C, Declaration of Scott Summy, at ¶¶ 15-16. In addition, Class Counsel took and/or defended 82 depositions; 31 of which were expert witnesses. *Id*. at ¶ 17.

Class Counsel's analysis of the vast volume of discovery material, much of which had never before been produced in litigation, publicly available data, and deposition testimony establishes that Counsel has gathered sufficient information to enter into a reasoned and well-informed settlement. *See, e.g., In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported "district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement"). Class Counsel briefed dozens of motions for summary judgment, motions to exclude experts, and motions in limine. In all, Class Counsel was involved in filing and/or responding to over 100 motions in the Public Entity Cases. Ex. C, Declaration of Scott Summy, at ¶ 12. This gives Class Counsel a thorough understanding of the strengths and weaknesses of the legal claims and positions.

The case-specific experience must be considered against Class Counsel's expertise in representing public entities in environmental litigation. Baron & Budd's Environmental Litigation Group has litigated similar cases for close to twenty years. Many of the lawyers in the Group have 20+ years of practice experience and have spent their careers prosecuting these types of cases. *See* Ex. C, Declaration of Scott Summy, at ¶¶ 2, 4, 14, 18, 24, 25.

The Named Class Plaintiffs were likewise actively engaged and understand the demands and risks of litigation. They produced numerous documents, assisted Class Counsel with fact development, answered several dozen sets of discovery requests, and regularly communicated with counsel to remain up to date on the litigation. *See* Ex. D, Declaration of John Fiske, at ¶13. Their interests are aligned with those of the Settlement Class Members, and they will continue to represent those interests in consummating the proposed Settlement.

**B.     The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations, and It Is Fair**

The proposed Settlement Agreement arises out of serious, informed, and non-collusive negotiations facilitated by a JAMS neutral, Hon. Jay Gandhi, retired. *See* Fed. R. Civ. P. 23(e)(2)(B). Class Counsel vigorously prosecuted this action for many years before entering into any settlement talks; once the Parties began to contemplate settlement, the negotiations were difficult, protracted, and often spirited. Judge Gandhi, an unbiased experienced mediator, aided the parties' attempts and played a crucial role in supervising the negotiations and helping the parties bridge their differences and evaluate the strengths and weaknesses of their respective positions. *See* Exhibit E, Declaration of Hon. (Ret.) Jay Gandhi, at ¶¶ 10-16.

The Settlement was not achieved without difficulty or uncertainty. The Parties began discussions in 2019 but could not reach an accord. Ex. C, Declaration of Scott Summy, at ¶ 20. They then retained Judge Gandhi, who oversaw multiple separate telephone and video-conference mediation sessions through Spring 2020. Ex. C,

Declaration of Scott Summy, at ¶ 21; Ex. E, Declaration of Judge Gandhi, at ¶¶ 10-14. Because the mediation sessions were not fruitful for some time, the Parties continued to prepare for trial in the *City of Spokane* matter, which was moved only to accommodate these settlement mediations and would have commenced on June 24, 2020. *Id*. at ¶ 20.

On March 27, 2020, the Parties reached agreement on material terms for a settlement and executed a non-binding term sheet. Ex. C, Declaration of Scott Summy, at ¶ 21. Subsequently, the Parties spent weeks finalizing the release and settlement agreement as well as the related exhibits. The Parties continued to work with Judge Gandhi through numerous calls to finalize all of the details. A final Settlement Agreement was reached in June 2020. *See id.* The adversarial nature of the litigation and the aid provided by Judge Gandhi are factors that weigh in favor of preliminary approval. *See Rosales*, 2015 WL 4460918, at *16 (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) ("Notably, the Ninth Circuit has determined the 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'")). The proposed Settlement is the product of arm's length negotiations by Class Counsel.

**C.    The Settlement Provides Significant Benefits in Exchange for the Compromise of Strong Claims.**

**1. The Risk, Expense, Complexity, and Duration of Further Litigation Weighs in Favor of Approval**

In assessing the risk, expense, complexity, and likely duration of further litigation, "the Court will consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *DIRECTV, Inc*., 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)). In addition, the Court evaluates the time and cost of further litigation. *Woodard v. Labrada*, No. EDCV1600189JGBSPX, 2019 WL 6998775 at *5 (C.D. Cal. 2019). As such, "Unless the settlement is clearly inadequate, its acceptance and approval are

1  preferable to lengthy and expensive litigation with uncertain results." *DIRECTV, Inc*., 221

