# Exhibit D

1 **BARON & BUDD, P.C.**
Scott Summy (*Pro Hac Vice,* TX Bar No. 19507500)
2 SSummy@baronbudd.com
Carla Burke Pickrel (*Pro Hac Vice,* TX Bar No. 24012490)
3 cburkepickrel@baronbudd.com
3102 Oak Lawn Ave, #1100
4 Dallas, Texas 75219
Telephone: (214) 521-3605
5
**BARON & BUDD, P.C.**
6 John P. Fiske (SBN 249256)
Fiske@baronbudd.com
7 11440 W. Bernardo Court, Suite 265
San Diego, California 92127
8 Telephone: (858) 251-7424

9 *Proposed Lead Class Counsel*
*Additional counsel listed on signature page*
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| CITY OF LONG BEACH, a municipal corporation; COUNTY OF LOS ANGELES, a political subdivision; CITY OF CHULA VISTA, a municipal corporation; CITY OF SAN DIEGO, a municipal corporation; CITY OF SAN JOSE, a municipal corporation; CITY OF OAKLAND, a municipal corporation; CITY OF BERKELEY, a municipal corporation; CITY OF SPOKANE, a municipal corporation; CITY OF TACOMA, a municipal corporation; CITY OF PORTLAND, a municipal corporation; PORT OF PORTLAND, a port district of the State of Oregon; BALTIMORE COUNTY, a political subdivision; MAYOR AND CITY COUNCIL OF BALTIMORE; all individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY; SOLUTIA INC., and PHARMACIA LLC, and DOES 1 through 100,<br><br>                    Defendants. | CASE NO.: 2:16-cv-03493-FMO-AS<br><br>DECLARATION OF JOHN FISKE IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF NOTICE PLAN, APPOINTMENT OF CLASS ACTION SETTLEMENT ADMINISTRATOR, AND APPOINTMENT OF CLASS COUNSEL<br><br>Time of Hearing: 10:00 a.m.<br>Date of Hearing: July 23, 2020<br>Courtroom: 6D<br>Honorable Fernando M. Olguin<br><br>File Date:     May 19, 2016<br>Trial Date:    May 11, 2021 |

1

CASE NO.: 2:16-cv-03493-FMO-AS
DECLARATION OF JOHN FISKE

# DECLARATION OF JOHN P. FISKE

I, John Fiske, declare as follows:

1. I am an attorney licensed to practice in all courts in the State of California. I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Direction of Notice under Fed.R.Civ.P.23(e). I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently to them.

2. I am a Shareholder in the law firm of Baron & Budd, P.C. I have practiced with the Firm's Environmental Litigation Group since July 2016 and have been licensed since June 2007.

3. My experience. I have a significant amount of experience as lead counsel in complex environmental litigation cases, specifically for public entities. For more than 5 years, I have represented numerous public entities and individuals in environmental tort cases that are substantively similar to the proposed Class Action.

4. Many of the cases I have worked on involve environmental and public resources damages, product liability, trespass, nuisance, and negligence, primarily focused on public entities as plaintiffs. This type of litigation has resulted in billions of dollars in recoveries for my clients. Some of the most significant mass tort, class action, public entity, and environmental cases, in which I had a leadership role, include the following:

    a. *Southern California Fire Cases*, JCCP No. 4965, Superior Court of the State of California, County of Los Angeles; Court-Appointed Co-Lead Counsel for Public Entities against Southern California Edison; Resulting in $150 million recovery for multiple public entities including but not limited to County of Santa Barbara, City of Santa Barbara, County of Ventura, and City of San Buenaventura, among several other public

entities; 2020 California Lawyer Attorney of the Year ("CLAY") Award in Environmental Law.

b. *Woolsey Fire Cases*, JCCP No. 5000, Superior Court of the State of California, County of Los Angeles. Court-Appointed Co-Lead Counsel for Public Entities against Southern California Edison; Resulting in $210 million recovery for multiple public entities including but not limited to County of Los Angeles, City of Malibu, County of Ventura, City of Westlake Village, City of Agoura Hills, and City of Thousand Oaks, among several other public entities; 2020 California Lawyer Attorney of the Year ("CLAY") Award in Environmental Law.

c. *California North Bay Fire Cases*, JCCP No. 4955, Superior Court of the State of California, County of San Francisco; lead counsel for public entities including but not limited to County of Sonoma, County of Napa, City of Santa Rosa, and City of Napa, among several other public entities; Resulting in $415 million recovery.

d. *Town of Paradise v. PG&E Corporation, et al.*, Case No. 19CV00259; and, *County of Butte v. PG&E Corporation, et al.*, Case No. 19CV00151; lead counsel for public entities in the 2018 Camp Fire cases, resulting in $582 million recovery for public entities.

