# Exhibit E

I, JAY C. GANDHI, declare:

1. I submit this Declaration in my capacity as the mediator in connection with the proposed settlement of the above-captioned class action. While the mediation process is confidential and privileged, the parties have authorized me to inform the Court of certain procedural and substantive matters in support of approval of the Settlement. My statements and those of the parties during the mediation process are subject to Federal Rule of Evidence 408, and there is no intention on either my part or the parties' part to waive the protections of Rule 408 and/or similar statutes, rules, and laws. I make this Declaration based on personal knowledge and am competent to so testify.

Background and Qualifications

2. I previously served as a United States Magistrate Judge for the U.S. District Court for the Central District of California, the nation's largest federal court. I am also a former litigation partner with the international law firm of Paul Hastings LLP. I spent eight (8) years on the federal bench and 12 years at Paul Hastings. I am a member of, among others, the bar of California, the U.S. District Court for the Central District of California, the U.S. Court of Appeals for the Ninth Circuit, and the U.S. Supreme Court.

3. During my time on the bench, I not only presided over many trials, but also oversaw the Court's Alternative Dispute Resolution program and its panel of approximately 200 mediators. While a partner at Paul Hastings, I litigated complex commercial cases and MDL/class actions in a variety of state and federal jurisdictions across the country. I earned my J.D., *Order of the Coif*, from the University of Southern California Gould School of Law and then served as judicial law clerk for the U.S. District Court for the Southern District of Texas.

4. I am the recipient of several professional awards during my time on the bench and in practice, including for example, the Judicial Trailblazer Award, the Benjamin Aranda III Judge of the Year Award, and the Judicial Excellence and Public Service Award.

5. I was and remain active in several professional associations, including for example, as a former member of the Board of Directors of the Los Angeles Federal Bar Association, a former member on the Judicial Advisory Board of Emory Law School's Institute for Complex Litigation and Mass Claims, and as a former Co-Chair of the Alternative Dispute Resolution Committee of the American Bar Association's Litigation Section.

6. I did and do often speak and write about best practices in alternative dispute resolution and trial advocacy, including in connection with the American Bar Association, the Federal Bar Association, and the U.S. Department of Justice.

7. I currently serve as a mediator and arbitrator with JAMS. I am also an owner of JAMS. JAMS is the world's largest private alternative dispute resolution (ADR) provider. The JAMS panel includes approximately 400 retired state and federal court judges and attorneys with proven track records and extensive practice area and industry expertise. JAMS is supported by more than 200 associates, including ADR system-design experts and case managers with decades of experience.

8. I have successfully mediated many complex, multi-party cases, including mass torts and class actions; business and commercial matters; antitrust cases; environmental actions; employment matters; entertainment and sports conflicts; health care cases; products liability actions; professional liability disputes; intellectual property matters; real estate cases; and securities and finance actions.

9. I also serve as a court-appointed Special Master, including for the U.S. District Court for the Central District of California and as an arbitrator, both solely and as a member of a tripartite panel, over complex, multi-party cases.

<u>The Arms-Length Settlement Negotiations</u>

10. In the fall of 2019, I was contacted by counsel at Baron & Budd, P.C., the putative lead class counsel, and Shook, Hardy & Bacon, L.L.P., the national defense and settlement counsel for the Monsanto Company. I was informed that the parties were immersed in litigation across the country regarding alleged PCB contamination. Due to the complexity of the matter, including the multitude of contested issues and the broad scope of the litigation, the parties desired a mediator to facilitate a lengthy and, at times, a contentious process.

11. Over the course of three to four months before the COVID-19 crisis, I met in person with the parties in several locations and moderated numerous conference calls. After the COVID-19 crisis halted travel, we continued our discussions in weekly videoconference calls. At these sessions, calls and meetings, the parties were represented by a number of lawyers and client representatives.

12. Both prior to and after our meetings and calls, the parties exchanged and submitted to me detailed mediation statements, opposition mediation statements, reply mediation statements, sur-reply mediation statements, evidentiary exhibits, damages calculations, a number of pleadings and orders, and a wealth of other written materials. I found these submissions to be valuable in helping me understand the relative merits of each party's positions and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement. Counsel for both parties presented significant

arguments regarding their client's positions and zealously advocated on their behalf. It was apparent that both sides possessed persuasive arguments, and neither side was assured of victory. Both strongly believed in their position, but both notably faced risk.

13. Because the parties submitted their materials and made their presentations in the context of a confidential mediation process pursuant to Federal Rule of Evidence 408, their contents cannot be revealed. I can say, however, that the arguments and positions advanced by all involved were the product of hard work and thoughtfulness; they were complex and nuanced; and they were oppositional and credible.

14. During the ensuing many months and in order to resolve this litigation, I engaged in countless in-person, telephonic, video, and email discussions and conversations with Baron & Budd and Shook, Hardy, and Bacon, separately and jointly. The discussions and conversations also included their respective clients, including for example, in-house counsel for the class representatives here and the in-house counsel for the Monsanto Company and Bayer AG, the parent company of Monsanto.

15. In March 2020, the mediation process resulted in a draft term sheet for a potential national class settlement, although disagreements then arose over key provisions of that draft term sheet. I moderated well over a dozen videoconferences and a myriad of calls with putative lead class counsel and defense counsel over numerous issues related to the final settlement agreement and class process issues.

16. Ultimately months later, in June 2020, the parties agreed upon the terms for the Settlement that is now before the Court for approval. I have remained involved in their subsequent discussions regarding the detailed contours of this Settlement.

17. The parties' settlement negotiations were hard fought and adversarial, though professional, and tackled virtually every issue in this Settlement, including but not limited to the class definition; the amount and scope of compensation for class members; the methodology for allocating funds among class members; the scope of the release language; and the appropriate monetary value for such a settlement.

18. The settlement negotiations were also difficult and contentious because all held strong to their convictions that they had the better factual and legal arguments, with regard to liability, damages and otherwise, and robust debates were held on virtually every issue, including what motions, trials and appeals would ultimately yield if a negotiated agreement was not achieved.  Both parties had the wherewithal to prosecute and defend this action for many more years.

<u>Conclusion</u>

19. Based upon my experience as a former federal judge and class action litigator, and in my role as the mediator here, I respectfully lend three chief observations.

20. First, this Settlement represents an outcome that is reasonable and fair for the putative class and all parties involved.  The Settlement represents the parties' and counsels' best professional effort and judgment about a fair, reasonable, and adequate settlement after thoroughly investigating and litigating the case for years, taking into account the risks, strengths and weaknesses of their respective positions on the substantive issues of the case, the risks and costs of continued litigation, and the best interests of their clients.  I support the approval of this Settlement.

21. Second, the outcome is due to the assiduous efforts of putative lead class counsel, defense counsel, and their clients who worked with me to achieve this result. I am familiar with the effort, creativity, and zeal that they put into their work for this matter.

22. Third, the advocacy on both sides of the case was outstanding. I have experience with attorneys from the law firms on both sides of this case, which are nationally recognized for their prosecuting and defending large, complex environmental actions such as this case. All counsel displayed the highest caliber of civility in carrying out their duties on behalf of their respective clients. This settlement is the direct result of all counsel's expertise and experience in these types of complex class actions, and the vigorous and exemplary representation they exercised on behalf of their clients here.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on the 22nd day of June, 2020 in Malibu, California.

Jay C. Gandhi