# Exhibit J

Declaration of Deputy City Attorney Dawn A. McIntosh

1. My name is Dawn A. McIntosh and I am a Deputy City Attorney for the City of Long Beach, California. I have been with the City Attorney's Office for four years, and along with Deputy City Attorney Amy R. Webber, I am one of the lead attorneys for the City on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in May 2016 in the Central District of California. Prior to the filing, our office, including several attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of Long Beach.

3. Our office has been involved in the drafting of the complaint, discovery, law and motion, trial preparation, and overall strategy and analysis of this case. We have produced voluminous records and responded to several rounds of discovery requests propounded by the defendants. The effort of in-house counsel has been involved and significant.

4. In addition to thousands of attorney and staff hours committed to this case over the past 5 years, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, travel, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last 5 years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on February 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual

class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge. Signed this 24th day of July 2020 in Long Beach, California.

Dawn A. McIntosh

Declaration of Senior Deputy Los Angeles County Counsel, Tracy Swann

1. My name is Tracy Swann and I am a Senior Deputy County Counsel for the County of Los Angeles, California. I have been with the Office of the Los Angeles County Counsel for 19 years, and I am one of the lead attorneys for the County on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The County filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc., on May 30, 2019, in the United States District Court for the Central District of California, Western Division. Prior to the filing, our office, including several attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the County of Los Angeles.

3. Our office has been involved in the drafting of the complaint, discovery, law and motion, and overall strategy and analysis of this case. We had begun to respond to discovery propounded by the defendants when it became clear that parties were in agreement to settle the case. The effort of in-house counsel has been involved and significant.

4. In addition to hundreds of attorney and staff hours committed to this case since filing, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including internal inquiry efforts, travel, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. For several months prior to filing and since then, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on January 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual

class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge. Signed this 27th day of July 2020 in Los Angeles, California.

Mary Wickham
Los Angeles County Counsel


By: _Tracy Swann_
_____
Tracy Swann, Esq.
Senior Deputy
Los Angeles County Counsel
Attorneys for Plaintiff,
County of Los Angeles

Declaration of Deputy City Attorney Karen Rogan,

1. My name is Karen Rogan, and I am a Deputy City Attorney for the City of Chula Vista, California. I have been with the City Attorney's Office for 9 years, and I am one of the lead attorneys for the City of Chula Vista ("City") on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The City joined a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in December 2018 in the Southern District of California. Prior to the filing, our office, including several attorneys, staff, and various department heads, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of Chula Vista.

3. Our office has been involved in the drafting of the complaint, discovery, law and motion, and overall strategy and analysis of this case. We have produced voluminous records and responded to several rounds of discovery requested propounded by the defendants. The effort of involved in-house counsel, staff, and department heads has been significant.

4. Our office and staff across no less than 6 departments have expended in excess of one hundred hours of attorney and staff time and resources to this case over the past 2 years since City joined the litigation, to prosecute and litigate the case, including discovery review and document production, internal inquiry efforts, and litigation related events.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last 2 years that City has been in the litigation, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions as well as meetings to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7.  Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8.  Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9.  The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge. Signed this _24_th day of July 2020 in Chula Vista, California.

Karen Rogan

Declaration of Chief Deputy City Attorney Mark Ankcorn

1. My name is Mark Ankcorn and I am the Chief Deputy City Attorney for the City of San Diego, California. I have been with the City Attorney's Office since February 2018, and I am the lead attorney for the City on the PCB case against Monsanto, Pharmacia, and Solutia. I am admitted to practice in nine federal district courts, including this one, two circuit courts of appeal, and the states of California and Florida.

2. Before joining the City Attorney's Office, I was the managing attorney of the Ankcorn Law Firm PLLC, specializing in complex litigation including consumer and civil rights class actions. I have been appointed lead or co-lead counsel in more than three dozen class actions involving in excess of 100 million class members.

3. The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in March 2015 in the United States District Court, Southern District of California. Prior to the filing, our office, including several attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of San Diego.

4. Our office has been intimately involved in the drafting of the complaint, discovery, law and motion, trial preparation, and overall strategy and analysis of this case. We have produced more than thirty-four million (34,000,000) documents and responded to several rounds of discovery propounded by the defendants. Forty-four (44) depositions were taken during the course of discovery, including three deponents on behalf of the City pursuant to Federal Rule of Civil Procedure 30(b)(6), which lasted for five days. The effort of in-house counsel has been involved and significant.

