Rachel E. Morowitz SBN (326385)
rmorowitz@kellerrohrback.com
Amy Williams-Derry
(*pro hac vice forthcoming*)
awilliams-derry@kellerrohrback.com
Daniel P. Mensher
(*pro hac vice forthcoming*)
dmensher@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900, Fax (206) 623-3384

Matthew J. Preusch SBN (298144)
mpresuch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101-1598
(805) 456-1496, Fax (805) 456-1497

***Attorneys for Initial Settlement Class Member
City of Seattle***

*Additional Counsel Listed on Last Page*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CITY OF LONG BEACH a municipal corporation; et al.,<br><br>                              Plaintiffs,<br><br>     v.<br><br>MONSANTO COMPANY SOLUTIA INC., et al.,<br><br>                              Defendants. | No. 2:16-cv-03493-FMO-AS<br><br>**INITIAL SETTLEMENT CLASS MEMBER CITY OF SEATTLE'S OBJECTION TO MOTION FOR PRELIMINARY APPROVAL REGARDING RELEASE AND CONTRIBUTION**<br><br>Date:      September 17, 2020<br>Time:     10:00 am<br>Judge:    Fernando M. Olguin<br>Crtrm:    6D |

Action Filed:   May 19, 2016
Trial Date:   May 11, 2021

**ORAL ARGUMENT REQUESTED**

## I.   RELIEF REQUESTED

The City of Seattle (the "City") asks the Court to deny preliminary approval of the proposed Settlement or to amend the settlement language.  The definition of Released Claims in paragraph 41 of the proposed Settlement, in combination with the contribution protection provision in paragraph 106, impairs the City of Seattle's rights and the rights of untold numbers of other persons. The Settlement should be amended before notice goes to class members to allow class members to evaluate their options in light of the amended language.  If the Court grants oral argument on the Motion for Preliminary Approval, then the City asks for oral argument on its objection.

## II.   PRE-FILING CONFERENCE[1]

Counsel for the City of Seattle contacted Class Counsel, Scott Summy, to discuss the City's concerns.  Mr. Summy indicated that the plaintiffs would not consider amending the problematic provisions.  The City's counsel attempted to reach counsel for Monsanto by phone and, when that was unsuccessful, exchanged letters with counsel for

---

[1] The City is unsure whether a pre-filing conference was required given that the City is objecting to a pending motion, not bringing a new motion.  The City nonetheless did its best to confer with counsel for the parties prior to this filing.

2

CASE NO.: 2:16-cv-03493-FMO-AS
INITIAL SETTLEMENT CLASS
MEMBER CITY OF SEATTLE
OBJECTION TO MOTION
FOR PRELIMINARY APPROVAL

Monsanto regarding the provisions.  The City asked for clarification that the contribution protection provision would not bar the City's current or future claims.  Counsel for Monsanto replied, "[Y]ou request a legal opinion as to the potential application of contribution protection language in Paragraph 106 of the Settlement Agreement to claims the City of Seattle asserts or might assert in the future. We cannot offer legal opinions as to the application of fact and law."  Wishik Dec., Attachment A.  Before filing this objection, the City reached counsel for Monsanto by phone but was unable to resolve the issues before the deadline for filing this objection.  The City had no option left but to petition the Court for relief. Wishik Dec., ¶¶ 13 - 14.

### III.   FACTS

The City of Seattle sued Monsanto in 2016.[2]  The City's primary claim is that Monsanto created a public nuisance in the City's drainage system and the receiving water body, the Lower Duwamish Waterway, by producing and marketing PCBs for products such as exterior paint and caulk that release PCBs during normal use.  Wishik Dec., ¶ 2. As a result, people who rely on fishing and collecting shellfish from the Lower Duwamish for food, including immigrants and low-income persons, have been warned not to eat <u>any</u> resident seafood from the Lower Duwamish due to PCBs. *Id*., ¶ 3.

---

[2] *City of Seattle v. Monsanto Company, et al*., 2:16-CV-00107-RSL (WD WA).

3

Although the Plaintiffs and Defendants argue that the amount of the proposed Settlement is adequate, in part, because PCBs are not the only contaminant in receiving water bodies, in Seattle, PCBs are the sole chemical that makes resident seafood inedible. PCBs are also the only chemical that EPA has identified as being a site-wide contaminant that requires reduction to a site-wide average concentration. For these and other reasons, PCBs are "the driver" of remediation in the City's Lower Duwamish Waterway. *Id.*, ¶ 5.

