**BARON & BUDD, P.C.**
Scott Summy (*Pro Hac Vice,* TX Bar No. 19507500)
SSummy@baronbudd.com
Carla Burke Pickrel (*Pro Hac Vice,* TX Bar No. 24012490)
cburkepickrel@baronbudd.com
3102 Oak Lawn Ave, #1100
Dallas, Texas 75219
Telephone: (214) 521-3605

**BARON & BUDD, P.C.**
John P. Fiske (SBN 249256)
Fiske@baronbudd.com
11440 W. Bernardo Court, Suite 265
San Diego, California 92127
Telephone: (858) 251-7424

*Proposed Lead Class Counsel*
*Additional counsel listed on signature page*

Mark Anstoetter (*Pro Hac Vice*)
manstoetter@shb.com
Brent Dwerlkotte (*Pro Hac Vice*)
dbdwerlkotte@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITY OF LONG BEACH, a municipal corporation; COUNTY OF LOS ANGELES, a political subdivision; CITY OF CHULA VISTA, a municipal corporation; CITY OF SAN DIEGO, a municipal corporation; CITY OF SAN JOSE, a municipal corporation; CITY OF OAKLAND, a municipal corporation; CITY OF BERKELEY, a municipal corporation; CITY OF SPOKANE, a municipal corporation; CITY OF TACOMA, a municipal corporation; CITY OF PORTLAND, a municipal corporation; PORT OF PORTLAND, a port district of the State of Oregon; | CASE NO.: 2:16-cv-03493-FMO-AS<br><br>**RESPONSE TO THE OBJECTION OF SETTLEMENT CLASS MEMBER CITY OF SEATTLE TO RE-NOTE PRELIMINARY APPROVAL HEARING DATE, OR FOR RELIEF FROM DEADLINE TO OBJECT, AND TO APPEAR AND PRESENT ARGUMENT AT PRELIMINARY APPROVAL HEARING**<br><br>Time of Hearing: 10:00 a.m.<br>Date of Hearing: October 22, 2020 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BALTIMORE COUNTY, a political subdivision; MAYOR AND CITY COUNCIL OF BALTIMORE; all individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MONSANTO COMPANY; SOLUTIA INC., and PHARMACIA LLC, and DOES 1 through 100,

Defendants.

Courtroom: 6D
Honorable Fernando M. Olguin

File Date:      May 19, 2016
Trial Date:     May 11, 2021

Plaintiffs and Defendant (together Monsanto Company, Solutia Inc., and Pharmacia LLC) (collectively, "the Parties") submit this joint response in opposition to the City of Seattle's objection to the Parties' nationwide class action settlement.

## INTRODUCTION

The City of Long Beach alleged various common-law causes of action against Defendant, seeking to recover alleged damages associated with the presence of chemical polychlorinated biphenyls (or "PCBs") in the environment. Several other municipal entities filed similar lawsuits against Defendant and, after years of litigation, the Parties negotiated a nationwide class settlement to resolve allegations against Defendant related to Defendant's manufacture, sale, testing, disposal, release, marketing, promotion, or management of PCBs for alleged PCB-related environmental impairments, including impairments to water bodies. ("Settlement Agreement"). *See* ECF 213-1.[1] The Parties subsequently filed a renewed Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement. ECF 213. The Court has set a preliminary approval hearing for October 22, 2020. ECF 231.

## ARGUMENT

Seattle asks the Court to deny preliminary approval of the proposed settlement or

---

[1] The City of Seattle objected to the Parties initial request for preliminary approval, *see* ECF 197, and the Parties responded on July 8, 2020. ECF 202.

to amend the Parties' Settlement Agreement. The Court should deny the City of Seattle's objection for several reasons.

## I.   The City of Seattle Lacks Standing to Object to the Settlement.

The City of Seattle lacks standing to object. Seattle admits that it preemptively filed its objection because it plans "to opt out of the class and continue with its separate action against Monsanto[,]" and that once it does, it "will not be able to object to the Settlement. . . ." ECF 228 at 5. But the City of Seattle cannot have it both ways: if it is going to opt out of the Settlement it cannot object. As Seattle's filing indicates, it is well settled that a class member who opts out of a class settlement lacks standing to object. *E.g., Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007) (finding that class member who opted out of settlement lacked standing to object); *Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) (holding "[t]hose who are not class members, because they are outside the definition of the class or have opted out" lack standing to object to class settlement). Rather than wait until all other Settlement Class Members are given the opportunity to object, the City of Seattle has manufactured an opportunity to object to the Settlement *and* opt out of the class. The Court should deny the City of Seattle's objection.

