Mark Anstoetter (*pro hac vice*)
manstoetter@shb.com
Brent Dwerlkotte (*pro hac vice*)
dbdwerlkotte@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547

*Attorneys for Defendants*

**BARON & BUDD, P.C.**
Scott Summy (admitted *Pro Hac Vice,* Texas Bar No. 19507500)
SSummy@baronbudd.com
Carla Burke Pickrel (admitted *Pro Hac Vice,* Texas Bar No. 24012490)
cburkepickrel@baronbudd.com
3102 Oak Lawn Ave, #1100
Dallas, Texas 75219
Telephone: (214) 521-3605

**BARON & BUDD, P.C.**
John P. Fiske (SBN 249256)
Fiske@baronbudd.com
11440 W. Bernardo Court, Suite 265
San Diego, California 92127
Telephone: (858) 251-7424

*Proposed Lead Class Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITY OF LONG BEACH, a municipal corporation; COUNTY OF LOS ANGELES, a political subdivision; CITY OF CHULA VISTA, a municipal corporation; CITY OF SAN DIEGO, a municipal corporation; CITY OF SAN JOSE, a municipal corporation; CITY OF OAKLAND, a municipal corporation; CITY OF BERKELEY, a municipal corporation; CITY OF SPOKANE, a municipal corporation; CITY OF TACOMA, a municipal corporation; CITY OF PORTLAND, a municipal corporation; PORT OF PORTLAND, a port district of the State of Oregon; BALTIMORE COUNTY, a political | CASE NO.: 2:16-cv-03493-FMO-AS<br><br>**RESPONSE TO THE NOTICE OF POSSIBLE AMICUS BRIEF FROM STATE ATTORNEYS GENERAL**<br><br>Honorable Fernando M. Olguin |

| | |
|---|---|
| 1 | subdivision; MAYOR AND CITY COUNCIL OF BALTIMORE; all individually and on behalf of all others similarly situated, |
| 2 | |
| 3 | Plaintiffs, |
| 4 | v. |
| 5 | MONSANTO COMPANY; SOLUTIA INC., and PHARMACIA LLC, and DOES 1 through 100, |
| 6 | |
| 7 | Defendants. |

Plaintiffs and Defendant (together Monsanto Company, Solutia Inc., and Pharmacia LLC) (collectively, "the Parties") submit this response to the Notice of Possible Amicus Brief From State Attorneys General. ECF 245.

## INTRODUCTION

The City of Long Beach alleged various common-law causes of action against Defendant, seeking to recover alleged damages associated with the presence of chemical polychlorinated biphenyls (or "PCBs") in the environment. Several other municipal entities filed similar lawsuits against Defendant and, after years of litigation, the Parties negotiated a nationwide class settlement to resolve allegations against Defendant related to Defendant's manufacture, sale, testing, disposal, release, marketing, promotion, or management of PCBs for alleged PCB-related environmental impairments, including impairments to water bodies. ("Settlement Agreement"). ECF 213-1. On August 8, 2020, the Parties filed a Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement. *See* ECF 213.

Following the Parties' motion, on August 24, 2020, the Parties received an invitation from certain State Attorneys General to discuss the Settlement. The Attorneys General wanted to "discuss the background of this case, the terms of the settlement, the attorneys' fees, and why counsel believes the settlement is in the best interest of the Class. Counsel should be prepared in particular to discuss paragraph 81 of the

Settlement. . . ."

The Parties and certain Attorneys General participated in a spirited but productive teleconference on September 1, 2020, in which the Parties explained the background of the case, the terms of the Settlement, and why the Settlement is in the best interest of the Settlement Class Members. Paragraph 81 was discussed ad nauseam and the Parties explained why it did not affect the States' rights. On October 8, 2020, the Parties sent a follow-up email to the Attorneys General and again addressed concerns related to Paragraph 81. The Attorneys General did not respond to the Parties' October 8 email before submitting their notice of potential amicus brief, nor have the Attorneys General referenced the Parties' communications on these topics in their notice.

## ARGUMENT

The concerns raised by the Attorneys General are misplaced and insufficient to deny preliminary approval.[1] The Attorneys General's brief should not be considered because it misconstrues key concepts of the Settlement and the relevant caselaw concerning settlements of class actions and environmental law liability generally. Nothing raised by the Attorneys General assists the Court in determining the fairness, reasonableness, and adequacy of the Settlement.

**I. The Attorneys General Cite No Authority Allowing a Notice of Potential Amicus Brief.**

As a threshold matter, the Attorneys General posit they are duty-bound under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to proffer their opinions on the Settlement. However, the Attorneys General have not identified any authority that would allow them to submit their notice of potential "concerns" without seeking leave of Court. Neither CAFA nor their status as Attorneys General is a sufficient basis to

---

[1] Aside from not "formally" submitting an amicus brief or even leave of Court, Arizona and Alaska joined in the notice but do not have *any* Settlement Class Members in their State. *Compare* ECF 213 at Ex. A, *with* ECF 245 at Ex. A (213-2 at 52). And the State of New Mexico has already settled its PCB claims with Defendants.

consider their notice of potential concerns here.

