UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3493 FMO (ASx) | Date | **November 25, 2020** |
|---|---|---|---|
| Title | **City of Long Beach v. Monsanto Company, et al.** | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorney Present for Plaintiff(s): | | Attorney Present for Defendant(s): |
| None Present | | None Present |

**Proceedings:**   (In Chambers) Order Re: Pending Motion

    Having reviewed and considered all the briefing filed with respect to plaintiffs' Renewed Motion for Certification of Settlement Class, Preliminary Approval of Class Action Settlement, Approval of Notice Plan, Appointment of Class Action Settlement Administrator, and Appointment of Class Counsel (Dkt. 213, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

    Pursuant to the parties' Class Action Settlement Agreement ("Settlement Agreement"), defendant will pay $550 million to the settlement class members to resolve this case. (See Dkt. 213-2, Settlement Agreement at ¶¶ 73, 76). Defendant will separately pay "all reasonable costs and expenses incurred in (1) the notice process, which includes all costs incurred in connection with preparing, printing, publishing, and mailing the Direct Notice; and (2) the administration process, which includes all costs and expenses incurred to hire a Class Action Settlement Administrator and costs of processing claims and administering the Settlement Agreement." (Id. at ¶ 10). In addition, defendant will not oppose an application for attorney's fees and expenses in the amount of $98 million, (see id. at ¶ 103), which will also be paid separately by defendant.[1] (See id. at ¶ 105).

    According to plaintiffs, defendant's conduct has affected class members in one or more

---

[1] Attorney's fees and expenses include "attorneys' fees, costs, litigation expenses, and fees and expenses of the Special Master and consulting experts assigned to assist the Special Master in developing the Allocation." (Dkt. 213-2, Settlement Agreement at ¶ 7). They do not include claims administration expenses. (See id.). "The costs and expenses for implementing the Allocation by the Special Master will be split equally between the Parties; however, Defendant's share of costs and expenses shall not exceed $100,000. Any additional costs and expenses for implementing the Allocation shall be paid from Class Counsel's Attorneys' Fees and Expenses." (Id.). No costs and expenses for implementing the Allocation shall be paid from the Settlement Fund. (See id.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3493 FMO (ASx) | Date | November 25, 2020 |
|---|---|---|---|
| Title | City of Long Beach v. Monsanto Company, et al. | | |

ways by requiring:  (1) "monitoring PCBs in stormwater, (2) complying with a regulatory Total Maximum Daily Load (TMDL) under the [Clean Water Act's National Pollutant Discharge and Elimination System ('NPDES')] program, or (3) complying with sediment remediation costs under a regulatory Superfund or Category 4(b) clean up order."  (Dkt. 213-1, Memorandum of Points and Authorities in Support of Renewed Motion for Certification of Settlement Class, Preliminary Approval of Class Action Settlement, Approval of Notice Plan, Appointment of Class Action Settlement Administrator, and Appointment of Class Counsel ("Memo.") at 5).  The Settlement Agreement creates three main funds to compensate for the identified harms, while a fourth fund will be created "to compensate legal costs of litigating entities and to compensate special needs and costs of class members."  (Id.).  The allocation of the funds is broken down as follows:  (1) Monitoring Fund of $42,895,000; (2) TMDL Fund of $250,000,000; (3) Sediments Fund of $150,000,000; and (4) Special Needs Fund of $107,105,000.  (See Dkt. 213-2, Settlement Agreement at ¶ 76; Dkt. 213-1, Memo. at 6).

Pursuant to the Settlement Agreement, "Released Claims"

> means all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been alleged related to the manufacture, sale, testing, disposal, release, marketing, or management of PCBs, including but not limited to any claims based upon or related in any way to the subjects of the Action, the Underlying Actions, or this Settlement Agreement or any component parts thereof, and regardless of the legal theory or type or nature of damages claimed; provided, however, that nothing in this Settlement Agreement will preclude or affect any action brought by governmental entities seeking response costs, penalties, or other remedies, under the Comprehensive Response, Compensation and Liability Act ("CERCLA") or similar state Superfund statutes and applicable regulations, or under any other laws or regulations, related to Defendant's or a Released Person's discharge or disposal of PCBs.

