1  **KELLEY DRYE & WARREN LLP**
   Andrew Walls Homer
2  7825 Fay Avenue, Suite 200
   La Jolla, CA 92037
3  858-795-0426
   Fax: 713-355-5001
4  Email: ahomer@kelleydrye.com

5  *Attorneys for San Diego Unified Port District*

6             **UNITED STATES DISTRICT COURT**

7    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| 8  CITY OF LONG BEACH, a municipal corporation; COUNTY OF LOS | CASE NO.: 2:16-cv-03493-FMO-AS |
| 9  ANGELES, a political subdivision; CITY OF CHULA VISTA, a municipal | **RESPONSE TO RENEWED MOTION FOR CERTIFICATION** |
| 10 corporation; CITY OF SAN DIEGO, a municipal corporation; CITY OF SAN | **OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF** |
| 11 JOSE, a municipal corporation; CITY OF OAKLAND, a municipal corporation; | **CLASS ACTION SETTLEMENT, APPROVAL OF NOTICE PLAN,** |
| 12 CITY OF BERKELEY, a municipal corporation; CITY OF SPOKANE, a | **APPOINTMENT OF CLASS ACTION SETTLEMENT** |
| 13 municipal corporation; CITY OF TACOMA, a municipal corporation; | **ADMINISTRATOR, AND APPOINTMENT OF CLASS** |
| 14 CITY OF PORTLAND, a municipal corporation; PORT OF PORTLAND, a | **COUNSEL** |
| 15 port district of the State of Oregon; BALTIMORE COUNTY, a political | |
| 16 subdivision; MAYOR AND CITY COUNCIL OF BALTIMORE; all | Time of Hearing: 10:00 a.m. |
| 17 individually and on behalf of all others similarly situated, | Date of Hearing: July 22, 2021 |
| | Courtroom: 6D |
| 18                    Plaintiffs, | Honorable Fernando M. Olguin |
| 19 v. | |
| 20 MONSANTO COMPANY; SOLUTIA | |
| 21 INC., and PHARMACIA LLC, and DOES 1 through 100, | |
| 22                    Defendants. | |
| 23 | |

24

25

26

27

28

1

**INTRODUCTION**

2      The San Diego Unified Port District (the "Port District") respectfully submits

3    this Response to Plaintiffs' Renewed Motion for Certification of a Settlement Class,

4    Preliminary Approval of Class Action Settlement, Approval of a Notice Plan,

5    Appointment of a Class Action Settlement Administrator and Appointment of Class

6    Counsel (the "Motion").  Since 2015, the Port District has been litigating significant

7    polychlorinated biphenyl ("PCB")-related claims against the Monsanto Defendants in

8    the United States District Court for the Southern District of California.  *See San Diego*

9    *Unified Port District v. Monsanto Co*., No. 3:15-cv-00578-WQH-AGS (S.D. Cal.)

10   (the "San Diego Action").  The Port District is identified in the Settlement Agreement

11   (the "Settlement Agreement") as an "Initial Settlement Class Member," and is also

12   one of the fifteen (15) "Litigating Entities" that is entitled to a distribution from the

13   $57,105,000 Special Needs Fund, Part A.[1]  Thirteen (13) of the fifteen (15) Litigating

14   Entities are represented by proposed Lead Class Counsel.  Only the Port District and

15   the City of Seattle are Litigating Entities represented by other outside counsel.

16      The Port District submits this Response to respectfully request that the Court

17   consider the following two, interrelated concerns regarding the Settlement Agreement

18   and the need to ensure that the Litigating Entities are treated equally under that

19   agreement, regardless of whether they were represented by proposed Lead Class

20   Counsel.

21      First, the Port District has extensive *accrued* attorneys' fees for its many years

22   of vigorous litigation in its San Diego Action.  The Settlement Agreement states that

23   the Special Master "will give attention and consideration to any Litigating Entity that

24   has *incurred* attorneys' fees to outside counsel, other than Lead or Co-Lead Counsel."

25   (Emphasis added.)  Based on the Port District's counsel's conversations with Class

26

27

28

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the Settlement Agreement.