2  F.R.D. at 526 (quoting 3 *Newberg on Class Actions* § 11:50 (4th ed. 2012)).

3       "An important consideration in judging the reasonableness of a settlement is the

4  strength of the plaintiffs' case on the merits balanced against the amount offered in the

5  settlement." *DIRECTV, Inc*., 221 F.R.D. at 526 (quoting 5 *Moore Federal Practice*, §

6  23.85[2][b] (Matthew Bender 3d. ed.)).  In determining the probability of plaintiffs'

7  success on the merits, there is no "particular formula by which that outcome must be

8  tested." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009). However, in

9  balancing, "a proposed settlement is not to be judged against a speculative measure of

10 what might have been awarded in a judgment in favor of the class." *DIRECTV, Inc*., 221

11 F.R.D. at 526 (quoting 5 *Moore Federal Practice*, § 23.85[2][b]). In assessing the strength

12 of the case, a district court need not "reach any ultimate conclusions on the contested

13 issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty

14 of outcome in litigation and avoidance of wasteful and expensive litigation that induce

15 consensual settlements." *Officers for Justice*, 688 F.2d at 625.

16      Here, the Parties recognize the risks of continued litigation and an adverse outcome.

17 Although Plaintiffs and Defendant believe in the merits of their claims and defenses, they

18 are cognizant of the risks of proceeding to trial. Class Counsel is informed by a successful

19 motion for summary judgment in favor of Monsanto in one matter.  Although Class

20 Counsel can distinguish the one particular ruling from the Amended Class Complaint and

21 those of the other Named Class Plaintiffs and Settlement Class Members, the ruling

22 demonstrates the very real risk faced by the Plaintiffs in these cases.  *See* Ex. C,

23 Declaration of Scott Summy, at ¶25. Other courts could potentially make similar rulings

24 to the detriment of other Plaintiffs and Settlement Class Members. The legal and factual

25 issues in this lawsuit are both complex and disputed, as evidenced by the numerous

26 dispositive motions that have been filed.

27      There can be little doubt that resolving the Settlement Class Members' claims

28 through a single class action is superior to nearly 2,500 individual lawsuits. "From either

a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. The time required for each putative Settlement Class Member to initiate litigation and conduct discovery weighed against the risks to each public entity favors the Settlement. The time it would take for Class Members to engage in and complete similar litigation would likely take up to a decade to complete. *See* Ex. C, Declaration of Scott Summy, at ¶ 24.

In addition, the potential costs of going to trial would be substantial. The Parties have expended enormous sums to date in the course of ordinary litigation. Litigating against Monsanto in the Public Entity Cases heavily taxed Lead Class Counsel and their firm. Over a five to six year period, 35 attorneys, 3 paralegals, 6 legal staff and IT personnel were used to address all aspects of these cases. Ex. C, Declaration of Scott Summy, at ¶ 14. Lead Class Counsel's firm funded all of these cases, which included out-of-pocket costs for experts, depositions, filing fees, travel and voluminous electronic discovery performed in-house. These expenses totaled approximately $10 million. *Id.* at ¶ 19. Under such circumstances, the avoidance of further risks and costs conserves the parties' and the Court's resources. Moreover, any judgment would likely be subject to lengthy appeals, whereas the Settlement provides more immediate results and benefits to Settlement Class Members. This factor weighs in favor of the preliminary approval of the proposed Settlement Agreement.

## 2.  The Amount Offered in Settlement Supports Approval

In assessing the consideration obtained by the class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice,* 688 F.2d at 628. Because courts examine the complete settlement package, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a

1  fraction of the potential recovery that might be available to the class members at trial."
2  *DIRECTV, Inc.*, 221 F.R.D. at 527.

3      Here, $550,000,000 is being offered collectively to cities, towns, villages,
4  boroughs, townships, counties, and independent port districts that have incurred or will
5  incur costs associated with PCBs in stormwater, stormwater systems, sediment, and water
6  bodies. These funds can provide real-world relief and restitution for public funds spent
7  and those that will be spent on PCB monitoring, remediation, and mitigation.
8  Additionally, it may be pointed out that the Settlement Class Members have not released
9  any claims that they may still have against third-parties that may have released PCBs. *See*
10 Ex. C, Declaration of Scott Summy, at ¶ 24.