e. *Danielle Trujillo, et al. v. Ametek, Inc., et al.* Case No.: 15-cv-01394, Southern District of California; lead counsel in toxic tort/environmental class action representing students and teachers from a school located above a groundwater contamination plume; Preliminary approval and class case pending claims process and final approval; Part of a larger $10 million settlement.

f. *Adam Cox, et al. v. Ametek, Inc. et al.,* Case No.: 17-cv-0597 in the Southern District of California; lead counsel in environmental/toxic tort class action representing mobile home owners living above a groundwater

3

CASE NO.: 2:16-cv-03493-FMO-AS
DECLARATION OF JOHN FISKE

contamination plume; Preliminary approval and class case pending claims process and final approval; Part of a larger $10 million settlement.

 g. *Fitbit Cases*, JCCP 4880; Court appointed Co-Lead Counsel for hundreds of personal injury cases caused by defective product; products liability; $3 million recovery.

 h. *Jim Spivey v. Fitbit, Inc., et al.*, Case No. 37-2014-00007109, class action against Fitbit, Inc. for defective product.

 i. *JUUL Labs Product Cases*, JCCP No. 5052, Los Angeles County Superior Court; Court appointed Co-Lead Counsel for Public Entities in products liability, public nuisance, and negligence actions; Cases currently pending.

 j. California Opioid Consortium of 36 Counties and Cities; lead counsel for 36 California county and city plaintiffs, including but not limited to County of San Diego, County of Monterey, City of San Jose, and several others, suing Opioid manufacturers, distributors, and retailers in the Opioid MDL in the Southern District of Ohio; Cases currently pending.

5. Intent of this Declaration. This Declaration is intended to supplement the Declaration of Scott Summy rather than overlap with or repeat the same attestations made therein.

6. I am a California-licensed lawyer and my office is located in San Diego, California, where the first of these PCB stormwater contamination cases was filed. In late 2014 and early 2015, while an attorney at Gomez Trial Attorneys located in San Diego, California, I learned of PCB contamination in San Diego Bay; and, I learned of the legal and financial responsibility imposed on the City of San Diego and the San Diego Unified Port District for regulatory actions requiring expensive remediation. Around the same time, I began a professional working relationship with Scott Summy at Baron & Budd, and we decided to work together to investigate and explore potential lawsuits helping the City of San Diego and the Port of San Diego recover costs paid to remediate PCBs. The

first of these actions was filed by the City of San Diego and the Port of San Diego on March 13, 2015 in the Southern District of California.

7. Public Entity Client Co-Counsel Involvement and Communications. The City of San Diego was the first plaintiff to file suit in these cases in March 2015, followed by cities such as the City of Spokane and the City of San Jose, among others. Including the first case filed, 11 Named Class Members have filed suit in their respective jurisdictions and venues. The other 2 Named Class Members retained Baron & Budd as outside counsel and were preparing their complaints for filing when the settlement negotiations began. All public entities, through their in-house counsel and staff, have been actively involved throughout the litigation, including the evaluation of the claims, the preparation of the complaint, the preparation, organization, and production of discovery, the technical expert-intensive development of the cases.

8. After the City of San Diego complaint was filed, I began working with several other cities and public entities along the west coast to learn of similar PCB related regulations causing similar PCB related costs. For each case, in addition to my own extensive and original research into the issue of PCB contamination of stormwater as a potential tort action, I immediately began working with each client and each of the Named Class Plaintiffs in successive order as each case developed and was filed. Each client selected one or more in house counsel to work as co-counsel with us in each case, and that client co-counsel became my primary contact for the cases.

9. Since the beginning, I have been the lead contact with each of the Named Class Plaintiffs' client co-counsel, which are also counsel of record. For the Named Class Plaintiffs, including starting with San Diego and continuing as more cases developed, our firms established some regularly lines of communication for coordination of counsel and clients. For example, we utilized a regularly scheduled monthly phone call for all clients in order to establish standing updates

on the cases, to coordinate actions and communications, to share strategy, and to work together. Another example of regular communications includes an email list serve that allowed for group discussion of the case and case strategy.

10. The client co-counsel, as counsel of record, have been regularly and personally involved in each of their respective cases. All cases were filed individually, and Plaintiff's motion to coordinate and centralize the cases was denied by the Judicial Panel on Multidistrict Litigation. Therefore, each client was represented by the two firms, Gomez Trial Attorneys and Baron & Budd, in each respective case. In July 2016, I moved my practice from Gomez Trial Attorneys to Baron & Budd, and I continued in the same role for these PCB cases.