5. In addition to thousands of attorney and staff hours committed to this case over the past five years, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, travel, and other litigation or office expenses.

6. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last five years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case,

receive and provide updates on facts, law, and procedure, and to strategize together.

7. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions.

8. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on January 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

9. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

10. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

11. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

12. Based on my experience in private practice, I was keenly focused on ensuring that the language of the Settlement Agreement, as well as the deal's basic structure, were scrupulously fair in substance and procedure to the absent class members.

13. I am confident that the final product is not only a significant step forward for environmental cleanup but a fair and reasonable allocation of the finite funds available to address this vexing issue. The Settlement Agreement strikes a careful balance between rewarding the efforts of litigating entities like the City of San Diego and providing sufficient funds for non-litigating class members to make meaningful progress towards remediation.

14. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and accurate to the best of my knowledge. Signed this twenty-second day of July 2020 in Carlsbad, California.

Mark Ankcorn

Declaration of Assistant City Attorney Nora Frimann

1. My name is Nora Frimann and I am an Assistant City Attorney for the City of San Jose, California. I have been with the City Attorney's Office for 19 years, and I am the lead attorney for the City on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. on July 8, 2015 in the federal court for the Northern District of California. Prior to the filing, our office, including some attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of San Jose.

3. Our office has been involved in the drafting of the complaint, discovery, law and motion, and overall strategy and analysis of this case. We have produced voluminous records and responded to discovery propounded by some of the defendants. The effort of in-house counsel has been involved and significant.

4. In addition to hundreds of attorney and staff hours committed to this case over the past 5 years, our office has incurred in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last 5 years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on February 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the

methodology for allocation, and other legal and factual issues regarding the
mediated settlement discussions.

7. Multiple telephone conferences in early 2020 included JAMS Mediator Judge
(Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several
months as the parties continued to negotiate the class benefit, the attorney's
fees and costs, the class allocation, and the settlement language.

8. Not only did the overall litigation take several years, in several states, and in
several courts, but the mediated settlement process took significant time,
energy, and resources, as the subject matter involves complex environmental,
factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth"
negotiations, and our offices were involved in sometimes weekly or twice-
weekly phone calls in the weeks leading up to the final resolution of the
settlement language. Our office was involved in the drafting of the language
of the Settlement Agreement, with special attention to those matters we knew
could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office
believes the proposed class settlement is the best opportunity for national
resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of California that
the foregoing is true and accurate to the best of my knowledge. Signed this 27th
day of July 2020 in San Jose, California.

Nora Frimann

Assistant City Attorney

Declaration of Chief Assistant City Attorney Maria Bee

1. My name is Maria Bee and I am a Chief Assistant City Attorney for the City of Oakland, California. I have been employed by the City Attorney's Office for 6 years, and I am one of the lead attorneys for the City on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in November 2015 in the Northern District of California.  Prior to the filing, our office, including several attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of Oakland.

3. Our office has been involved in the drafting of the complaint, discovery, law and motion, and overall strategy and analysis of this case. We have produced voluminous records and responded to a lengthy public records act request and discovery propounded by the defendants. The effort of in-house counsel has been involved and significant.

4. In addition to hundreds of attorney and staff hours committed to this case over the past 5 years, our office has incurred in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, travel, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last 5 years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on January 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7.  Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8.  Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9.  The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge. Signed this 27th day of July 2020 in Oakland, California.

_____

Maria Bee

Declaration of Christopher D. Jensen

1. My name is Christopher D. Jensen and I am the Assistant City Attorney for the City of Berkeley, California. I have been with the City Attorney's Office for 19 months, and I am one of the lead attorneys for the City on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in January 2016 in the United States District Court for the Northern District of California. Prior to and since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of Berkeley.

3. Our office has been involved in the drafting of the complaint, law and motion, and overall strategy and analysis of this case. The effort of in-house counsel has been involved and significant.

4. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

5. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

6. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

7. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

8. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-

weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

9. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge. Signed this 24th day of July 2020 in San Francisco, California

_____

Christopher D. Jensen

Declaration of Assistant City Attorney, Elizabeth Schoedel

1.  My name is Elizabeth Schoedel and I am an Assistant City Attorney for the City of Spokane, Washington. I have been with the City Attorney's Office for 9 years, and I am one of the lead attorneys for the City on the PCB case against Monsanto, Pharmacia, and Solutia.