The City already has incurred millions of dollars to abate the nuisance created by Monsanto's PCBs.  The City's trial experts are continuing to calculate future costs to abate the nuisance, but it appears those costs will be more than $600 million.  *Id.*, ¶ 4.

The City considers the proposed Settlement to be a gift to Monsanto and its new parent company, Bayer.  The Settlement would allow them to close the books on enormous liability arising from Monsanto's production and sale of PCBs. The proposed settlement, in the City's view, is a Trojan Horse for many of the class members, providing them a pittance to monitor their stormwater for PCBs and blocking them from getting funds they will need if PCBs are found.

The City was in the group of Litigating Entities until it became apparent that Monsanto would not settle for an amount of money commensurate with its liability. Indeed, the total amount of the proposed class settlement is less than Monsanto's exposure in just the City's case.  The City plans to opt out of the class and continue with

4

its separate action against Monsanto.  Once the City opts out, the City will not be able to object to the Settlement, even though the Settlement as it stands potentially impairs the City's rights.  This is the only opportunity for the City to get relief.

In addition to the City's lawsuit against Monsanto, the City is currently participating in an alternative dispute resolution process with multiple parties to resolve their respective liability under CERCLA[3] and the equivalent Washington statute, the Model Toxics Control Act (MTCA),[4] for contamination in the Lower Duwamish Waterway. That process is known as the Duwamish Allocation. *Id*., ¶ 9. Two members of the proposed class action, King County and the Port of Seattle, are participating in the Duwamish Allocation. One of the Monsanto defendants, Pharmacia, is also participating. Pharmacia is participating due to its former ownership of a plant adjacent to the Lower Duwamish that allegedly released PCBs in the course of manufacturing other products. *Id*., ¶ 10.  The Duwamish Allocation has been ongoing since 2014 and is expected to be completed in 2021.  *Id*., ¶ 11.

The City of Seattle, King County and the Port of Seattle signed an EPA Administrative Order in 2000 to investigate contamination in the Lower Duwamish.

---

[3] Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC. § 9601, *et seq.*
[4] RCW 70.105D.010, *et seq.*

5

They have been incurring millions of dollars in costs to implement the order over the past twenty years. *Id*., ¶ 6.

The City expects to sign a Consent Decree implementing EPA's selected remedy for the Lower Duwamish. In 2016, EPA estimated the cost of its selected remedy would be $342 million dollars. By the time construction begins, the cost is expected to be around $500 million. *Id.,* ¶ 8.

The City, King County and the Port of Seattle are seeking to recover a portion of their past and future costs for investigating and remediating contamination in the Lower Duwamish from each other and from the other parties in the Duwamish Allocation, including Pharmacia. *Id*., ¶ 9. Thus, as explained further below, if either King County or the Port of Seattle remain in the class action, the Settlement's contribution protection provision may serve to bar the City from recovering a portion of its past and future costs, even if the City opts out of the proposed Settlement.

## IV.    ARGUMENT

### A. The contribution protection provision makes the Settlement unfair and unreasonable.

The Plaintiffs and Defendants are asking the Court to rule that the proposed Settlement is fair and reasonable, as Civil Rule 23(e)(2) requires. The contribution protection provision in paragraph 106, in combination with the overbroad definition of

6

Released Claims in paragraph 41, make the proposed Settlement unfair and unreasonable.

The contribution protection provision states:

> Additionally, Defendant is entitled to protection from contribution and/or indemnity claims or actions asserted against Defendant **by any person or persons who are not parties to this Settlement Agreement for all Released Claims** and all matters alleged in the Action or the Underlying Actions.

DKT # 213-2, Exhibit A (proposed Settlement Agreement), p.28, paragraph 106

(emphasis added). This provision must be read in conjunction with the definition of

Released Claims:

> "Released Claims" means all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been alleged related to the manufacture, sale, testing, disposal, release, marketing, or management of PCBs, including but not limited to any claims based upon or related in any way to the subjects of the Action, the Underlying Actions, or this Settlement Agreement or any component parts thereof, and regardless of the legal theory or type or nature of damages claimed . . .