## II.   The City of Seattle's Objection is Premature and Inappropriate.

The Court should deny the City of Seattle's motion as premature and inappropriate.[2] The City of Seattle identifies no authority that would allow it to object

---

[2] The City of Seattle did not seek to intervene under Fed. R. Civ. P. 24. This is not surprising because federal courts routinely deny interventions for the purpose of objecting to a class settlement, particularly where, as here, intervention could prejudice the settling parties and where the intervenors' interests are protected by a procedure permitting them to object to the proposed settlement or opt out of the class entirely. *See e.g., Zepeda v. PayPal, Inc.*, 2014 WL 1653246, at *4 (N.D. Cal. Apr. 23, 2014) (collecting cases) (courts routinely "den[y] intervention in the class action settlement context, citing concerns about prejudice, as well as putative interveners' ability to protect their interests by less disruptive means, such as opting out of the settlement class or participating in the fairness hearing process"), *objections overruled*, 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014).

to the Parties' settlement before the preliminary approval hearing, much less require revisions to a private contract between the Parties. *See Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties."). Nor does the City of Seattle cite any requirement that the Parties resolve potential objections or engage in dialogue over term interpretation at this stage. At this stage, "[t]he settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).[3]

The City of Seattle's tactic to inject itself into the preliminary approval stage is not only premature and inappropriate, it would unfairly allow it to leapfrog other class members by requiring this Court to entertain what is at best a premature objection to the proposed settlement before the normal procedure of hearing objections at the final approval stage. The City of Seattle is positioned no differently from other Settlement Class Members, and there is no reason to permit it to jump the line and have its objection heard before all of the Settlement Class Members have even been notified of the proposed settlement, much less had a full opportunity to object or opt out. Indeed, under the Parties' proposed timeline, the deadline for objections or opting out is months away. The Court should reject the City of Seattle's attempt to create this novel and inequitable precedent. *See Rodriguez v. Farmers Insurance Co. of Arizona*, 2013 WL 12109896 (C.D. Cal. 2013) (explaining that class action practice has long followed a simple three-step procedure, "the first of which is a preliminary approval hearing.") (citing Manual for Complex Litigation (Fourth) §§ 21.632 (2012)).

/ / /

/ / /

---

[3] Contrary to its assertions, neither the City of Seattle's in-house counsel nor its outside firm ever articulated Seattle's apparent concern over the definition of "Released Claims." When the City of Seattle's attorney contacted Class Counsel, she did not request Class Counsel to clarify the City of Seattle's objection.

### III.   The City of Seattle Incorrectly Interprets the Settlement's Contribution Protection and Released Claims Provisions.

Even if the City of Seattle had standing to prematurely object to the Settlement Agreement, it misinterprets the Settlement Agreement's terms. The City of Seattle argues the Settlement's contribution protection provision coupled with the definition of "Released Claims" "may serve to bar" the City of Seattle's ability to recover a portion of its past and future costs in a pending CERCLA action against Settlement Class Members, King County, the Port of Seattle, and Pharmacia. Br. at 6. The City of Seattle misunderstands the plain language of the Settlement.

As the City of Seattle notes, the Settlement Agreement expressly preserves governmental actions under CERCLA or similar state Superfund statutes: "nothing in this Settlement Agreement will preclude or affect any action brought by governmental entities seeking response costs, penalties, or other remedies, under the Comprehensive Response, Compensation and Liability Act ("CERCLA") or similar state Superfund statutes and applicable regulations, or under any other laws or regulations, related to Defendant's or a Released Person's discharge or disposal of PCBs." ECF 213-2 at ¶41.

The definition explicitly recognizes that the Settlement Agreement does not affect claims brought by governmental entities under CERCLA or similar state Superfund statutes for harm allegedly caused by "discharge or disposal of PCBs." *Id*. The City of Seattle notes that CERCLA liability extends to a variety of actions beyond discharge and disposal, including "spilling, leaking, pumping, pouring, emitting, emptying, injecting, escaping, leaching, [and] dumping … ." *Id*. at 10 (citing 42 U.S.C. § 9601). The City of Seattle argues that the definition of "Released Claims" *could* be read to exclude only those CERCLA or state Superfund claims based on a discharge or disposal, while barring claims based on the laundry list of releases under 42 U.S.C. § 9601.