## II. Paragraph 81 Does Not Discourage Law Enforcement or Contravene Public Policy.

The Attorneys General misconstrue Paragraph 81. As the Parties explained during the September 1 teleconference and in their follow-up communications, Paragraph 81 applies only when a State Attorney General "files a future action (on or after March 27, 2020) against Defendant *related to PCBs for which one or more Settlement Class Members were or are compensated under this settlement*...." (emphasis added). This applies only when a State seeks to recover the *same* damages that Monsanto has already paid under the Settlement. Indeed, under the plain language of Paragraph 81, the 20 percent reduction is not a penalty but rather applies to claims that Settlement Class Members had the right to settle and for which they will be compensated. The 20 percent reduction addresses the potential scenario where Monsanto must defend against a subsequent cause of action by a State, if such a subsequent action by a State asserts the *same* claim for damages that has already been addressed, and for which Monsanto has already compensated a Settlement Class Member who had the right to settle and release the claim.

Nor do the State Attorneys General explain how Paragraph 81 discourages law enforcement actions or "contravenes public policy" by "driving a wedge between the states and their local jurisdictions." ECF 245 at Ex. A. Vague notions of federalism and public policy hold no sway here. Indeed, Paragraph 81 does *not* apply to traditional statutory enforcement actions by a State under CERCLA or similar state statutes, which are unambiguously excluded from the scope of the Release. Settlement Agreement, ¶ 41 ("[N]othing in this Settlement Agreement will prelude or affect any action brought by governmental entities seeking response costs, penalties, or other remedies, under the Comprehensive Response, Compensation and Liability Act ("CERCLA") or similar state Superfund statutes and applicable regulations, or under any other laws or

regulations, related to Defendant's or a Released Person's discharge or disposal of PCBs."). The notion that the Settlement may "dissuade" state Attorneys General from taking action is belied by the fact that, on October 27, 2020, New Hampshire filed suit against Defendants for PCBs, and the Maryland Attorney General recently posted a public Request for Proposal for potential claims related to PCBs. *See* RFP Section 2.4 A., Exhibit A.

Nor would Paragraph 81 have any effect if an Attorney General were to bring a cause of action seeking damages that Settlement Class Members did not have the right to settle and for which Settlement Class Members were not being compensated. Only if an Attorney General chooses to seek damages that Settlement Class Members had the right to settle, and for which they were compensated by Monsanto under the Settlement Agreement, does Paragraph 81 apply. In such an unlikely scenario, Monsanto reserves all defenses to any potential future action.

### III. Settlement Class Members Release Claims Based on the Same Facts Giving Rise to the Settlement.

As an initial matter, the Attorneys Generals did not previously raise concerns regarding Paragraph 41 with the Parties. Regardless, the Release is narrowly tailored and falls comfortably within controlling Ninth Circuit authority. The Attorneys General summarily suggest the claims being released are much broader than the claims asserted in the operative complaint. ECF. 245 Ex. A. The released claims and the factual predicate for the released claims align with the allegations in the Third Amended Complaint. *Compare* Paragraphs 6-12, 96 and 100-108 of the Third Amended Complaint, *with* Paragraph 106 of the Settlement Agreement. Further, the Parties are empowered to release claims "based on the identical factual predicate as that underlying the claims in the settled class action" even though "the claim was not presented and might not have been presentable in the class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Nor does the Release have any impact on the States; indeed,

as the Attorneys General note, "because states are not members of the proposed class, the Settlement Agreement cannot have any legal effect on their rights." ECF 245 at Ex. A.

Under the Settlement Agreement, Settlement Class Members and Defendant release any and all claims and causes of action that were or could have been brought in in this litigation based on, relating to, concerning or arising out of the alleged PCB-related environmental impairments, including to water bodies. Settlement Agreement ¶ 106. Settlement Class Members are *only* releasing claims based on the factual predicate as required by *Hesse*. There are not any material differences between the claims being released and the claims set out in the operative Third Amended Complaint. And even if there were, under controlling precedent, the Ninth Circuit has "held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Hesse*, 598 F.3d at 590. The Court should therefore reject the concerns raised by the Attorneys General because they are not helpful in determining whether the Settlement is fair, reasonable, and adequate.

## CONCLUSION

For these reasons, the concerns raised by the Attorneys General are misplaced and insufficient to deny preliminary approval.

NOVEMBER 16, 2020

Respectfully submitted,

/s/ Mark Anstoetter
Mark Anstoetter *(Pro Hac Vice)*
manstoetter@shb.com
Brent Dwerlkotte *(Pro Hac Vice)*
dbdwerlkotte@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547

*Attorneys for Defendants*

/s/ John Fiske
John Fiske (SBN 249256)
Fiske@baronbudd.com
**BARON & BUDD, P.C.**
11440 W. Bernardo Court, Suite 265
San Diego, California 92127
Telephone: (858) 251-7424

**BARON & BUDD, P.C.**
Scott Summy (admitted *Pro Hac Vice*, Texas Bar No. 19507500)
SSummy@baronbudd.com
Carla Burke Pickrel (admitted *Pro Hac Vice*, Texas Bar No. 24012490)
cburkepickrel@baronbudd.com
3102 Oak Lawn Ave, #1100
Dallas, Texas 75219
Telephone: (214) 521-3605

*Proposed Lead Class Counsel*

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

DATED: November 16, 2020

/s/ John Fiske
John Fiske (SBN 249256)