(Dkt. 213-2, Settlement Agreement at ¶ 41).  The Settlement Agreement further provides that "Defendant is entitled to protection from contribution and/or indemnity claims or actions asserted against Defendant by any person or persons who are not parties to this Settlement Agreement for all Released Claims and all matters alleged in the Action or the Underlying Actions."  (Id. at ¶ 106).

While defendant's desire for a broad release is understandable, the court has concerns regarding the extent and scope of the release.  See Newberg on Class Actions § 13:15 (5th ed. 2014) ("Beyond the value of the settlement, courts [have] rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability.").  For example, on the one hand, the release states that defendant is entitled to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3493 FMO (ASx) | Date | **November 25, 2020** |
|---|---|---|---|
| Title | **City of Long Beach v. Monsanto Company, et al.** | | |

"protection from contribution and/or indemnity claims or actions asserted against Defendant by any person or persons who are not parties to this Settlement Agreement for all Released Claims and all matters alleged in the Action or the Underlying Actions" and that nothing in ¶ 106 "shall create a duty on the part of Named Class Plaintiffs, Settlement Class Members, and/or Releasing Persons to defend and/or indemnify Defendant or Released Persons in any contribution and/or indemnity claim." (Dkt. 213-2, Settlement Agreement at ¶ 106). On the other hand, the next paragraph in the Settlement Agreement states that each class member

> agrees to be responsible for any liens, interests, actions, or derivative claims made by any third party for or as against Settlement Funds and/or the consideration that is the subject of this Agreement, to the extent allocated to each Settlement Class Member. Each Settlement Class Member further agree[s] to defend, indemnify, and hold harmless Defendant against any claim, demand, action, cost, expense, attorneys' fee, loss, judgment, or liability it may be subjected to by any person or entity who may claim through the Settlement, for the portion of the Settlement allocated to each Settlement Class Member, in a derivative manner against Defendant, including without limitation, any insurers, agents, representatives, successors, predecessors, assigns, and attorneys, bankruptcy trustees, and any and all other persons, firms, corporations, associations, and other legal entities who may claim through them in a derivative manner.

(Id. at ¶ 107).

First, the court cannot approve any release that contains any language that seeks or suggests that the claims of persons or entities who are not parties to this case are barred. It is not difficult to imagine a third-party suing defendant for conduct relating to the allegations in this case and it is difficult to tell from the release whether defendant would seek to require class members to defend and/or indemnify defendant in the third-party lawsuit. Defendant is entitled to no more than the release of the claims class members asserted or could have asserted in the operative complaint against defendant. See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted). Defendant is not entitled to have class members indemnify it for any "claims or actions asserted against Defendant by any person or persons who are not parties to this" action, (Dkt. 213-2, Settlement Agreement at ¶ 106), for conduct alleged in the operative complaint. Indeed, there is no need for the release to address claims raised that could be asserted against defendant by a non-party, even if the claims have some relationship to the allegations in the operative complaint.

Second, it is unclear why the release references CERCLA claims since there are no such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3493 FMO (ASx) | Date | **November 25, 2020** |
|---|---|---|---|
| Title | **City of Long Beach v. Monsanto Company, et al.** | | |