1    Counsel, and Class Counsel's representations to the Court, the parties and the Port
2    District interpret the Settlement Agreement to allow the two Litigating Entities not
3    represented by Class Counsel to submit an application including outside counsel fees
4    that were *accrued* (but not paid out-of-pocket by the Litigating Entity), as well as
5    third-party expenses paid for by outside counsel, in pursing their PCB-related
6    litigations against the Monsanto Defendants. The Port District, however, is concerned
7    that despite the parties' discussions and representations to the Court, the Settlement
8    Agreement's use of "incurred" could be interpreted differently by the Court or Special
9    Master.

10   If the Court believes that it is not clear in the Settlement Agreement that the
11   fees include those that were accrued, but not paid out-of-pocket by each Litigating
12   Entity not represented by proposed Lead Class Counsel, then the Port District
13   respectfully requests that the Court direct the parties to modify the Settlement
14   Agreement to make clear that Litigating Entities not represented by Class Counsel
15   may make a separate fee and cost application to the Special Master to recover the
16   attorneys' fees and the outside (third-party) costs *accrued*, and that such application
17   will be separate and apart from the applications that all Litigating Entities are
18   permitted to submit regarding Special Needs Fund, Part A, for their in-house fees and
19   expenses.

20   Second, under the present version of the Special Needs Fund, Part A,
21   Application (Exhibit G to the Settlement Agreement), Litigating Entities not
22   represented by Class Counsel (*i.e.*, the Port District and the City of Seattle) are treated
23   less favorably than Litigating Entities represented by Class Counsel when it comes to
24   presenting their applications. Each Litigating Entity is provided with the same 25-
25   page limit to submit attorneys' fees and expenses application. However, Litigating
26   Entities not represented by Class Counsel must use their applications to cover **both**
27   outside counsel fees and costs, as well as their in-house fees and costs, while
28   Litigating Entities represented by Class Counsel can use all of their allotted pages to

1   address only their in-house fees and costs.  The Port District, when considering the

2   need to present fees and costs spanning the San Diego Action for a six-year-plus

3   period of time, for both in-house and outside representation, should not be

4   disadvantaged in its presentation.

5        If the Court believes that under the current version of the Special Needs Fund,

6   Part A, Application would prevent the Port District (and the City of Seattle, if it

7   chooses) from submitting a separate attorneys' fee and expense application for outside

8   counsel (in addition to the 25-page limit provided to Litigating Entities for their in-

9   house fees and expenses), then the Port District respectfully requests that the Court

10  direct the parties to clarify that Litigating Entities not represented by proposed Lead

11  Class Counsel are permitted to exceed the 25-page limit to include their outside

12  counsel's fees and costs, or to submit a separate attorneys' fees and expense

13  application for outside counsel's fees and costs.

14       Further background and detail provided below illuminates the Port District's

15  concerns and the reasons for its two requests.

## BACKGROUND

17  ***Background Regarding the San Diego Action.***  From 2015 through March 26,

18  2020, the Port District and the City of San Diego—a proposed Named Class Plaintiff

19  in the instant Action and a proponent of the Class Action Settlement at issue on the

20  Motion—were co-plaintiffs in the San Diego Action.  (Jackson Decl., ¶ 2; *id.* Ex. A,

21  SD Dkt. No. 1.)  On March 26, 2020, following the close of all fact and expert

22  discovery and extensive motion practice, the District Court in the San Diego Action:

23  (1) dismissed with prejudice all of the City of San Diego's claims on Monsanto's

24  motion for summary judgment; and (2) denied Monsanto's motion for summary

25  judgment as to the Port District's public nuisance and abatement claims.  (Jackson

26  Decl., ¶ 5; SD Dkt. Nos. 485-486.)  Thus, the Port District's claims remain active and

27  are set for pre-trial proceedings and trial if the Port District opts-out of the proposed

28

1    settlement.[2]  (Jackson Decl., ¶ 6; SD Dkt. No. 491.)