11      **3.  The Effectiveness of the Proposed Method of Distributing Relief to**
12          **Class Members, Including the Method of Processing Class-**
13          **Member Claims Supports Approval**

14      Class Counsel, working with experts, have gone through extensive and exhaustive
15 efforts to identify all Settlement Class Members from publicly-available government data
16 — a research project never before completed. Ex. D, Declaration of John Fiske, at ¶ 16.
17 The extensive and exhaustive class member identification and allocation structure
18 research project took many months and was very expensive. No other setting or process
19 could identify, allocate, and deliver to over 2,000 cities, towns, villages, boroughs,
20 townships, counties, and independent port districts a $550,000,000 class benefit. The
21 proposed method of distribution of proceeds is likewise streamlined by having a known
22 set of putative Settlement Class Members at this time.

23      **4.  Extent of Discovery Completed and the Stage of Proceedings**
24          **Weigh in Favor of Approval**

25      "A court is more likely to approve a settlement if most of the discovery is
26 completed because it suggests that the parties arrived at a compromise based on a full
27 understanding of the legal and factual issues surrounding the case." *DIRECTV, Inc.*, 221
28 F.R.D. at 527 (quoting 5 *Moore's Federal Practice* § 23.85[2][e]). As such, "[a]

34

settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889 (C.D. Cal. 2016). However, formal discovery is not required where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 459.

As discussed above, the Parties undertook full discovery and planned to litigate each case individually. As this Settlement came together the general liability discovery as to Monsanto was substantially complete and available for use in all of the Public Entity Cases. *See* Ex. C, Declaration of Scott Summy, at ¶ 18. Accordingly, both sides along with the Mediator were armed with a significant amount of information to make a well informed and intelligent decision regarding the Settlement reached in this matter.  This factor weighs in favor of the preliminary approval of the proposed Settlement Agreement.

### 5. The Experience and Views of Counsel Weigh in Favor of Approval

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.1997)). Therefore, in considering the adequacy of the terms of a settlement, the Court should rely upon the judgment of experienced counsel for the parties. *Woodard v. Labrada*, No. EDCV1600189JGBSPX, 2019 WL 6998775 at *7 (C.D. Cal. 2019). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Hanrahan v. Britt*, 174 F.R.D. 356, 366–368 (E.D.Pa. 1997)).

Plaintiffs' Counsel involved in this case have extensive experience serving as lead counsel and/or class counsel in complex environmental cases, and have litigated individual PCB-related cases.  Plaintiffs' Counsel and their firms have served as lead or co-lead counsel in numerous class actions in the environmental arena. *See* Declarations of Scott Summy and John Fiske.  Based on the experience and the specific facts of this case, Plaintiffs' Counsel have concluded that the Settlement is fair, reasonable, and adequate. Experienced counsel is also of the opinion that this class settlement maximizes the recovery for these Settlement Class Members considering the substantial risks involved. *See* Ex. C, Declaration of Scott Summy, at ¶ 24. Defendant's Counsel are also highly skilled and well adept at defending class actions, having defended class actions in nearly every state for dozens of companies. Thus, counsel for each of the Parties – who are experienced plaintiffs' class action and defense attorneys – have fully evaluated the strengths, weaknesses, and equities of the parties' respective positions and have done so in light of similar litigation with which they were involved.

**6. The Presence of a Governmental Participant Weighs in Favor of Approval**

Courts presume that governmental participants and government officials put on notice of class action settlement proceedings will raise any concerns that they may have during the normal course of such proceedings. *Taylor v. Shippers Transp. Express, Inc.*, No. CV1302092BROPLAX, 2015 WL 12658458 at *11 (C.D. Cal. 2015). Thus, a governmental entity or governmental official being involved in class action settlement proceedings weighs in favor of approval. *Touhey v. U.S.*, No. EDCV 08-01418-VAP, 2011 WL 3179036 at *8 (C.D. Cal. 2011).

The Named Plaintiffs and Settlement Class Members are all sophisticated governmental subdivisions.  Most of them are represented by their own in-house attorneys and have experience with litigation.  The participation of the Named Plaintiffs in full discovery and their participation at every stage of the case favors approval.

## VI. THE COURT SHOULD APPOINT CLASS ACTION SETTLEMENT ADMINISTRATOR

The Parties propose Steven Weisbrot of Angeion Group, LLC to be appointed as Class Action Settlement Administrator. Accordingly, the Court should approve and designate Steven Weisbrot of Angeion Group, LLC as Class Action Settlement Administrator. *See* Exhibit B, Declaration of Steve Weisbrot.