11. Throughout the cases, the lawyers, paralegals, and staff worked regularly and personally on each case because each case was separately litigated in its respective court. As such, I and other lawyers worked to understand the law, liability, causation, injury, and damages issues for each and every case—of the 13 Named Class Plaintiffs this included four states and at least six federal district courts, and even more courtrooms as some cases were not related.

12. Throughout the representation, the client co-counsel were heavily involved, including during legal motions, discovery, strategy, trial preparation, and ultimately throughout the resolution discussions. Of particular note is the technically intensive expert work and evaluation required to develop these cases. Not only were client co-counsel regularly involved, but so were client staff, including specifically technical staff and subject matter lawyers specializing in environmental, stormwater, or public works issues. As each case was litigated individually, our firm worked closely with each client to understand the technical environmental engineering characteristics of each client's cases. These issues were particularly complex legally and scientifically.

13. The Named Class Plaintiffs were actively engaged and understand the demands and risks of litigation. They produced numerous documents, assisted Class

Counsel with fact development, answered several dozen sets of discovery requests, and regularly communicated with me and other lawyers at Baron & Budd to remain up to date on the litigation.

14. I retained Dr. Michael Trapp of Michael Baker International, of an office located in San Diego County, to advise and work on the litigation as a consultant. Dr. Trapp later became a testifying expert in some of the cases, and ultimately became one of the two consulting experts on class member identification and settlement allocation projects. Because Dr. Trapp had consulted during several of the cases in active litigation, from San Diego to Long Beach to Spokane, and others, Dr. Trapp was well-acquainted with the case and best-positioned to help consult on class member identification and settlement allocation.

15. As settlement discussions developed, Scott Summy and I met regularly with Dr. Trapp and another expert, Rob Hesse, to undertake what would be a set of massive research projects.

16. Scott Summy and I, working with Dr. Trapp and Rob Hesse, have gone through extensive and exhaustive efforts to identify all Settlement Class Members from publicly-available government data — a research project never before completed.

17. The massive research project included hundreds, if not thousands, of collective professional hours to solve for a problem never solved before. The problem involved two steps: (1) how do we identify the class members and (2) how do we fairly allocate settlement funds. While there is publicly available data to solve for these problems, there is no one relational database that connects the data required for this project.

18. After many in person meetings with Dr. Trapp and Rob Hesse, it was determined that the use of publicly available information such as US EPA 303(d) water bodies, USGS HUC 12 watersheds, Total Maximum Daily Load regulatory actions, US EPA Superfund Sites, US EPA Sediment Sites, and US Census Bureau data could best serve our goal of identifying class members and then

designing a fair an equitable allocation process. Designing how to approach the class identification and allocation project alone took hundreds of collective hours. The actual research took many hundred more.

19. The research project, as described more fully in the declarations of Dr. Trapp and Rob Hesse, took place over many months and required hundreds if not thousands of collective professional hours. During the entire process, both Scott Summy and I remained involved with oversight and direction, and we regularly communicated with the clients regarding the process, the results, the updates, and the changes. At one point, the regularly scheduled monthly calls turned into regularly scheduled weekly calls in order to continue the high level of coordination among two sets of experts and 13 Named Class Plaintiffs.

20. Ultimately, 2,528 class members were identified, after extensive research and quality assurance/quality control efforts. All 2,528 class members qualify to receive funds under the Monitoring Fund. Of those 242 class members were subject to a TMDL, TMDL Alternative, or TMDL direct to implementation regulation. And, nine PCB contaminated Sediment Sites and twelve class members were determined to involve PCB contribution through stormwater discharges. Attached hereto are the Declarations of Michael Trapp (Exhibit D1) and of Rob Hesse (Exhibit D2).

21. The ultimate result of the class identification and allocation research project is the most comprehensive and extensive research project identifying cities, towns, villages, townships, boroughs, counties, and independent port districts and their potential PCB contributions and associated costs of its kind ever conducted. Baron & Budd lawyers, paralegals, and other staff identified the mailing addresses of all 2,528 Initial Settlement Class Members. (Exhibit I).

22. Moreover, the Named Class Plaintiffs provide a widely diverse representation of class members, including Phase I, Phase II, city, county, and port permittees.

23. The Named Class Plaintiffs have communicated that they understand their duties as class representatives, have agreed to consider the interests of absent Class members, and have actively participated through discussions with Lead Class Counsel, including me, in this litigation and will continue to do so. They have no interests that would be in conflict with the Settlement Class Members and will continue to vigorously protect class interests, as they have throughout this litigation.

24. No Class Representative was promised, or conditioned its representation on, the expectation of a service award.

25. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of June 2020, at San Diego, California.

_____
John Fiske
Baron & Budd, P.C.
11440 West Bernardo Drive, Suite 265
San Diego, California 92127