2.  The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in July 2015 in the Eastern District of Washington, Case Number 15-CV---2-1-SMJ.  Prior to the filing, our office, including several attorneys and staff, carefully evaluated the legal merits of the case in preparation of filing suit. Since filing this action with the Court, our office has continued to remain actively involved as co-counsel of record on behalf of the City of Spokane.

3.  Our office has been involved in the drafting of the complaint, responding to motions to dismiss, notices of intent to sue under the Clean Water Act, public records requests, discovery, summary judgement motions, motions to compel discovery, significant trial preparation, depositions, pretrial motions, and overall strategy and analysis of this case. We have produced voluminous records (millions of pages) and responded to several rounds of discovery requests propounded by the defendants. The effort of in-house counsel and

City staff has been involved and significant.  The City of Spokane's case is one of the first cases scheduled to proceed to trial.

4. In addition to thousands of attorney and staff hours committed to this case over the past 5 plus years, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, travel, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last 5 years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on January 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement

framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of Washington that

the foregoing is true and accurate to the best of my knowledge. Signed this 21th day

of July, 2020 in Spokane, Washington.

Office of the City Attorney
Elizabeth Schoedel, WSBA #20240
Assistant City Attorney

DECLARATION OF M. JOSEPH SLOAN

I, M. Joseph Sloan, declare and state as follows:

1. I am over the age of 18 and competent to testify as to the matters stated
   herein.

2. Since 2005 I have served as Deputy City Attorney for the City of Tacoma,
   and have been one of the attorneys in the Office of Tacoma City Attorney
   responsible for the City's pursuit of recovery of its PCB contamination
   damages against Monsanto, Pharmacia and Solutia, in concert with outside
   counsel, John Fiske of the law firm Baron & Budd.

3. After considering the time and resource commitment necessary if the City
   were to proceed separately against Monsanto, Pharmacia and Solutia, the
   need for highly experienced litigation counsel, and considering the common
   issues of law, fact and damages, the City joined as a plaintiff the subject
   lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. filed
   in the United State District Court Central District of California-Western
   Division, on July 8, 2020.

4. Prior to the filing, our office, including several attorneys, and the
   management of the various departments and divisions of the City of
   Tacoma, evaluated the legal merits of the case in advance of the filing of
   suit. Since January of 2018, our office has been involved in discussions with
   other Cites regarding PCB litigation, and John Fiske who later became co-
   counsel, and continues to remain involved as co-counsel for the City of
   Tacoma.

5. Our office has been involved in the drafting of the Complaint, the overall
   strategy and analysis of this case, negotiations, and discussions with other
   jurisdictions involved. In addition to thousands of attorney and staff hours
   committed to this case over the past 5 years we understand were invested by
   co-counsel, our office and various divisions and departments of the City of
   Tacoma have a significant investment of time that was required to
   investigate, and establish sufficient evidence to support the City's claim.

6. In advance of filing suit and thereafter, together with co-counsel John Fiske
   of Baron & Budd, our office participated in regularly scheduled telephone
   conferences with other in-house co-counsel representing other similarly

situated jurisdictions. These were arranged to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

7. Though less frequent in early 2020, the regularly scheduled telephone conferences became weekly calls, and in some instances more frequent than weekly in order to receive and provide updates during the mediation process.

8. Our office participated in multiple telephone conferences this year that included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

9. The City became a party in the case recognizing not only that the overall litigation would span several years, would occur in several states, and in several courts, but the mediated settlement process would involve a significant amount of time, energy, and resources, because the subject matter involves complex environmental, factual, and legal concepts.

10. Our office together with the other jurisdictions were involved in sometimes weekly or twice-weekly phone calls in the weeks before the final resolution of the provisions of the Settlement Agreement, and was directly involved in changes to proposed language.

11. It is my opinion that the final product was a result of an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for the jurisdictions involved to achieve an acceptable remedy for impacts arising from this unfortunate, complex and challenging environmental occurrence.

I declare under the penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge, and that this Declaration was signed by me this 23 day of July 2020 in Tacoma, Washington.