*Id*., at p. 11, paragraph 41. As this Court noted in its order denying Preliminary Approval

of the Settlement without prejudice, "With respect to absent class members, the court is

not inclined to approve broad releases and waivers pursuant to California Civil Code §

1542." Dkt. # 202 (Order Denying Preliminary Approval), p. 4, para. I. California Civil

Code § 1542 embodies the public policy that it is unjust to bar claims by parties that may

7

not have known or realized the scope of what was being released.  It would be even more

unjust to bar claims by non-parties based on an extremely broad release.

The Ninth Circuit has ruled that a class action settlement may only bar a class

member from asserting a later claim when the later claim is based on the "identical

factual predicate as that underlying claims in the settled class action."  Hesse v. Sprint

Corp., 598 F.3d 581, 590 (9th Cir. 2010). The definition of Released Claims in the

proposed Settlement goes far beyond the factual predicate for the underlying lawsuit.

The factual predicate for the underlying lawsuit is:

> (1) Monsanto manufactured, distributed, marketed, and promoted PCBs in a
> manner that created or participated in creating a public nuisance that is
> harmful to health and obstructs the free use of stormwater and/or dry-
> weather runoff systems and impaired waterbodies.

Dkt #189-2 (Class Complaint), at p. 32, paragraph 104.

> and (2) Monsanto knew or, in the exercise of reasonable care, should have
> known that the manufacture and sale of PCBs was causing the type of
> contamination now found in stormwater and/or dry-weather runoff systems
> and impaired waterbodies.

Id., at p. 32, paragraph 115.  Together, these two predicates are much narrower than any

claim "related to the manufacture, sale, testing, disposal, release, marketing, or

management of PCBs," as stated in the definition of Released Claims.  Thus, under Ninth

Circuit precedent, even a class member would not be barred from bringing claims against

8

Monsanto in a wide variety of situations.  If an overbroad release cannot bar later claims by class members, it also should not bar claims by persons that are not class members.

The contribution protection provision attempts to bar contribution claims by anyone in the world for anything related to Monsanto's PCBs.  As long as the contribution protection provision remains in the Settlement, the proposed Settlement is unfair and unreasonable.

B. <u>The Contribution Protection provision may impair the City's recovery of past and future costs to investigate and remediate contamination in the Lower Duwamish Waterway</u>.

It is impossible for the City of Seattle or anyone else to determine all the situations in which the contribution protection provision would apply, but it is likely to apply in the context of claims under CERCLA and similar state statutes regarding contaminated sites. The definition of Released Claims in the proposed Settlement purports to preserve claims under CERCLA and equivalent state statutes, but it does not.  The definition states:

> nothing in this Settlement Agreement will preclude or affect any action brought by governmental entities seeking response costs, penalties, or other remedies, under the Comprehensive Response, Compensation and Liability Act ("CERCLA") or similar state Superfund statutes and applicable regulations, or under any other laws or regulations, related to Defendant's or a Released Person's **discharge or disposal** of PCBs.

9

CASE NO.: 2:16-cv-03493-FMO-AS
INITIAL SETTLEMENT CLASS
MEMBER CITY OF SEATTLE
OBJECTION TO MOTION
FOR PRELIMINARY APPROVAL

DKT #213-2, Exhibit A (Settlement Agreement), at pg. 11, para. 42 (emphasis added).

CERCLA imposes liability for the "release or threatened release" of hazardous

substances. 42 U.S.C. § 9601 (23), (24).

> The term "release" means any spilling, leaking, pumping, pouring, emitting,
> emptying, discharging, injecting, escaping, leaching, dumping, or disposing
> into the environment (including the abandonment or discarding of barrels,
> containers, and other closed receptacles containing any hazardous substance
> or pollutant or contaminant).

42 USC 9601(22). The definition includes "discharging" or "disposing" as two modes of

releases, but there are many more.

The proposed Settlement expressly releases claims "related to the manufacture,

sale, testing, disposal, **release**, marketing, or management of PCBs."   DKT #213-2,

Exhibit A (Settlement Agreement), at pg. 11, para. 42 (emphasis added). It only excludes

CERCLA claims related to "discharge or disposal" of PCBs.  Thus, the proposed

contribution protection language would bar contribution claims based on a release of

PCBs that was not a "discharge or disposal."