But the plain language of paragraph 41 provides broadly that "nothing" "will preclude or affect any action" under CERCLA or similar state statutes based on the discharge or disposal of PCBs. A straightforward reading is that the Settlement Agreement does not release governmental claims under CERCLA based on Defendant's alleged introduction of PCBs into the environment (as opposed to Defendant's manufacture of PCBs), regardless of the verbiage used to describe it —whether a "leak," "spill," "leaching," etc.[4]

Indeed, the terms "release," "disposal," and "discharge" are defined expansively under CERCLA and largely overlap with one another. *See* 42 U.S.C. § 9601(22) (defining "release" to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching dumping, or disposing"); 42 U.S.C. § 9601(29) (incorporating definition of "disposal" under RCRA which includes "the discharge, deposit, injection, dumping, spilling, leaking, or placing" of contaminants onto land or into water); 40 C.F.R. § 300.5 (defining both "discharge" and "release" to include "any spilling, leaking, pumping, pouring, emitting, emptying, dumping …"); *see also Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 882 (9th Cir. 2001) (noting "substantial overlap" between CERCLA definitions of "disposal" and "release"). The City of Seattle's narrow focus on construction of the terms "discharge" and "disposal" as mere subsets of a "release" (Br. at 10) is unsupported and inconsistent with the language of CERCLA. Further, the "Releasing Persons" in the Settlement Agreement include only the Named Class Plaintiffs and Settlement Class Members, not opt-out class members. ECF 213-2 at ¶43. If the City of Seattle timely opts out of the Settlement, as it intends to do, it will not be a "Releasing Person" and therefore will not release any claims it may have against any party.

---

[4] As the City of Seattle recognizes, potential liability imposed under CERCLA and similar state statutes on owners and operators of contaminated sites, transporters of hazardous substances, and arrangers for disposal of hazardous substances (all of whom are potentially responsible parties or "PRPs" under CERCLA), is distinct and separate from potential liability based on the *manufacture* of PCBs. Br. at 10-11.

1    For the same reasons, the City of Seattle's argument that the Settlement

2    Agreement will disrupt and complicate the Duwamish River CERCLA allocation, and

3    require the allocator to parse the differences between "releases" and "discharges," is

4    misplaced.

5                                **CONCLUSION**

6            The Parties respectfully request that the Court deny the City of Seattle's

7    objection, and further request that the Court proceed as outlined in the renewed

8    Memorandum in Support of Certification of Settlement Class, Preliminary Approval of

9    Class Action Settlement, Approval of Notice Plan, Appointment of Class Action

10   Settlement Administrator, and Appointment of Class Counsel.

11

12   DATED: SEPTEMBER 4, 2020          Respectfully submitted,

13                                      /s/ John Fiske
                                       **BARON & BUDD, P.C.**
14                                     Scott Summy (*Pro Hac Vice,* TX Bar No.
                                       19507500)
15                                     SSummy@baronbudd.com
                                       Carla Burke Pickrel (*Pro Hac Vice,* TX
16                                     Bar No. 24012490)
                                       cburkepickrel@baronbudd.com
17                                     3102 Oak Lawn Ave, #1100
                                       Dallas, Texas 75219
18                                     Telephone: (214) 521-3605

19                                     **BARON & BUDD, P.C.**
                                       John P. Fiske (SBN 249256)
20                                     Fiske@baronbudd.com
                                       11440 W. Bernardo Court, Suite 265
21                                     San Diego, California 92127
                                       Telephone: (858) 251-7424
22                                     *Attorneys for Plaintiffs and the Class*

23                                     Mark Anstoetter (*Pro Hac Vice*)
                                       manstoetter@shb.com
24                                     Brent Dwerlkotte (*Pro Hac Vice*)
                                       dbdwerlkotte@shb.com
25                                     **SHOOK, HARDY & BACON L.L.P.**
                                       2555 Grand Boulevard
26                                     Kansas City, Missouri 64108
                                       Telephone: 816-474-6550
27                                     Facsimile: 816-421-5547
                                       *Attorneys for Defendants*
28

                                          7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28