claims in the operative complaint.[2] (See, generally, Dkt. 201, Third Amended Complaint). Further, the release is overbroad to the extent it requires the release of claims in "the Underlying Actions." (Dkt. 213-2, Settlement Agreement at ¶ 106). The court will approve a release that requires class members to release only claims against defendant that were or could have been asserted in the operative complaint. See, e.g., Marshall v. Northrop Grumman Corporation, 2020 WL 3630052, *6 (C.D. Cal. 2020) ("Because the scope of the proposed settlement agreement's release of liability could extend to any cause of action that has a logical or causal connection to the Released Claims, and is not limited to claims based on an identical factual predicate, the proposed release of liability is impermissible."); Stokes v. Interline Brands, Inc., 2014 WL 5826335, *1 (N.D. Cal. 2014) (denying preliminary approval where release was "overbroad and [gave] defendant a windfall beyond the scope of the claims in the complaint"); McKeen-Chaplin v. Franklin American Mortg. Co., 2012 WL 6629608, *5 (N.D. Cal. 2012) (finding release overbroad where there was "no showing that Plaintiffs ha[d] been independently compensated for the broad release of claims unrelated to [the] dispute"); Allen v. Similasan Corporation, 318 F.R.D. 423, 428 (S.D. Cal. 2016) ("When the broad release provisions in this Settlement Agreement are coupled with a large broadening of the class description so that now a nationwide class of users is releasing its claims instead of a California-only class, it appears that this Settlement is crafted to provide protection to [defendant] and not to benefit the unnamed Plaintiffs.").

Finally, the overly broad release and indemnification provision are also concerning given that it appears that most of the class members will receive a very modest payout. (See Dkt. 213-2, Settlement Agreement at ¶ 41; see also id. at ¶ 80(h) (Special Needs Fund, Part B)). While there are approximately 2,528 initial settlement class members who may receive a payment between $15,000 and $30,000 from the Monitoring Fund "as consideration for a class release[,]" (see id. at ¶ 77), only 242 class members will recover from the $250,000,000 TMDL Fund, (see id. at ¶ 78(a) & Exh. D at ECF 6917-20), and only 12 are entitled to recover from the $150,000,000 Sediments Fund. (See id. at ¶ 79(a)-(c) & Exh. E at ECF 6922). Given that the vast majority of class members will be receiving a payment between $15,000 and $30,000, the notion of requiring any class member to indemnify defendant for anything – no matter how narrowly it may be defined by the parties – relating to this case is troubling.

The court also finds problematic the attorney general provision, (see Dkt. 213-2, Settlement Agreement at ¶ 81), which provides that in the event a state attorney general or related entity "files a future action . . . against Defendant related to PCBs for which one or more Settlement Class Members were or are compensated under this settlement, then Settlement Class Members, within that same state, that are permitted and discharge or release PCBs into the 303(d) body of water impaired by PCBs that is the subject of the newly filed suit, shall have only their future payments

---

[2] To the extent the parties want to make it clear that such claims are not barred by this release, they should adopt the language proposed by the City of Seattle in its brief. (See Dkt. 228, Initial Settlement Class Member City of Seattle's Objection to Motion for Preliminary Approval Regarding Release and Contribution at 14).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3493 FMO (ASx) | Date | November 25, 2020 |
|---|---|---|---|
| Title | City of Long Beach v. Monsanto Company, et al. | | |

reduced by twenty percent[.]" (Id.). Plaintiffs contend that this provision helps to "avoid double payment by Monsanto – that is, payment to class members and attorneys general for the same contemplated remediation or mitigation costs." (Dkt. 213-1, Memo. at 16). But the interests of the class members and the state attorneys general will necessarily, and perhaps significantly, be different. If the state attorneys general were coordinating with the class members, then perhaps plaintiffs' contention would be persuasive. However, the court sees no reason why a class member's recovery should be reduced because another governmental entity with different interests and law enforcement obligations has decided to sue defendant based on conduct that is encompassed by the allegations in this case.[3]

The court also questions the Settlement Agreement's cancellation provision, (see Dkt. 213-2, Settlement Agreement at ¶ 102), specifically the language providing that "[i]f any Party that has filed a lawsuit against Defendant as of the issuance of the Final Order approving the Class Action Settlement ('Litigating Plaintiff') opts out of the Settlement, then the total settlement amount to be paid by Defendant under Paragraph 73 will be reduced by each opting out Litigating Plaintiff's allocated share of the Settlement Funds." (Id.). This provision could significantly and unfairly reduce the Settlement Fund (or artificially inflate the settlement amount) given that, at least with respect to the Sediments Fund, the allocation is to be determined by a Special Master "upon application[.]" (See id. at ¶ 79(d)).