2           Baron & Budd (proposed Lead Class Counsel in this Action) represented the

3    City of San Diego in the San Diego Action.  (Jackson Decl., ¶ 4.)  Prior to the dismissal

4    of the City of San Diego's claims, the two parties, and their respective counsel (Baron

5    & Budd and Kelley Drye), worked together and, in many instances, shared experts

6    and expenses in pursuing their respective claims against Monsanto.  (*Id.*, ¶ 7.)  Indeed,

7    the Declaration filed by Class Counsel regarding their significant efforts in litigating

8    against the Monsanto Defendants largely describes the work that Class Counsel

9    performed on behalf of the City of San Diego in conjunction with the prosecution of

10   the Port District's claims by its outside and in-house counsel in the *San Diego Action*.

11   (Dkt No. 213-4, Summy Decl. at ¶ 14.)  Proposed Lead Class Counsel and the Port

12   District's counsel worked side-by-side and shared the burden and expenses in

13   reviewing hundreds of thousands of pages of documents produced by Monsanto, and

14   in conducting more than 80 depositions (including more than 30 expert depositions).

15   (*Id.* at ¶ 16.)  For its part, the Port District's outside counsel have accrued well in

16   excess of $10 million in attorneys' fees and expended more than $5 million in expert

17   and other third-party costs pursing the Port District's still-pending claims in the *San*

18   *Diego Action*.  (Jackson Decl., ¶ 8.)

19          ***Special Needs Fund, Part A.***  As noted above, there are fifteen (15) Settlement

20   Class Members, defined as "Litigating Entities," which will be entitled to a

21   distribution from Special Needs Fund, Part A.  (Dkt. 278-2, Settlement Agreement at

22   ¶ 25).  The Settlement Agreement allocates $57,105,000 to the Special Needs Fund,

23   Part A, "to compensate and accommodate those Litigating Entities whose time,

24   energy, effort, attorney work product, costs, expenses and risk of litigation helped

25

26   [2] At the request of the Monsanto Defendants and the Port District, the District Court
27   in the San Diego Action has continued the deadlines for pretrial disclosures and
     submissions, as well as for trial, as a result of the motion seeking approval of the
28   Class Action Settlement in this Action. (Jackson Decl., ¶ 6; SD Dkt. No. 500.)

CASE NO.: 2:16-cv-03493-FMO-AS
RESPONSE TO RENEWED MOTION FOR CERTIFICATION

1 cause the entire Class Settlement, for the benefit of all 2,528 Initial Settlement Class

2 Members." (*Id*., ¶ 80(b) and (c)).  Under the Settlement Agreement, a Special Master

3 will "equitably and reasonable allocate Part A funds, upon application, based on a

4 totality and relativity of" a list of factors, including how significantly such Litigating

5 Entity litigated.  (*Id.,* ¶ 80(d)).

6          The Settlement Agreement also provides that Litigating Entities represented by

7 Class Counsel can receive "an equitable allocation for in-house or general counsel

8 fees, overhead, salaries, time, energy, costs, resources, and/or attention, including but

9 not limited to city attorneys, county counsel, and/or general counsel."  (*Id.* ¶ 80(e)).

10 Under Paragraph 80(d) of the Settlement Agreement:

11 
12 
13 
14
> [t]he Special Master will give attention and consideration to any Litigating Entity that has incurred attorneys' fees to outside counsel, other than Lead or Co-Class Counsel.  The Special Master will reasonably and equitably prioritize and reimburse any Litigating Entity that, through outside counsel other than Lead or Co-Class Counsel, incurred reasonable, documented out-of-pocket litigation costs.

15 (*Id.*)

16          Class Counsel described the Special Needs Fund, Part A, to this Court at the

17 hearing held on February 18, 2021, on the Motion for Preliminary Approval:

18 
19 
20 
21 
22 
23 
24 
25
> There is outside counsel, namely the [P]ort of San Diego that has been in this litigation what I call for the long haul.  They are not listed as class counsel, but they certainly have been under contract [referring to the undersigned] since I believe 2015.  And they've been on the long haul, and they have expended considerable resources.  Again, I'll let them make – for themselves, but I would venture to guess millions of dollars in expenses as outside counsel for a non-named class member that is also a litigating entity.  That's very different than outside counsel coming in at the one-yard line or the 11th hour and using the fund to compensate for a a – for a – a proposed resolution that matured to a point or the discussions matured to a point where a value had already existed to the class or was in the process of being built for the class itself.