## VII. THE COURT SHOULD APPROVE THE CONTENT AND DISTRIBUTION OF THE PROPOSED NOTICE TO THE SETTLEMENT CLASS MEMBERS

Here, the Parties propose that the Court require the Class Action Settlement Administrator to provide Notice of the proposed Settlement as described above and in the Settlement Agreement and Notice Plan. The proposed Class Action Administrator has also attested that implementation of the Notice Plan in the manner set forth in the Settlement Agreement is fair, appropriate and constitutes "the best notice practicable" under the circumstances. *See* Ex. B, Declaration of Steve Weisbrot at ¶¶ 11, 21.

## VIII. THE COURT SHOULD APPOINT CLASS COUNSEL

Pursuant to Fed. R. Civ. P. 23(g), a Court certifying a case as a class action "must appoint class counsel." Class Counsel respectfully request that the Court appoint them as Class Counsel. The experience and qualifications of the proposed Class Counsel are established, and the proposed Class Counsel will zealously prosecute the claims of the Settlement Class Members.[4] *See* Exs. C, D, Declarations of Scott Summy and John Fiske. The Court should appoint Scott Summy, John Fiske, and Carla Burke Pickrel of Baron & Budd, P.C. as Lead Class Counsel, and John Gomez of Gomez Trial Attorneys, John R.

---

[4] Defendant takes no position on the appointment of Class Counsel, except that certain Lead and Co-Class Counsel are contemplated and agreed to in the Settlement Agreement.

Wertz, Esq., and Richard Gordon and Martin Wolf of Gordon Carney & Wolf as Co-Class Counsel.

## IX.   ESTABLISHMENT OF FINAL APPROVAL AND FAIRNESS HEARING AND ASSOCIATED DEADLINES

The Parties propose the following schedule regarding Notice to the Settlement Classes and final approval of the Settlement Agreement:

| Event | Time For Compliance |
|---|---|
| Preliminary Approval Hearing | July 23, 2020 |
| Entry of Preliminary Approval Order | TBD |
| Direct Notice Mailed to Settlement Class Members | 5 days from entry of Preliminary Approval Order. |
| Deadline for Opting Out or Objecting | 65 days from entry of Preliminary Approval Order. |
| Final Approval Hearing | May 2021 (proposed). |

/ / /

/ / /

/ / /

# X.   **CONCLUSION**

For the reasons stated above, the proposed Settlement Agreement is the product of serious, non-collusive, arm's-length negotiations, and is a fair, reasonable, and adequate resolution of Plaintiffs' claims. The proposed Notice and Notice Plan also satisfy Rule 23's due process requirements.  As a result, the Parties respectfully request that the Court grant their motion and enter the proposed order attached hereto which:  (1) grants certification of the Settlement Class; (2) grants preliminary approval of the Settlement Agreement; (3) approves the Notice and Notice Plan; (4) appoints Class Counsel; (5) appoints Steven Weisbrot of Angeion Group, LLC as Class Action Settlement Administrator; and (6) Jay Gandhi as the Special Master.

Dated June 24, 2020                       Respectfully submitted,

                                                          /s/ John Fiske
                                                      **BARON & BUDD, P.C.**
                                                      11440 W. Bernardo Court, Suite 265
                                                      San Diego, California 92127
                                                      Telephone: (858) 251-7424

                                                      **BARON & BUDD, P.C.**
                                                      Scott Summy (admitted *Pro Hac Vice*, Texas Bar
                                                      No. 19507500)
                                                      SSummy@baronbudd.com
                                                      Carla Burke Pickrel (admitted *Pro Hac Vice*,
                                                      Texas Bar No. 24012490)
                                                      cburkepickrel@baronbudd.com
                                                      3102 Oak Lawn Ave, #1100
                                                      Dallas, Texas 75219
                                                      Telephone: (214) 521-3605

                                                      ***Attorneys for Plaintiffs and the Class***

## EXHIBIT INDEX

| EX. | DESCRIPTION |
|-----|-------------|
| A | Settlement Agreement |
| B | Declaration of Steve Weisbrot |
| C | Declaration of Scott Summy |
| D | Declaration of John Fiske |
| E | Declaration of Hon. (Ret.) Jay Gandhi |
| F | Sediment Sites Application |
| G | Special Needs Fund, Part A Application |
| H | Special Needs Fund, Part B Application |
| I | Initial Settlement Class Members |

CASE NO.: 2:16-cv-03493-FMO-AS
MOTION FOR CERTIFICATION