M. Joseph Sloan

Declaration of Chief Deputy City Attorney Karen L. Moynahan

1. My name is Karen L. Moynahan and I am a Chief Deputy City Attorney for the City of Portland, Oregon. I have been with the Portland City Attorney's Office for 9 years, and I am one of the lead attorneys for the City on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The City filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in July of 2016 in the Portland District of the United States District Court. Prior to the filing, our office, including several attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the City of Portland.

3. Our office has been involved in the drafting of the complaint, discovery, law and motion, and overall strategy and analysis of this case. We have produced 100,000 pages of records and responded to several rounds of discovery requested propounded by the defendants. The effort of in-house counsel has been involved and significant.

4. In addition to hundreds of attorney and staff hours committed to this case over the past 5 years, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, travel, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last 5 years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, we in-house co-counsel met in person in San Jose, California on January 28, 2020, to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual

class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of Oregon that the foregoing is true and accurate to the best of my knowledge. Signed this 24th day of July 2020 in Portland, Oregon.

*Karen L. Moynahan*

Karen L. Moynahan

Chief Deputy City Attorney

City of Portland, Oregon

Declaration of General Counsel Dan Blaufus

1. My name is Dan Blaufus and I am the General Counsel of the Port of Portland ("Port"). I have been with the Port of Portland for six years, and I am one of the lead attorneys for the Port on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The Port filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in January 2017 in the District of Oregon. Prior to the filing, our office, including several attorneys and staff, evaluated the legal merits of the case in preparation of filing suit. Since the filing, our office has continued to remain involved as co-counsel of record on behalf of the Port.

3. Our office has been involved in the drafting of the complaint, discovery, motion practice, and overall strategy and analysis of this case. We have produced voluminous records and responded to several rounds of discovery requests propounded by the defendants. The effort of our in-house counsel team has been significant.

4. In addition to hundreds of attorney and staff hours committed to this case over the past three years, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including document production, internal inquiry efforts, travel, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, our office participated in regularly scheduled telephone conferences with other in-house co-counsel. Over the last three years, Baron & Budd has scheduled monthly telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those regularly scheduled telephone conferences became weekly calls, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. In addition to telephone conferences, in-house co-counsel met in person in San Jose, California on February 28, 2020 to discuss the framework for the class resolution. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7. Multiple telephone conferences in early 2020 included JAMS Mediator Judge (Ret.) Jay Gandhi. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

**Exhibit J**
**Page 1330**

8. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our department was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of Oregon that the foregoing is true and accurate to the best of my knowledge. Signed this 28th day of July 2020 in Portland, Oregon.

Dan Blaufus
General Counsel
Port of Portland

Page 2 of 2

**Exhibit J**
**Page 1331**

Declaration of Deputy County Attorney Gregory E. Gaskins

1. My name is Attorney Gregory E. Gaskins and I am a Deputy County Attorney for Baltimore County, Maryland (County). I have been with the Baltimore County Office of Law for over 25 years, and I am one of the lead attorneys for the County on the PCB case against Monsanto, Pharmacia, and Solutia.

2. The County filed a lawsuit against Monsanto Company, Pharmacia LLC, and Solutia, Inc. in June 2020 in the Central District of California Western District. Prior to the filing, our office, including other attorneys and other County staff, evaluated the legal merits of the case in preparation of filing suit. Our office was prepared to file suit when settlement discussions took place. Prior to the filing of the Complaint, our office was involved as co-counsel of record on behalf of the County.

3. Our office has been involved in the drafting of the complaint and overall strategy and analysis of this case. The effort of in-house counsel has been involved and significant.

4. In addition to numerous attorney and staff hours committed to this case since October 2019, our office has incurred significant in-house litigation expenses required to prosecute and litigate the case, including internal inquiry efforts, and other litigation or office expenses.

5. Alongside our outside counsel, Baron & Budd, Gordon Wolf & Carney, and Grant & Eisenhofer, our office participated in telephone conferences with other in-house co-counsel. Since October 2019, Baron & Budd has scheduled telephone conferences for clients and in-house co-counsel in order to discuss the case, receive and provide updates on facts, law, and procedure, and to strategize together.