It is overreaching for the definition of Released Claims to include any claims under

CERCLA or similar state statutes. The Class Complaint does not assert such claims.  To

the City's knowledge, none of the Litigating Entities asserted claims under CERCLA or

similar state statutes against Monsanto. The reason is simple:  CERCLA and similar state

statutes impose liability on entities that own or operate sites where contaminants are

10

released, or that arrange for disposal of contaminants that have been or may be released, or that transport such contaminants.  42 U.S.C. § 9607.  None of those situations fit the factual predicate of the Class Complaint.  Monsanto does not own or operate the buildings where PCB-containing paint or caulk is flaking off.  Disposal and transport are not involved.  Settlement of the Class Complaint does not need to include a release of any claims under CERCLA or similar state statutes and releasing those claims, in combination with the contribution protection provision, is overbroad and therefore unjust to non-parties.

   C.   The Contribution Protection provision may impair the City's recovery in the
        Duwamish Allocation.

        If King County or the Port of Seattle remain in the proposed class, then the contribution protection provision will greatly complicate the Duwamish Allocation just as it is nearing completion after five years.  The broad definition of Released Claims would include any claims under CERCLA by King County or the Port of Seattle that were due to releases by Pharmacia that were not "discharges or disposal," such as leaking, escaping and leaching.[5] Therefore the contribution protection language may bar contribution

---

[5] The Duwamish Allocation is a confidential process and all communications are protected by the Mediation Privilege, therefore the City cannot provide this Court with specifics on the claims against Pharmacia.

CASE NO.: 2:16-cv-03493-FMO-AS
INITIAL SETTLEMENT CLASS
MEMBER CITY OF SEATTLE
OBJECTION TO MOTION
FOR PRELIMINARY APPROVAL

claims against Pharmacia by the City or any of the other parties participating in the Duwamish Allocation.

For example, hypothetically, if the Port has incurred $20 million so far to implement EPA's Administrative Order, the Duwamish Allocator will determine how much of those costs should be reimbursed by each of the participating parties, including the City of Seattle and Pharmacia.   Due to the proposed class Settlement, the Allocator will first have to decide whether Pharmacia's liability is due to a "discharge or disposal" of PCBs or to a different type of release.   If the Allocator concludes that Pharmacia's liability is not due to a "discharge or disposal," then the Port's claim against Pharmacia would have been released in the class Settlement.   Then the contribution protection provision in the proposed Settlement may bar contribution claims by the City and other parties against Pharmacia.

The Duwamish Allocation would also be jeopardized if the Allocator determined that Pharmacia's liability <u>was</u> due to a "discharge or disposal" and, therefore, the Port's claim against Pharmacia had <u>not</u> been released.   CERCLA bars double recoveries and the collateral source rule does not apply in the CERCLA context.   42 U.S.C. § 9614(b); *United Alloys, Inc. v. Baker*, 2011 WL 2749641, *25-26 (C.D. CA) (2011).   Therefore, the Port should not be able to recover the same past and future costs for the Lower

12

CASE NO.: 2:16-cv-03493-FMO-AS<br>
INITIAL SETTLEMENT CLASS<br>
MEMBER CITY OF SEATTLE<br>
OBJECTION TO MOTION<br>
FOR PRELIMINARY APPROVAL

Duwamish in both the class Settlement and the Duwamish Allocation.  However, the Duwamish Allocation is scheduled to be completed first.

The success of the Duwamish Allocation depends on most of the parties resolving their respective liability for past and future costs.  <u>The parties will not agree to pay the Port millions of dollars for past costs and to commit to paying tens of millions in future costs when they do not know how much of the Port's costs will be compensated in the class Settlement</u>.  This problem would be doubled if King County also remains in the proposed class.  The Port and King County are two of the parties in the Duwamish Allocation with the largest monetary claims.  If their claims are not resolved, the Duwamish Allocation cannot succeed.

Someone might suggest that completion of the Duwamish Allocation be paused pending completion of the class Settlement.  That is not possible.  EPA intends to initiate negotiations for a Consent Decree governing remediation of the Lower Duwamish, with a $500 million price tag, in the near future. Wishik Dec., ¶ 8.  Completion of the Duwamish Allocation prior to the start of those negotiations is essential in order for parties to be ready to commit to signing the Consent Decree or paying to "cash out" while others implement the remedy.