Similarly, the court has concerns regarding the Special Needs Fund, Part A, which will be used to compensate 15 named plaintiffs and other litigating entities. (See Dkt. 213-2, Settlement Agreement at ¶ 80(b)-(c)). The amount ($57,105,000) and basis for the allocation are not sufficiently clear to the court. To the extent the parties submit a renewed motion and settlement agreement, they shall identify with particularity each class member entitled to receive a distribution from this fund, which class members are under contract with Lead or Co-Class Counsel, and which class members retained outside counsel and experts, or filed lawsuits.

Next, the court questions whether the attorney's fees provision of the settlement renders the settlement unfair. The Settlement Agreement provides that defendant "agrees to pay the Attorneys' Fees and Expenses awarded by the Court in an amount not to exceed $98,000,000," (Dkt. 213-2, Settlement Agreement at ¶ 103), which at this juncture appears excessive, particularly when the Settlement Agreement apparently permits any fees not awarded to revert to defendant. (See, generally, id.). Further, plaintiffs must exclude from their request for attorney's fees and costs the "fees and expenses of the Special Master and consulting experts assigned to assist the Special Master in developing the Allocation." (Id. at ¶ 7). The court must be able to evaluate the reasonableness of plaintiffs' request for attorney's fees in relation to either the percentage of fund method and/or lodestar method and utilize the method that achieves a reasonable result. See In

---

[3] Just as defendant can argue that it is entitled to contribution under CERCLA, see 42 U.S.C. §§ 9601, et seq., defendant can also argue in any action filed by any state attorney general that it should receive some sort of the credit for the amount defendant paid in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-3493 FMO (ASx) | Date | **November 25, 2020** |
|---|---|---|---|
| Title | **City of Long Beach v. Monsanto Company, et al.** | | |

re Bluetooth Headset Products Liability Litig., 654 F.3d 935, 942 (9th Cir. 2011) ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result.").

Finally, it's unclear to the court how or what mechanism will be used to monitor the settlement. A settlement of this size and complexity will require the court to issue a multi-year consent decree that deals with all aspects of administering and implementing the settlement. The appointment of a monitor or special master that reports directly to the court will, of course, be necessary. The special master or monitor shall be responsible for all aspects relating to the administration and implementation of the settlement. To the extent a special master is appointed, he or she shall be selected and his or her authority shall be defined as stated in Rule 53(c) of the Federal Rules of Civil Procedure.[4] See Fed. R. Civ. P. 53(c)(1) (providing, inter alia, that Special Master has authority to "regulate all proceedings;" "take all appropriate measures to perform the assigned duties fairly and efficiently;" and "if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence"). The court's review of the special master's decision shall be de novo. Fed. R. Civ. P. 53(f). The special master may "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty." Fed. R. Civ. P. 53(c)(2). The special master shall have the discretion to decide whether an in-person hearing is necessary to resolve a dispute or whether the dispute may be resolved through a telephonic hearing. The special master may communicate ex parte with the court regarding the instant case. No party shall communicate with the special master ex parte unless otherwise permitted by the Special Master.

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion **(Document No. 213)** is **denied without prejudice**.

2. Plaintiffs may file a renewed Motion for Certification of Settlement Class, Preliminary Approval of Class Action Settlement, Approval of Notice Plan, Appointment of Class Action Settlement Administrator, and Appointment of Class Counsel no later than **December 31, 2020**.

Initials of Preparer     vdr

---

[4] In the past, the court has requested that the parties submit the names and educational and background materials for at least three proposed candidates. If the parties utilize this approach, they should submit names and materials of applicants with extensive experience in environmental law. Alternatively, the court may decide to have the parties issue a Request for Proposal ("RFP") for a settlement compliance monitor. See, e.g., UFCW & Employers Benefit Trust v. Sutter Health, et al., Case No. CGC-14-538451 (San Francisco Superior Court) (RFP seeking settlement compliance monitor in consolidated actions brought by private plaintiffs and state attorney general).