26 (Jackson Decl. Ex. B, Transcript of Telephone Proceedings, Motion for Preliminary

27 Approval, February 18, 2021, at 22:7-22:21.)

28          The Special Needs Fund, Part A Application, attached as Exhibit G to the

1    Settlement Agreement, is limited as to the space provided for the presentation of fees

2    and costs, and includes a 25-page limit for "supporting documentation and evidence

3    that may be relevant to the Special Master's allocation."  (Dkt. 271-1, Settlement

4    Agreement, Exhibit G[3].).  The Application provides that "[o]nly the first 25 pages

5    submitted will be considered by the Special Master."  (*Id.*)

6                **CONCERNS REGARDING THE SPECIAL NEEDS FUND, PART A,**

7                              **APPLICATION PROCESS.**

8           As set forth above, and like the City of San Diego, the Port District has

9    extensive ***accrued*** attorneys' fees for its many years of vigorous litigation in its San

10   Diego Action.  The Parties and the Port District interpret the Settlement Agreement

11   to allow the two Litigating Entities not represented by Class Counsel to submit an

12   application including: (a) outside counsel fees that were ***accrued*** (but not paid out-of-

13   pocket by the Litigating Entity), as well as third-party expenses paid for by outside

14   counsel, in pursing their PCB-related litigations against the Monsanto Defendants;

15   and (b) related in-house fees and expenses.  It is material to the Port District's decision

16   to participate in the Settlement to understand how its outside counsel's fees will be

17   treated under the Settlement Agreement.

18          In addition, depending on the Court's view of the current Special Needs Fund,

19   Part A, Application Process, the two Litigating Entities not represented by proposed

20   Lead Class Counsel may not be treated as favorably as Litigating Entities represented

21   by proposed Lead Class Counsel.  It could be the Court's view that Litigating Entities

22   that are not represented by proposed Lead Class Counsel must file applications, within

23   the specified page limits, to recover from the Special Needs Fund, Part A, for both:

24   (a) fees accrued and costs incurred by ***outside*** counsel; and (b) ***in-house*** fees and

25   expenses.  Thus, while Class Counsels' thirteen clients who are Litigating Entities

26

27   _____

28   [3] The Exhibit G attached to Plaintiff's Motion appears to have omitted the final two
     pages of Exhibit G.  *Compare* Dkt. No. 271-1 Ex. G *with* Dkt. No. 278-2 Ex. G.

1    may use the entirety of their applications to address *only their in-house efforts*, the

2    Port District (and the City of Seattle) would be required to address both *outside*

3    counsel fees and costs and *in-house* fees and expenses within the page and space

4    limits of the Application.  This would minimize the space available to the Litigating

5    Entities not represented by Class Counsel to present their own in-house fees and

6    expenses, which for the Port District are indeed substantial.

7            As indicated, the Port District has litigated for more than six years with the

8    Monsanto Defendants, and has accrued significant attorneys' fees and expert and

9    other third-party expenses that are nearly equal to those incurred by Class Counsel,

10   undertaking efforts including:

11           •       From the outset, the Port District Board of Port Commissioners and

12           executives have been heavily involved in and directed the San Diego litigation.

13           The Office of General Counsel assisted in developing and implementing case

14           strategy and preparing all court filings and attended virtually all hearings. The

15           motion practice in the *San Diego Action* was substantial, including successfully

16           defending several early motions to dismiss and opposing at least four motions

17           to postpone proceedings by amending the scheduling order.  The Port District

18           objected and responded to at least ten motions to compel and pursued five or

19           more of its own discovery motions.  The Port District also responded to three

20           separate motions for summary judgment containing over 10,300 pages of

21           argument and evidence and ultimately prevailed on two—abatement and public

22           nuisance.