6. As class settlement discussions were pursued in early 2020, those telephone conferences increased in frequency, and in some instances more than weekly in order to receive and provide updates during mediated settlement discussions. Throughout the process we have been updated and provided our input and direction regarding the settlement framework, including the scale of the individual class funds, the methodology for allocation, and other legal and factual issues regarding the mediated settlement discussions.

7. Judge Jay Gandhi presided over the mediation for several months as the parties continued to negotiate the class benefit, the attorney's fees and costs, the class allocation, and the settlement language.

8. Not only did the overall litigation take several years, in several states, and in several courts, but the mediated settlement process took significant time, energy, and resources, as the subject matter involves complex environmental, factual, and legal concepts.

9. The Settlement Agreement was the subject of significant "back and forth" negotiations, and our offices were involved in sometimes weekly or twice-weekly phone calls in the weeks leading up to the final resolution of the settlement language. Our office was involved in the drafting of the language of the Settlement Agreement, with special attention to those matters we knew could or would affect the material rights of all class members.

10. The negotiation was an "arms-length" settlement process and our office believes the proposed class settlement is the best opportunity for national resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of Maryland that the foregoing is true and accurate to the best of my knowledge. Signed this 26ᵗʰ day of July 2020 in Baltimore County, Maryland.

*Gregory E Gaskins*

Attorney Gregory E. Gaskins
Deputy County Attorney

**Declaration of Suzanne Sangree, Director of Affirmative Litigation
Baltimore City Department of Law**

1.  My name is Suzanne Sangree and I am the Director of Affirmative
    Litigation for the Baltimore City Law Department, Baltimore, Maryland.  I
    have been with the Baltimore City Law Department for 13 years,  and I am
    one of the lead attorneys for the Mayor and City Council of Baltimore
    (Baltimore City) on the PCB case against Monsanto, Pharmacia, and Solutia.

2.  Baltimore City filed a lawsuit against Monsanto Company, Pharmacia LLC,
    and Solutia, Inc. on February 19, 2019 in the United States District Court for
    the District of Maryland. Prior to the filing, our office, including the City
    Solicitor and several attorneys, evaluated the legal merits of the case in
    preparation for filing suit. Since the filing, our office has continued to
    remain involved as co-counsel of record on behalf of Baltimore City.

3.  Our office has been involved in the drafting of the complaint, briefing of
    motions, and overall strategy and analysis of this case. We have compiled
    voluminous records and analyzed data concerning Baltimore's PCB injury
    and remediation. Our efforts as in-house counsel during the past 17 months
    have been involved and significant.

4.  Alongside our outside counsel, Baron & Budd, Gordon Wolf & Carney, and
    Grant & Eisenhofer, our office participated in telephone conferences with
    other in-house co-counsel. Over the last 17 months, Baron & Budd has
    scheduled monthly telephone conferences for clients and in-house co-
    counsel in order to discuss the case, receive and provide updates on facts,
    law, and procedure, and to strategize together.

5.  As class settlement discussions were pursued in early 2020, those telephone
    conferences increased in frequency, sometimes to more than once a week.
    Throughout the process we have been updated and provided our input and
    direction regarding the settlement framework, including the scale of the
    individual class funds, the methodology for allocation, and other legal and
    factual issues regarding the mediated settlement discussions.

6.  Judge Jay Gandhi presided over the mediation for several months as the
    parties continued to negotiate the class benefit, the attorney's fees and costs,
    the class allocation, and the settlement language.

7.  Not only did the overall litigation take several years, in several states, and in
    several courts, but the mediated settlement process took significant time,
    energy, and resources, as the subject matter involves complex
    environmental, factual, and legal concepts.

8.  The Settlement Agreement was the subject of significant "back and forth"
    negotiations, and our offices were involved in sometimes weekly or twice-
    weekly phone calls in the weeks leading up to the final resolution of the
    settlement language. Our office was involved in the drafting of the language
    of the Settlement Agreement, with special attention to those matters we
    knew could or would affect the material rights of all class members.

9.  The negotiation was an "arms-length" settlement process and our office
    believes the proposed class settlement is the best opportunity for national
    resolution of this complex and challenging environmental tort lawsuit.

I declare under the penalty of perjury under the laws of the State of Maryland that
the foregoing is true and accurate to the best of my knowledge. Signed this 24th
day of July 2020 in Baltimore, Maryland.

Suzanne Sangree