The Lower Duwamish is just one contaminated site where this could happen. The City, King County and the Port of Seattle are also paying to address contamination in a

13

CERCLA site downstream of the Lower Duwamish, called the East Waterway. The proposed Settlement includes the East Waterway as one of the Sediment Sites that will be addressed. DKT #213-2, Exhibit A (proposed Settlement), at p. 19, paragraph (b) (Qualifying Sediment Sites). Pharmacia may be a Potentially Responsible Party for the East Waterway due to releases of contaminants from its manufacturing plant that moved downstream. Thus, the same complexities and injustice could arise when the PRPs for the East Waterway try to resolve their respective liability.

D. The injustice created by the overbroad release and the contribution protection provision can be easily addressed.

The simplest way to address the injustice of the contribution protection provision would be to strike it entirely or for the Court to deny preliminary approval of the Settlement until the parties remove it. Monsanto may still be able to argue that it is entitled to contribution protection in a specific case but would not have a blanket imprimatur from this Court.

The definition of Released Claims also should be amended to preserve all claims under CERCLA or equivalent state statutes, as follows:

nothing in this Settlement Agreement will preclude or affect any action brought by governmental entities seeking response costs, penalties, or other remedies, under the Comprehensive Response, Compensation and Liability Act ("CERCLA") or similar state Superfund statutes and applicable regulations, or under any other laws or regulations, related to Defendant's or a Released Person's **discharge or disposal** of PCBs.

14

The wording "brought by governmental entities seeking response costs, penalties, or other remedies" should be stricken because it is unclear whether that wording only preserves claims brought to recover costs under CERCLA section 107 and not claims for contribution under CERCLA section 113.[6]  Since the Class Complaint does not include claims under CERCLA or similar state statutes, it is unnecessary for either type of claim to be covered by Released Claims.

Striking the contribution protection provision and amending the definition of Released Claims would address the injustice created by the combination of those provisions.  It also would avoid unnecessarily complicating and jeopardizing the ongoing Duwamish Allocation.

CONCLUSION

The City of Seattle respectfully asks the Court to deny Preliminary Approval of the proposed Settlement or to amend the settlement language to eliminate the injustice created by the combination of the overbroad definitions of Released Claims and the contribution protection provision.

A proposed order is submitted herewith.

---

[6] *See* 42 U.S.C. § 9607; § 9613(f).

CASE NO.: 2:16-cv-03493-FMO-AS
INITIAL SETTLEMENT CLASS
MEMBER CITY OF SEATTLE
OBJECTION TO MOTION
FOR PRELIMINARY APPROVAL

DATED this 27th day of August, 2020.

KELLER ROHRBACK L.L.P.


By *s/ Rachel E. Morowitz*
    Rachel Morowitz (SBN 326385)
    rmorowitz@kellerrohrback.com
    Amy Williams-Derry
    (*pro hac vice forthcoming*)
    awilliams-derry@kellerrohrback.com
    Daniel P. Mensher
    (*pro hac vice forthcoming*)
    dmensher@kellerrohrback.com
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    (206) 623-1900, Fax (206) 623-3384

KELLER ROHRBACK L.L.P.

By *s/ Matthew J. Presuch*
    Matthew J. Preusch SBN (298144)
    mpreusch@kellerrohrback.com
    801 Garden Street, Suite 301
    Santa Barbara, CA 93101-1598
    (805) 456-1496, Fax (805) 456-1497

PETER S. HOLMES
Seattle City Attorney

    By: *s/Laura B. Wishik*
    Peter S. Holmes, WSBA # 15787
    Laura B. Wishik, WSBA #16682
    (*pro hac vice pending*)
    Laura.Wishik@seattle.gov
    SEATTLE CITY ATTORNEY'S OFFICE
    701 Fifth Avenue, Suite 2050

16

CASE NO.: 2:16-cv-03493-FMO-AS
INITIAL SETTLEMENT CLASS
MEMBER CITY OF SEATTLE
OBJECTION TO MOTION
FOR PRELIMINARY APPROVAL

Seattle, WA 98104-7097
(206) 684-8200

***Attorneys for Initial Settlement
Class Member City of Seattle***

17

## **CERTIFICATE OF SERVICE**

I certify that on  27th day of August, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all known counsel of record.

By: *s/ Rachel E. Morowitz*
Rachel Morowitz

4820-1580-0521, v. 1

18

CASE NO.: 2:16-cv-03493-FMO-AS
INITIAL SETTLEMENT CLASS
MEMBER CITY OF SEATTLE
OBJECTION TO MOTION
FOR PRELIMINARY APPROVAL