23           •       The Port District was actively involved in responding to Monsanto's

24           written  discovery,  which  included  121  requests  for  production,  19

25           interrogatories, and 298 requests for admission.  Members of the Offices of the

26           Clerk and General Counsel, along with members of the environmental, real

27           estate, development, marketing, and public relations departments mobilized to

28           locate over 176,234 documents (comprised of over two million pages) to

produce.

• The Port District mounted a huge effort to identify, prepare, and produce six separate "corporate representative" witnesses to testify on 86 topics set out in Monsanto's 30(b)(6) deposition notice (the Port District initially prepared for 110 topics before the magistrate pared them down).

• The Port District retained and presented reports for thirteen testifying experts in this matter, as well as multiple non-testifying experts, and was actively involved in all expert work pertaining the Port District, its operations and the health of San Diego Bay.

(Jackson Decl., ¶ 9.)

The Port District should not be permitted fewer pages than the clients of Class Counsel to detail its efforts expended.  Also, considering that the Port District is required under the Settlement Agreement to show that its expert and "out-of-pocket litigation costs" are "documented" and that those third-party expenses are greater than $5 million, it should not be restricted from substantiating these significant costs as it would be required to do before this Court.  The Port District (and the City of Seattle) will be at a disadvantage, however, with respect to the Special Needs Fund, Part A Application if they are subject to the same page and space limits to which Class Counsels' clients are subject, as they will not have a full 25 pages to present in-house fees and costs, if required to include outside counsel fees and costs in that same page-limited document.

## **CONCLUSION**

Based on the language of the Settlement Agreement, the Port District's counsel's conversations with Class Counsel and Class Counsel's representations to the Court, the parties and the Port District interpret the Settlement Agreement to allow Litigating Entities not represented by Class Counsel to submit an application including outside counsel fees that were **accrued** (but not paid out-of-pocket by the

1 Litigating Entity), as well as third party expenses that paid for by outside counsel, in

2 pursing PCB-related litigation against the Monsanto Defendants. However, out of

3 caution and due to the scrutiny the Court has indicated would be made with respect to

4 Attorneys' Fees and Expenses (which likely would apply equally to any de novo

5 review by this Court of the Special Master allocation), the Port District respectfully

6 raises these issues with the Court so that if there is any uncertainty, the issues may be

7 dealt with now.

8       Should the Court believe that the current Settlement Agreement does not

9 include recovery of **accrued** fees, and/or does not permit a separate submission by

10 the Port District of its outside counsel fees in addition to the 25-pages provided to all

11 Litigating Entities for their in-house fees and costs, the Port District respectfully

12 requests that the Court direct the parties to do the following: (a) modify the Special

13 Needs Fund, Part A Application and the Settlement Agreement to make clear that

14 Litigating Entities not represented by Class Counsel may make a separate fee and cost

15 application to the Special Master to recover for the attorneys' fees accrued and the

16 outside (third-party) costs incurred, and that such application will be separate and

17 apart from the applications that all Litigating Entities are permitted to submit

18 regarding Special Needs Fund, Part A, for their in-house fees and expenses; and (b)

19 modify the Settlement Agreement so that the Port District (and the City of Seattle, if

20 it chooses) may submit an attorneys' fee and expense application for outside counsel

21 that is not constrained by the 25 page limits for Litigating Entities' in-house fees and

22 costs.

23       We thank the Court for its attention to this matter. The Port District is pleased

24 to provide any additional information that the Court may require.

25                                    **KELLEY DRYE & WARREN LLP**

26                              By:   /s/ *Andrew W. Homer*

27                                    Andrew W. Homer
                                      7825 Fay Avenue Suite 200
28                                    La Jolla, CA 92037
                                      858-795-0426

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fax: 713-355-5001
Email: ahomer@kelleydrye.com

*Attorneys for San Diego Unified Port
District*

CASE NO.: 2:16-cv-03493-FMO-AS
RESPONSE TO RENEWED MOTION FOR CERTIFICATION